J. Mark Moore (SBN 180473)
(mark@spiromoss.com)
**Spiro Moss LLP**
11377 W. Olympic Blvd., Fifth Floor
Los Angeles, CA 90064
Tel: (310) 235-2468; Fax: (310) 235-2456

Douglas A. Linde (SBN 217584)(dal@lindelaw.net)
**The Linde Law Firm**
9000 Sunset Blvd., Suite 1025
Los Angeles, CA 90069
Tel: (310) 203-9333; Fax: (310) 203-9233

CHANT & COMPANY
A Professional Law Corporation
Chant Yedalian (SBN 222325)
10866 Wilshire Blvd., Suite 400
Los Angeles, CA 90024
Tel: 424.901.8377; Fax: 424.744.4177
chant@chant.mobi

Attorneys for Plaintiffs Nicola Edwards and James Schley

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TOYS "R" US - DELAWARE, INC. - FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA) LITIGATION | ML No. CV 08-01980 MMM (FMOx)<br>No. CV 06-08163 MMM (FMOx)<br>No. CV 08-06645 MMM (FMOx)<br><br>The Hon. Margaret M. Morrow<br><br>***EDWARDS* PLAINTIFFS' NOTICE OF MOTION AND MOTION RE THE SUFFICIENCY OF DEFENDANT'S RESPONSES AND OBJECTIONS TO REQUESTS FOR ADMISSION NOS. 38 AND 39**<br><br>Date:   February 10, 2010<br>Time:   10:00 a.m.<br>Ctrm:   F, 9th Floor (Spring Street)<br><br>Discovery Cut-Off Date:   None<br>Pre-Certification Discovery Cut-Off:<br>      February 12, 2010<br>Pretrial Conference Date:   None<br>Trial Date:   None |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on **February 10, 2010, at 10:00 a.m.** or as soon as the matter may be heard in Courtroom F, 9th Floor of the above-referenced courthouse located at 312 N. Spring Street, Los Angeles, CA 90012, Plaintiffs Nicola Edwards and James Schley ("Plaintiffs") will, and hereby do, move for an order deeming Request Nos. 38 and 39 in Plaintiffs' Second Set of Requests for Admissions to be *admitted*, or, in the alternative, requiring that Defendant Toys "R" Us-Delaware, Inc. provide proper responses to those requests in compliance with Fed. R. Civ. P. 36. As explained by Plaintiffs in the accompanying Joint Stipulation, the matters at issue are relevant and Defendant has failed to respond in compliance with its obligations pursuant to FRCP 36, governing requests for admissions.

This Motion is made following unsuccessful, extensive efforts to resolve this dispute pursuant to Local Rule 37, and is based on Plaintiffs' portion of the Joint Stipulation filed herewith and the accompanying Declaration of J. Mark Moore and exhibits thereto, on all files and records in this case, and on any further briefing or argument that may be presented at or before the hearing on Plaintiffs' motion.

Plaintiffs reserve their right to seek an award of costs and attorneys fees for the attorney time expended in seeking this relief, following a ruling on their motion.

Dated:   January 20, 2010          By _____/s/__*J. Mark Moore*_____
                                                    J. Mark Moore
                                                    of Spiro Moss LLP
                                                    11377 W. Olympic Blvd., 5th Floor
                                                    Los Angeles, CA  90064
                                                    Attorneys for Plaintiffs Edwards and Schley

# **TABLE OF CONTENTS**

I.    PLAINTIFFS' INTRODUCTORY STATEMENT.................................................4

II.   DEFENDANT'S INTRODUCTORY STATEMENT.........................................5

III.  RFA NO. 39...................................................................................................8

1.    Text of RFA No. 39..............................................................................8

2.    Defendant's Responses to RFA No. 39................................................8

3.    Plaintiffs' Contentions Regarding RFA No. 39...................................9

A.    Defendant's Relevance Objection Is Baseless...............................9

(1)  RFA No. 39 Is Plainly Relevant To The Merits...................10

(2)  Relevance to Class Certification..........................................12

B.    Defendant's "Response" To RFA No. 39 Is
Patently Inadequate.....................................................................15

4.    Defendant's Contentions:...................................................................21

A.    TOYS Has Provided Appropriate Responses
to the Requests...........................................................................21

B.    In Light of Judge Morrow's Instruction that the Parties
Focus on Class Certification Discovery at this Stage, TOYS'
Relevance Objection is a Sufficient Basis, By Itself, to
Deny the Motion to Compel.........................................................22

1.    RFAs 38 and 39 Are Irrelevant For
Class Certification.........................................................23

2.    TOYS Has Offered to Provide Stipulations
Concerning the Requested Issues...................................25

C.    Under Rule 26, the Court Should Balance the Burden
in Providing Further Responses to RFAs 38 and 39 Against
Plaintiffs Need for the Information.............................................25

1.    The Burden of Further Responding to RFAs
38 and 39 Greatly Outweighs Plaintiffs' Need

2

for the Information..................................................................26

2.    Plaintiffs Do Not Need the Information Sought by RFAs 38 and 39 Because it is Not Relevant to Class Certification.....................................................................27

3.    Plaintiffs Already Deposed the Person Most Knowledgeable About the Information Sought By RFAs 38 and 39..........................................................28

4.    TOYS Has Not Waived the Right to Assert Undue Burden in Response to RFAs 38 and 39.............................28

D.    CONCLUSION.................................................................29

IV.  RFA NO. 38.............................................................................30

1.    Text of RFA No. 38:........................................................30

2.    Defendant's Responses to RFA No. 38:..............................30

3.    Plaintiffs' Contentions:.....................................................31

4.    Defendant's Contentions:..................................................32

3

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  PLAINTIFFS' INTRODUCTORY STATEMENT

This is a very narrow motion.  Defendant Toys "R" Us-Delaware, Inc. ("Toys" or "Defendant") has refused to respond to two of Plaintiffs' requests for admission - Request Nos. 38 and 39 - which go directly to the central issue in this case alleging violations of the Fair Credit Reporting Act and FACTA (namely, willfulness), and which also are germane to class certification based on the erroneous analysis employed by some judges in this District in denying class certification in cases alleging FACTA violations.

Rather than responding properly pursuant to FRCP 36(a)(4), Defendant has objected solely on baseless "relevance" grounds and refused to respond substantively, claiming it lacks information to do so.   However, it has unquestionably failed to state, as required, that it made a reasonable inquiry and that the information readily available to it - which exists, as discussed herein - does not allow it to admit or deny the request. Now, after Plaintiffs have demanded responses in compliance with Rule 36, Defendant wants to avoid its discovery obligations by relying on new, but still-unquantified, claims that responding would be "burdensome," even though it did not object on burden grounds.

Requests 38 and 39 simply ask Defendant to admit what everyone knows to be true - that officers and employees who knew of FACTA's truncation requirement (which Defendant violated millions of times) made credit and/or debit purchases before Plaintiffs' complaint was served which resulted in them receiving receipts that contained illegal information.   Defendant's refusal to respond in compliance with the rules is inexcusable.   The requests at issue should be deemed admitted.  At a minimum, if for some reason the Court will not deem them admitted, Defendant should be required to respond properly.   Plaintiffs will seek an award of reasonable costs

1  incurred in bringing this unnecessary motion at a later date, after a ruling on the

2  motion.

3  **II.    DEFENDANT'S INTRODUCTORY STATEMENT**

4        This is not a "very narrow" motion.  Plaintiffs use a selective recitation of facts

5  to make the dispute appear to be a simple and unfounded refusal to answer two

6  requests.  This isn't the case.  The current dispute (over Edwards/Schley's RFA Nos. 38

7  and 39, Ellis' RFP No. 3, and Plaintiffs' latest round of discovery, all of which is the

8  subject of a separate motion for protective order) must be viewed in the context of: (1)

9  Judge Margaret Morrow's specific instructions that the parties focus on class

10 certification discovery at this stage; and (2) the fact that the discovery at issue is

11 irrelevant to class certification; and (3) the fact that the burden of gathering the

12 requested information is greatly outweighed by Plaintiffs' need for it (especially

13 because it is irrelevant to class certification).

14       This putative class action is over three years old.  In that time Plaintiffs have

15 served a combined eighteen separate discovery requests - three requests for documents,

16 seven sets off interrogatories, four requests for admissions and four notices of

17 deposition (one of which included a fourth request for documents).  In response to

18 Plaintiffs' requests, over two-and-a-half years ago, TOYS produced 267,761 pages of

19 documents, in addition to dozens of sets of written discovery responses (including

20 numerous sets of amended and supplemental responses).  For over two years, Counsel

21 for Edwards/Schley never once objected to any of TOYS' discovery responses and

22 never once threatened a motion to compel.  But recently Counsel for Plaintiffs have

23 taken a different tack.  In the last four months (following failed settlement discussions),

24 Counsel for Plaintiffs have gone on a rampage - raising new issues with very old

25 discovery responses, threatening numerous motions to compel (most of which now

26 appear to have been idle threats), threatening sanctions, and serving waves of new

27 discovery that duplicate prior discovery.

28

The issue of duplicative discovery requests has been repeatedly raised with Judge Morrow.  First at the June 15, 2009, status conference, and then again at the September 14, 2009, scheduling conference, Judge Morrow specifically instructed the parties to focus on any remaining discovery needed for class certification briefing.  She ordered a separate class certification discovery cutoff (February 12, 2010).  She also specifically ordered (back in September) Counsel for Plaintiffs to let Counsel for TOYS know specifically what discovery they felt was needed beyond what had already been provided for class certification (which was not done).  In their stipulation, Plaintiffs state:  "The Court has *not* bifurcated discovery in this matter."  (emphasis in original).  To the contrary, by her repeated comments and orders, Judge Morrow clearly instructed the parties to focus on discovery related to class certification prior to the impending certification deadlines.  When she asked Counsel for Edwards/Schley at the June 15 hearing what additional discovery the Plaintiffs needed for class certification, Counsel responded:  "None, your Honor.  We're ready."

Judge Morrow presumably instructed the parties to focus on discovery related to class certification (and ordered a separate cutoff for such discovery) because the outcome of the class certification motions will determine if this is potentially a $16 billion case (the potential statutory damages if a class is certified) or a $3,000 case (the potential damages if one isn't).  This reasoning is entirely consistent with F.R.C.P. 26, which grants a Court very broad discretion in controlling discovery, including issuing any orders that limit discovery requests, or the burden associated with responding to requests, especially when the need for the requested information is greatly outweighed by the burden of gathering such information.

This is the important consideration - the burden.  The two Edwards' requests for admissions at issue are very complex and broad - together they seek an admission that TOYS' employees (including officers) made purchases with credit cards during the 2006 holiday season (over three years ago), and that some of those purchases were

6

made by employees (and officers) who "knew of FACTA's truncation requirements before December 4, 2006."  As Counsel for TOYS has explained to Counsel for Plaintiffs on numerous occasions, there is no relatively cost effective way to gather the information that would be necessary to conclusively admit or deny this request.  TOYS does not have a single database that contains the identities of all of the millions of customers who made credit purchases, especially three years ago.  In order for TOYS to gather such information, it would have to create a new computer systems environment to process the available information concerning credit purchases (some of which is in the possession of a third party vendor).  Then TOYS would have to compare the information against a list of employees and officers (thousands of people who have not been identified) who worked during the 2006 holiday season (many of whom were only temporary employees) and then, for any matches, determine which of the employees/officers "knew of FACTA's truncation requirements before December 4, 2006."  It is not a simple (or reasonably affordable) matter to answer these requests.  To the extent the request is used to identify the existence of class members, there is no need to do so until a class is certified.

In any discovery motion, the burden involved in gathering the information must be weighed against the requesting party's need for the information.  Here, it is not a close call.  Plaintiffs' state the requests are "germane to class certification based on the erroneous analysis employed by some judges in this District…"  This position is recently manufactured.  Counsel for Plaintiffs assured the Court (and Counsel for TOYS) that they had everything they needed for class certification at the June 15 conference (three-and-a-half months before serving these requests).  Second, a vague assertion of need based upon prior "erroneous analysis" does not constitute the specific showing needed to sustain a discovery motion.  The information is not needed for class certification.

That said, TOYS (as it states in its concurrently-filed motion for protective order), is not taking the position that it cannot or will not undergo the steps necessary to gather the information requested. Indeed, many of Plaintiffs' requests (including Ellis' RFP No. 3 and the multiple outstanding interrogatories and deposition notices) may be relevant to notification of a class, if and when one is certified. TOYS simply requests that reason be allowed to prevail, and that the issue be taken up at such time as is necessary. Because it is not necessary at the present time, Plaintiffs' motions to compel should be denied.

## III.   RFA NO. 39

### 1.   Text of RFA No. 39

39. Admit that officers of TOYS who knew of FACTA's truncation requirements before December 4, 2006 made debit or credit card purchases between December 4, 2006 and December 27, 2006 that resulted in them being provided with RECEIPTS on which ten account digits were visibly printed.
*See* Declaration of J. Mark Moore, Exh. A, Request No. 39.

### 2.   Defendant's Responses to RFA No. 39

RESPONSE:

TOYS objects to this request because it is irrelevant.  Subject to this objection, TOYS responds that it does not have information sufficient to admit or deny this request, but is prepared to stipulate that its employees made purchase [sic] during the holiday season in the December 4, 2006 to December 27, 2006 time period and some of these employees may have been officers who were aware of FACTA's truncation requirements.

FURTHER RESPONSE:

Subject to the objections set forth in the original response to this request TOYS responds that it does not have information sufficient to admit or deny this request, but is prepared to stipulate that its employees made purchase [sic] during the holiday season in the December 4, 2006 to December 27, 2006 time period and some of these employees may have been officers and some of these employees may have been aware of FACTA's truncation requirements.

8

*See* Decl. of J. Mark Moore, Exh. A, Response and Further Response to No. 39.

**3.   Plaintiffs' Contentions Regarding RFA No. 39**

As this Court undoubtedly knows, there is a Federal Rule of Civil Procedure that dictates how parties must respond to requests for admission.  Specifically, Fed. R. Civ. Proc. 36(a)(4) states:

> "If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it.   A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, *the answer must specify the part admitted and qualify or deny the rest.   The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny*."  (Emphasis added.)

As demonstrated herein, Defendant's response and further response flaunt this standard, by failing to admit the request in part, and by failing to state that state that *it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.*  Before further addressing the "response" and "further response,"  Plaintiffs address Defendant's specious "relevance" objection, which is its *only* timely objection.

**A.   Defendant's Relevance Objection Is Baseless**

Defendant's sole objection to RFA No. 39 is a boilerplate relevance objection ("Toys objects to this request because it is irrelevant.")  That objection is improper both because of its entirely boilerplate - and thus elusive - nature and, more importantly, because RFA No. 39 plainly seeks relevant information, as shown below.

Recently, following notification that Plaintiffs were dissatisfied with Defendant's response, Defendant began seeking to justify its failure to properly respond by claiming that responding in a proper fashion would be "burdensome."  (To date, the

9

1  supposed burden has not been quantified in terms of the time or expense to respond

2  properly.)   However, Defendant did not include such an objection initially, and any

3  such objection is therefore waived.   *Ramirez v. County of Los Angeles*, 231 F.R.D.

4  407 (C.D. Cal. 2005).   In *Ramirez*, this Court held:

> "First, it is well-settled that ***all grounds for objection must be stated with
> specificity***. *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981). Most of
> defendants' objections are too general to merit consideration and are therefore
> waived. *See Casson Const. Co. v. Armco Steel Corp*., 91 F.R.D. 376, 379
> (D.Kan.1980); *In re Folding Carton Antitrust Lit*., 83 F.R.D. 260, 264
> (N.D.Ill.1979). The parties can assume that the court has determined that any
> objection not discussed in this Order has been overruled because it is too
> general to merit consideration. *See Allianz Ins. Co. v. Surface Specialities,* Inc.,
> 2005 WL 44534, *2, 2005 U.S. Dist. LEXIS 301, *6 (D.Kan. Jan. 7, 2005)
> ("The familiar litany of general objections, including overly broad,
> burdensome, or oppressive, will not alone constitute a successful objection to
> an interrogatory, nor will a general objection fulfill the objecting party's burden
> to explain its objections.").
>
> Second, "[i]f a party fails to file timely objections to [ discovery] requests, such
> a failure constitutes a waiver of any objections which a party might have to the
> requests." *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D.Mass.1988) (citations
> omitted) (emphasis in original); *see also Pham v. Hartford Fire Ins. Co.*, 193
> F.R.D. 659, 661 (D.Colo.2000) (concerning document requests); *Richmark
> Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.), cert.
> dismissed, 506 U.S. 948, 113 S.Ct. 454, 121 L.Ed.2d 325 (1992) ("[F]ailure to
> object to discovery requests within the time required constitutes a waiver of
> any objection."). Therefore, ***the court will not consider any objections that
> were not asserted in the responding party's original discovery responses***, i.e.,
> it will not consider objections raised for the first time in the Joint Stipulation."

*Ramirez, supra* at 409-410.

### (1)  RFA No. 39 Is Plainly Relevant To The Merits

As discussed in the *Edwards* decision, in October, 2006, Defendant began

printing excess credit/debit card account digits on receipts generated by "new" cash

registers, in violation of FACTA.   Defendant continued to violate the law until January

5, 2007.   FACTA became operative for all machines, regardless of age, on December

4, 2006.

Defendant admits that certain of its officers and employees were aware of

FACTA's requirement in October 2006, but claims that it was unaware that it was

violating FACTA (despite doing so, on paper, millions of times) until *December 27,*

10

*2006*, when it was served with Plaintiffs' lawsuit, filed December 21, 2006.  In moving unsuccessfully for summary judgment as to the "willfulness" issue,  Defendant claimed that immediately upon "learning" (via service of the complaint) that it had been printing millions of receipts containing illegal information for months, it quickly began taking steps to "fix" the "glitch" and thereby comply with the law, resulting in its compliance by January 5, 2007.

In a deposition taken before the Court denied Defendant's motion, Defendant's chief summary judgment declarant, Dennis Gleason, admitted that the FACTA violations were visible on the face of the receipts that Defendant illegally provided to credit and debit customers.  *See* Moore Declaration, Exh. E, p. 102.

In other words, Defendant's "defense" to Plaintiffs' claim that it willfully violated FACTA every time it provided visibly illegal receipts to Plaintiffs and class members appears to be that while it was aware of the law and while a simple examination of the receipts would have demonstrated that they violated the law, no one whose knowledge could be imputed to Defendant for purposes of a finding that Defendant knowingly or recklessly disregarded FACTA's requirements in printing such visibly illegal receipts millions of times noticed that the receipts violated the law until Plaintiffs sued Defendant.  According to Defendant's failed summary judgment motion, as soon as it learned it was violating the law, it immediately began attempting to rectify the situation.   Defendant argued this evidenced its lack of willfulness.

Request No. 39 thus goes directly to the central merits issue of willfulness -- i.e., did Defendant knowingly or recklessly disregard FACTA's truncation requirement when it continued to print receipts containing excess digits of millions of customers' credit and debit card account numbers over a period of several months?  Plaintiffs contend that if officers of the company who were aware of the law in fact received credit or debit card receipts on which illegal information was visibly printed, in, e.g., early December 2006, and yet Defendant continued to go about its business that

11

1   holiday season without attempting to alter its illegal conduct until after it was served

2   with the lawsuit, a jury might infer from such facts and others that Defendant

3   knowingly or recklessly disregarded its obligations under FACTA.

### (2)  Relevance to Class Certification

5           Defendant also appears to be arguing that, even if such discovery is relevant to

6   the willfulness question, its boilerplate relevance objection has preserved a claim that

7   such discovery is *irrelevant to the propriety of class certification*, as if that would

8   justify its refusal to respond in conformity with FRCP 36(a)(4).   Obviously, if the

9   request is relevant to the essential merits question in the case, it is fair game for

10  discovery.   The Court has *not* bifurcated discovery in this matter.   Defendant admits

11  this.  Moore Decl., ¶ 16.   Accordingly, whether RFA No. 39 is relevant to both the

12  merits and class certification, or relevant only to the merits, does not matter.  Plaintiffs

13  are entitled to seek discovery in the manner and sequence that they see fit, barring a

14  court order to the contrary.

15          Even though discovery admittedly has not been bifurcated, Defendant appears to

16  believe that the parties "should" now be focusing on class certification discovery,

17  rather than untidy merits discovery.   Such an argument rings rather hollow since it was

18  *Defendant* that, when it believed doing so served its purposes, opened the door to

19  merits discovery by moving for summary judgment.   Now that it has lost that motion,

20  it wishes to preclude Plaintiffs from engaging in offensive merits discovery of their

21  own, at least until after class certification is decided.   That is not a valid objection to

22  RFA No. 39.

23          Regardless of Defendant's strained positions about why Plaintiffs should be

24  precluded from engaging in merits discovery at this time, RFA No. 39 also *is* relevant

25  to the parties' upcoming class certification task, in the sense that certain judges in this

26  District have denied class certification in FACTA cases based in part on the

27

28

1   defendants' submission of "evidence" (usually before discovery commenced)[1] that they

2   immediately began rectifying their illegal conduct upon "learning" that they were

3   violating the law; i.e., upon being sued for violating the law.   Some courts have found

4   that such evidence supports denying class certification in FACTA cases.[2]

5       Plaintiffs vehemently disagree with this sort of novel, merits-based "superiority"

6   analysis, and vehemently disagree that a defendant's belated effort to quickly stop

7   violating the law after being sued for statutory damages is in any way relevant to any

8   *proper* Rule 23 superiority analysis regarding the question of certifying a class seeking

9   statutory damages based on *earlier*, allegedly willful violations.   Unfortunately,

10  notwithstanding Plaintiffs' disagreement, some (but not all) courts in this District have

11  in fact engaged in just this sort of "superiority" analysis.   *See, e.g., Soualian, supra*.

12  As such, until this Court (or the Ninth Circuit) agrees with Plaintiffs that such a

13  "superiority" analysis is in fact incorrect, it cannot be safely concluded that the facts

14  underlying such "superiority" findings are necessarily "irrelevant" to the propriety of

15  certifying a class in this case.   The fact that Plaintiffs are unwilling to concede that

16  such arguments are in fact relevant to any proper class certification analysis does not

17  mean that mean that seeking discovery related to the arguments underlying such

18  denials is "irrelevant."

19

20       [1]Courts accepted such arguments notwithstanding the plaintiffs' allegations

21  that, in fact, the defendants knew they were violating the law - merits allegations the
    Courts should have accepted as true in determining whether to certify a class.

22

23       [2]*See, e.g., Soualian v. International Coffee & Tea*, LLC, Case No. CV
    07-502-RGK (JCx), 2007 WL 4877902, *3 (C.D. Cal., June 11, 2007) ("Furthermore,

24  as soon as becoming aware that having the expiration date on credit card and debit
    card receipts was a technical violation of FACTA, Defendant investigated and

25  removed the expiration dates on the receipts distributed in all of its Coffee Bean
    locations within two days. Defendant's immediate action to comply with FACTA's

26  requirements once becoming aware of this action also supports denial of class
    certification.")   Notably, the Ninth Circuit Court of Appeals granted immediate

27  review of the district court's denial of class certification in *Soualian*, pursuant to
    FRCP 23(f), and the case later settled on a class basis while the appeal was pending.

28

13

RFA No. 39's relevance to willfulness cannot be questioned.   Its relevance to class certification depends on the sort of superiority analysis that Judge Morrow ultimately elects to employ.   If Judge Morrow determines that a sued defendant's steps to stop violating the law upon supposedly "learning" of its FACTA noncompliance have no bearing on the propriety of class certification, then the information sought by RFA No. 39 may not be relevant to class certification, although it will remain relevant to willfulness.

But the Court has not given any indication yet as to how it will rule in that regard.   For its part, Defendant has indicated that, like other FACTA defendants, it will urge that "superiority" is lacking in part because it quickly rectified its illegal conduct upon "learning" that it had been printing millions of illegal receipts when it received the Complaint in this case.   RFA No. 39 plainly seeks information bearing on the question of when Defendant in fact became aware of its noncompliance and, relatedly, whether it in fact began seeking to comply with FACTA immediately thereafter, as it claimed in seeking summary judgment and as it intends to argue in opposing class certification.

Defendant's counsel suggested at the parties' January 4, 2010 "meeting of counsel" that even if its officers who knew of FACTA's truncation requirement did receive receipts that visibly violated FACTA long before Defendant took steps to stop violating the law, that would not mean Defendant acted willfully.   Perhaps so. Perhaps not.   However, having failed to secure summary judgment, the inferences that may be drawn from such evidence are now within the province of the jury.   The question *for now* is whether the matter at issue in RFA No. 39 meets the relevance standard at the discovery stage, so as to allow Plaintiffs to obtain evidence to allow the jury to draw its own conclusions.  RFA No. 39 meets that standard.

///

///

14

**B.   Defendant's "Response" To RFA No. 39 Is Patently Inadequate**

A comparison of Defendant's response, quoted above, to the standard set forth in FRCP 36(a)(4) demonstrates its inadequacy.   Here, Defendant did not admit the matter, specifically deny it, or state in detail why it could not truthfully admit or deny it.  Nor did Defendant admit part of it (such as admitting that officers made purchases during the referenced time period that resulted in them receiving receipts containing excess digits), and deny or qualify the rest.   Instead, Defendant claimed the matter is "irrelevant" and asserted lack of knowledge or information.

But, in asserting lack of knowledge or information, Defendant did *not* state, as required, that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Plaintiffs have repeatedly informed Defendant that its response fails to satisfy FRCP 36(a)(4).   While claiming it "disagrees," Defendant still has never explained how its response purportedly complies with  FRCP 36(a)(4).   It plainly does not.  Instead of actually responding directly to the request posed in a fashion consistent with the rule, Defendant continues to offer to enter into the feeble "stipulations" which it proposed in its "Response" and "Further Response" (indeed, the stipulation offered in its Further Response is even feebler than the earlier offered stipulation).

Plaintiffs are not required to accept such a stipulation in lieu of a proper response to RFA No. 39.   If the request presented any *real* burdensomeness objection, Defendant's proposal might make sense as a compromise proposal.   However, it does not.  Indeed, the proof is in the pudding -- Defendant did not even proffer a <u>boilerplate</u> "burdensome" objection - let alone a detailed one - to support any claim that making a "reasonable inquiry" or otherwise admitting or denying RFA No. 39 would be so burdensome that Defendant can avoid responding at all.   It was only after Plaintiffs refused to accept its non-response and its proffered "stipulation," and threatened to

1  bring a motion deeming RFA Nos. 38 and 39 admitted, that Defendant has suddenly

2  attempted to advance "burdensome" objections.   Those objections come too late.

3     It bears noting that, even though Defendant's response (and further response) are

4  inadequate on their face, Plaintiffs have attempted to obtain a proper response without

5  the need for a motion.

6     Plaintiffs sent repeated correspondence reminding Defendant that if it wants to

7  claim lack of information regarding the matter at issue, it must first state that it has

8  made a reasonable inquiry and that the information it knows or can reasonably obtain is

9  insufficient to permit it to admit or deny.  This did not induce Defendant to change

10 course.

11    At the parties' LR 37 meeting of counsel on January 4, 2010, when defense

12 counsel began referencing the supposed "burden" that precluded it from responding to

13 RFA No. 39, Plaintiffs pointed out that Defendant had not objected on "burden"

14 grounds.   Defendant did not - indeed, could not - contest this point.   Moore Decl.,

15 para. 8.  However, defense counsel made clear that Defendant would nevertheless

16 attempt to rely on its untimely assertions of burden if Plaintiffs brought a motion.

17    In the spirit of meeting and conferring, Plaintiffs inquired as to the extent of this

18 new supposed "burden," noting that Defendant had not quantified the burden, in terms

19 of time or money, of providing a proper response.  Despite being at a meeting intended

20 to seek a resolution of the parties' disputes, defense counsel *admitted* that she was

21 *unable* to quantify the burden in terms of dollars or hours that would be incurred in

22 responding.  Counsel further stated that she would be obtaining that information and

23 providing it to Plaintiffs, but she has not done so to date.  Moore Decl., para. 8.

24 Indeed, counsel admitted on December 11, 2010 that Defendant still could not quantify

25 the supposed "burden" in terms of time or expense, purported because the "client

26 contact" was now "unavailable."  *See* Moore Decl., Exh. C.

27

28

CV06-8163 MMM  (FMOx)

Plaintiffs even offered a compromise proposal, even though there was no reason to do so in view of Defendant's patently insufficient response and objections. Notwithstanding Defendant's waiver of any "burdensome" objection, in an effort to resolve the matter and minimize the supposed "burden," Plaintiffs offered to permit Defendant to respond to RFA Nos. 38 (discussed below) and 39 solely with respect to its officers, home office management and IT personnel, legal department, and those specific persons (some of whom are included in the prior categories) who Defendant has previously identified in discovery as persons aware of FACTA and/or involved in ensuring FACTA compliance before the lawsuit.   Defense counsel suggested that this narrowed group of persons likely numbered around *60.*   Moore Declaration, para. 8, *see* also Exhibit D.

Because Defendant claimed the "burden" it faces arises from its need to ascertain the identity (by "interviews") of the individuals who knew of FACTA, as well as the identity of those officers/employees who made credit/debit purchases during the time period in question, this compromise proposal by Plaintiffs would have greatly limited the purported "burden."   Indeed, defense counsel stated at the meeting that identifying such a small group of persons "might not be overly burdensome," and stated she would provide further information regarding whether Defendant would agree to this proposal, and regarding the "burden" associated with responding for just such a narrowed group. Moore Declaration, ¶ 8.

To date Defendant has provided *no further information* regarding the supposed burden that exists, in the terms of quantifying the amount of time or money it would have to devote to match up the less than 100 names in this narrowed group of officers and employees with the last names and first initials in its purchaser database.  Merely referencing the existence of "additional effort and expense" in meet-and-confer correspondence means nothing, particularly after failing to object on burden grounds. A party can *always* claim that responding to relevant discovery requires "additional

17

effort and expense" than would be required by *not* responding.   That is not a basis for failing to respond, particularly when no objections on that ground have been made.

Instead, Defendant has refused to respond further, advising Plaintiffs that if they will not forego seeking this information until later, a motion will be required. Accordingly, we are now at the motion stage.   Plaintiffs are not willing to put this matter off until later, as Defendant dearly wishes they would do.  Frankly, Plaintiffs strongly suspect that the truth is that, if in fact it had not done so when it "responded" to RFA No. 39, Defendant has by now determined (with very *little* burden) that key members of its management and officers -- perhaps even including Dennis Gleason, its key declarant at the summary judgment stage -- *did* make credit and/or debit purchases and *did* receive visibly illegal receipts *well before* Defendant has claimed that it "discovered" it was not complying with FACTA when it was served on December 27, 2006.[3]  Defendant wants Plaintiffs and the Court to blindly accept Mr. Gleason's incompetent efforts to disclaim knowledge by everyone in the company of the fact that Toys was printing illegal receipts.   Obviously, admitting that, in fact, officers and employees of the company who knew of FACTA's requirements received receipts that visibly showed FACTA was being violated would not be helpful to Defendant's tale.

In any event, Defendant did not object to RFA 39 or RFA 38 on the ground that responding consistent with Rule 36(a)(4) would be unduly burdensome, let alone demonstrate that it can avoid responding by claiming, after the fact, that responding properly would require "additional time and expense."

In fact, Defendant has now effectively conceded that, before responding, it made no "reasonable inquiry" as to whether the information readily available to it would allow it to admit or deny RFA No. 39, claiming that the supposed "burden" it

---

[3]Plaintiffs expect this in part because Defendant's attorney suggested at the January 4, 2010 meeting that responding as to the limited group would not be burdensome and then, after an opportunity to learn whether the information was harmful, refused to respond further, and refused to quantify the supposed "burden."

faces precluded such an inquiry.  Its actual response and "further response" bear this out, as. despite the clear requirement of Rule 36(a)(4), neither of them states that Defendant made such a reasonable inquiry before Defendant it "responded" by claiming lack of information.

Again, Defendant did not object on burden grounds, and that alone should put a rest to any belated claims of burden it now wants to make.   However, to the extent the Court for some reason wants to consider Defendant's belated claim of burden, the fact remains that based on what Defendant has told Plaintiffs since Plaintiffs raised the sufficiency of its response, Defendant could easily determine whether its officers and home-office personnel - or at least some of them - who knew of FACTA's requirements made credit or debit card purchases during the referenced time period.   Specifically, Defendant has advised that it has a database which identifies credit and debit card purchasers by last name and first initial, with a "hashed" credit card number.   In addition, Defendant can apply time parameters (e.g., December 4, 2006 through December 26, 2006) to the database.  Moore Declaration, para. 8, Exh. D.

In RFA No. 39, Plaintiffs did not ask Defendant to admit that "all" officers knew of FACTA's requirements and made credit/debit purchases during the period in question.   Rather, Plaintiffs asked Defendant to admit that officers who knew of FACTA's requirements made credit/debit purchases during the period in question. Defendant knows, or could easily determine, which of its officers were aware of FACTA's requirements.

That being the case (again, setting aside that it did not objection burden grounds and has not demonstrated any burden actually exists), Defendant could easily check its database and/or the vendor database it admits exists, to see whether particular identifiable individuals who *admittedly* knew of FACTA's requirements did in fact made credit/debit purchases during the period at issue.  For example, Defendant could search electronically for the name J. Tennenberg in its database to determine whether

19

to admit that its chief litigation counsel, Joel Tennenberg, made a purchase during the referenced period.[4]  Defendant has admitted that Mr. Tennenberg had a major role in ensuring FACTA compliance.   *See*, e.g., Moore Decl., Exh. H, I.   Defendant could do the same for Dion Rooney (D. Rooney), Dennis Gleason (D. Gleason), and others. *See* Moore Decl., paras. 11-15, Exhibits E, F, I.  Indeed, Defendant could do this for all the persons it has previously identified as having knowledge of FACTA, and/or responsibility for ensuring compliance with FACTA, prior to December 27, 2006, as well as for the easily-identifiable, small group of persons who comprised its legal department, IT department and officers at the time.

Additionally, although the responses obtained via this method of inquiry would not be as objectively verifiable, before responding Defendant could have engaged in a separate "reasonable inquiry" in determining whether the information readily available to it allowed it to admit the request, at least in part, or deny it.  Specifically, Defendant could have simply *asked,* and could now simply ask, Mr. Tennenberg, Mr. Rooney, and others whether they recall whether, and/or whether their credit/debit card statements reflect that, they made credit/debit card purchases during the referenced period.   Defendant could easily do this for the less than 100 individuals at issue, particularly to the extent it still employs those persons.

Defendant has, however, done no such thing, and refuses to do any such thing, despite its obligations under Rule 36(a)(4).

Request No. 39 should be <u>deemed admitted</u>.  Defendant's failure to respond properly and continuing refusal to respond properly while seeking to rely on "burden"

---

[4]Assuming, for argument's sake, that Defendant's speculation that its database "might" reference more than one J. Tennenberg who used a credit/debit card during the period in question, Defendant has not denied that it could determine whether *our* Joel Tennenberg in fact made a purchase, either by looking at other information (such as whether an employee discount was provided for the transaction, or the "vendor database" that includes full names and other information for some class members) or by simply asking Mr. Tennenberg whether, in fact, he made a purchase.

20

1  objections that it did not make and has not substantiated, combined with its willingness

2  to stipulate - in lieu of responding - that employees who made credit/debit card

3  purchases during the period "may" have been officers who were aware of FACTA's

4  requirements, warrants simply deeming RFA No. 39 admitted.

5     In the alternative, if the Court will not deem the request admitted, Plaintiffs

6  respectfully request that the Court order Defendant to engage in a reasonable inquiry

7  and to provide a further response that is consistent with Rule 36(a)(4).

8

9     **4.    Defendant's Contentions:**

10    **A.    TOYS Has Provided Appropriate Responses to the Requests**

11       As Plaintiffs correctly point out, Rule 36 requires a party responding to a request

12  for admission that it cannot conclusively admit to state why it cannot truthfully admit

13  or deny the request.  In its written response, TOYS objected on relevance grounds and

14  stated that it does not have information sufficient to admit or deny this request.  In

15  subsequent "meet and confer" correspondence and meetings, Counsel for TOYS

16  explained in more detail the nature of the problem - it is no simple (or relatively cost

17  effective) matter to gather the requested information.  On January 6, 2010 (subsequent

18  to an intensive three-hour face-to-face meet and confer session two days prior),

19  Counsel for TOYS Dominique Shelton sent a detailed letter confirming the content of

20  the meet and confer discussions and reaffirming the difficulty of gathering the

21  information necessary to conclusively admit or deny the requests.  (*See* Declaration of

22  Dominique R. Shelton, filed herewith, at Ex. A.)  Ms. Shelton subsequently sent a

23  detailed e-mail, on January 11, in which she again explained the nature of the burden

24  that would be required to gather the requested information.  (*See* Declaration of J.

25  Mark Moore, Ex. C.)

26  ///

27  ///

28

21

B.  **In Light of Judge Morrow's Instruction that the Parties Focus on Class Certification Discovery at this Stage, TOYS' Relevance Objection is a Sufficient Basis, By Itself, to Deny the Motion to Compel.**

Plaintiffs repeatedly assert that discovery in this case has not been bifurcated. Plaintiffs apparently rely on the fact that there is no order in the case that expressly states: "Non-class certification discovery (i.e, discovery on the merits) may only be taken after the Court decides the issue of class certification." However, Judge Morrow's repeated comments and instructions leave little doubt that she intended for the parties to focus on class certification discovery at this stage of the proceedings, and that non-class certification discovery can, and should, be tabled. Here is the relevant portion of the June 15, 2009, case management conference:

Judge Morrow:   "I'd like to understand a little bit about the nature of discovery that the parties feel is *necessary to prepare for certification* and why they think that a full six months is required to conduct *that discovery*…So I think Mr. Moore, maybe you can address what discovery you believe is *required for certification purposes*."

Mr. Moore:   "None, your Honor.  We're ready."

…

Judge Morrow:   "Based on what I've heard this morning, it appears to me that a period of four months would be more than sufficient to wrap up any outstanding *discovery issues*."

(*See* Transcript, at Shelton Decl., Ex. B, p. 4-5, 7; emphasis added.)

1    Thereafter, after a further status conference on September 14, 2009 (at which the
2    Court again addressed only pre-certification discovery), the Court issued a Civil
3    Minutes Order in which it directed Counsel for TOYS and Counsel for Plaintiffs to
4    meet and confer regarding what additional discovery is needed for class certification.
5    (Shelton Decl., Ex. C.)  This was in addition to the extensive discovery (much of it not
6    related to class-certification) that TOYS has already produced since 2007.

7    **1.    RFAs 38 and 39 Are Irrelevant For Class Certification.**

8    Plaintiffs assert that TOYS' relevance objections to RFAs Nos. 38 and 39 are
9    "baseless."  They present a tortured analysis of the "relevance" of the requests for class
10   certification[5].   They assert they need the information in case: (1) TOYS decides to
11   argue that it began fixing the computer error that led to the printing of FACTA
12   non-complaint receipts upon learning of it (when it was served with the Edwards
13   complaint); and (2) Judge Morrow relies on the argument in deciding class
14   certification.

15   This is a red herring.  As Plaintiffs admit in footnote two, the issue in the cases
16   relied on by Plaintiffs is when the plaintiffs in those cases learned of *FACTA's*
17   *requirements*.  In other words, those plaintiffs were relying on a "we didn't know the
18   law" argument, as shown by the *Soualian* court's quote cited by Plaintiffs:
19   "Furthermore, as soon as becoming aware that having the expiration date on credit card
20   and debit card receipts was a *technical violation of FACTA*…"  (Plaintiffs' footnote 2.)
21   In this case, TOYS is not relying on ignorance of the law as a defense.  TOYS has
22   admitted numerous times, in both verified discovery responses and in declarations

23

24

25

26        [5]   Plaintiffs go to great lengths to demonstrate the relevance of the requests to
27   the alleged "willfulness" of the FACTA violations.  Without conceding such
     relevance, TOYS states that the issue is nevertheless moot if and until a class is
28   certified.

23

1    submitted to the Court, that it was *aware of FACTA's requirements at all relevant*

2    *times.*[6]

3         The timing of the requests further belies Plaintiffs' asserted belief that RFAs 38

4    and 39 are relevant to class certification.  As quoted above, at the June 15 case

5    management conference Counsel for Edwards/Schley affirmed that Plaintiffs have all

6    of the discovery they need for class certification.  RFAs 38 and 39 were not served

7    until September 30, 2009, *three-and-a-half* months later.  And Counsel for Plaintiffs

8    also conveniently omit the fact that they were also counsel for the plaintiff in the

9    *Soualian* case, in which the issue that Plaintiffs now raise to demonstrate class

10   certification relevance (knowledge of FACTA's requirements) was briefed *over two*

11   *years ago*.  Under these circumstances, it is reasonable to conclude that Plaintiffs'

12   belated assertion that it needs RFAs 38 and 39 for class certification is disingenuous,

13   and that their counsel's statement back in June (that they had everything they need) is

14   accurate.  Plaintiffs don't need RFAs 38 and 39 for class certification.

15        Indeed, the Plaintiffs (all of them) have already brought motions for class

16   certification in this lawsuit.  The Edwards/Schley Plaintiffs filed theirs on October 29,

17   2007 (Dkt. No. 76), which was subsequently taken off calendar pending a stay order

18   (Dkt. No. 89).  Plaintiff Gregory Ellis filed his motion for class certification on May

19   26, 2009, which was subsequently stricken because of filing deficiencies (Case No.

20   2:08-cv-06645-MMM-FMO, Dkt. Nos. 20 and 23.)  Under the circumstances, any

21   argument that Plaintiffs truly believe they "need" the information requested by RFAs

22   38 and 39 in order to file new motions for class certification is disingenuous at best.

23   ///

24   ///

25

26        [6] *See* TOYS' Responses to Plaintiffs Ellis' Requests for Admissions Nos. 11
     and 13 (served on September 14, 2009), Shelton Decl., Ex. D.)  TOYS' defense is
27   based on the fact that an inadvertent software glitch by a third party vendor caused
28   the problem.

**2.** **TOYS Has Offered to Provide Stipulations Concerning the Requested Issues.**

The fact that Plaintiffs simply do not need further responses to RFAs 38 and 39 is reinforced by the fact that TOYS has offered to stipulate that: (1) TOYS' employees made credit purchases during the 2006 holiday season, and (2) some of those employees may have been officers with knowledge of FACTA's truncation requirements.  (*See* Moore Decl., Ex. A.)  By providing these stipulations, TOYS has essentially admitted the requests at issue.  Based on these stipulations, Plaintiffs could make the arguments that they say they will need to make in their motions for class certification.  This is a reasonable compromise, which is exactly what F.R.C.P. dictates.

**C.** **Under Rule 26, the Court Should Balance the Burden in Providing Further Responses to RFAs 38 and 39 Against Plaintiffs Need for the Information.**

Rule 26 empowers a court, either upon motion by a party or on its own initiative, to: "limit the frequency or extent of use of the discovery methods otherwise permitted" under the Federal Rules of Civil Procedure if it concludes that (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit." *Nicholas v. Wyndham Intl.*, 373 F.3d 537, 543 (4th Cir. 2004) (internal quotation marks omitted).  TOYS is filing a concurrent motion for a protective order under Rule 26. That, along with the Court's inherent authority (under Rule 26) to limit abusive discovery places the issue of burden is properly before the Court.

In the context of a putative class action, when managing pre-certification discovery, "the Court must 'balance the need to promote effective case management,

25

1  the need to prevent potential abuse, and the need to protect the rights of all parties.'"

2  *U. S. E.E.O.C. v. ABM Industries, Inc.*, No. 1:07-cv-01428-LJO-TAG, 2008 WL

3  5385618, *4 (E.D. Cal. 2008).  "Consequently, the discovery must be broad enough to

4  give the plaintiffs 'a realistic opportunity to meet [the certification] requirements.'"  *Id.*

5  "However, it must also protect the defendants against discovery that is irrelevant or

6  invades privileged or confidential areas.  <u>Precertification discovery is within the</u>

7  <u>discretion of the court, and limitations may be imposed within the court's discretion.</u>"

8  *Id.* (internal citations omitted; emphasis added).

9        **1.    <u>The Burden of Further Responding to RFAs 38 and 39 Greatly</u>**

10               **<u>Outweighs Plaintiffs' Need for the Information.</u>**

11        In *Nicholas*, the defendant sought to compel the plaintiffs to submit to an

12  F.R.C.P. 30(b)(6) deposition (by serving a subpoena on a corporation owned by the

13  plaintiffs).  The district court denied the discovery as "cumulative and duplicative,

14  unduly burdensome and harassing" because the information was only marginally

15  relevant to the issues before the court, and the defendant had already been provided

16  documents and taken depositions concerning the information sought.  *Nicholas*, supra,

17  at 543.  Under those circumstances, the appellate court held that the district court was

18  "well within its discretion" to deny the additional discovery.  *Id.*

19        The trial court in *Nicholas* undertook a Rule 26 balancing analysis, weighing the

20  requesting party's need for the information against the time and effort of gathering the

21  information, and finding that the burden outweighed the need.  The same is true in this

22  case.  The 2006 holiday season was over three years ago.  At the time, TOYS had

23  hundreds of stores and thousands of employees.  It processed over 16,000,000

24  transactions (and hundreds of millions more since then).  In light of the elapsed time

25  and sheer volume of data, as Counsel for TOYS has repeatedly explained to Counsel

26  for Plaintiffs, gathering the requested data will not be an easy task.  It would entail

27  creating a list of employees and officers who worked during the 2006 holiday season,

28

1  working with a technical team to determine how the relevant electronic data could be

2  compiled and searched (including creating a new software systems environment and

3  obtaining information from back up tapes) and, finally, interviewing employees to see

4  which of them knew of FACTA's requirements.  (*See* Shelton Decl., Ex. A; Moore

5  Decl., Ex. C.)  This is an enormous undertaking.

6      Plaintiffs point to the fact that TOYS has not provided a concrete dollar amount,

7  to "quantify" the burden.  In order for TOYS to provide such quantification it would

8  have to undertake a time-consuming inventory and analysis, to even figure out if/how

9  the information could be accessed, and then most likely submit a request for bids for

10  third party vendors to perform the work involved.  This would be an additional burden

11  that TOYS would have to shoulder.  The actual dollar amount of the burden is not

12  necessary to conduct a balancing analysis under Rule 26 - it's clear that the burden

13  would be high.  Balanced against the fact that Plaintiffs have *absolutely no need for the*

14  *information at the class certification stage*, TOYS' showing of burden is sufficient to

15  defeat Plaintiffs' motion to compel.

16      **2.    Plaintiffs Do Not Need the Information Sought by RFAs 38 and 39**

17  **Because it is Not Relevant to Class Certification.**

18      In *Nicholas*, the court found that the information requested was only relevant, if

19  at all, "in the broadest sense" and only had a "tenuous connection" to the issues of the

20  lawsuit.  *Id.* at 543.  In denying a motion to compel the information, the Court stated:

21  "the simple fact that requested information is discoverable under Rule 26(a) does not

22  mean that the discovery must be had."  *Id.*  The *Nicholas* court engaged in a Rule 26

23  balancing analysis, and decided that the information was not worth the time and effort

24  it would take to produce.  As explained at length above, the information sought by

25  RFAs is completely irrelevant to class certification.

26  ///

27  ///

28

3.   **Plaintiffs Already Deposed the Person Most Knowledgeable About the Information Sought By RFAs 38 and 39.**

In *Nicholas*, in denying the motion to compel, the court relied on the fact that the requesting party had already taken a deposition of the person in possession of the information.  *Id*.  In this case, Plaintiffs have already taken the deposition of TOYS' Project Manager for "Point of Sale" Transactions, Dennis Gleason.  (*See* Moore Declaration, Ex. E.)  As the person "specifically responsible" for TOYS point of sale technology (i.e., cash registers), and as an employee with knowledge of FACTA requirements, Mr. Gleason is the TOYS employee who would be most knowledgeable about purchases made by TOYS' employees who had knowledge of FACTA.  (*See* Shelton Decl., Ex. F.)  Plaintiffs should have asked him about it when they had him in deposition the first time.  Even if he didn't know the number of TOYS employees with knowledge of FACTA who made credit purchases during the 2006 holiday season, he could have provided whatever information he had concerning his own purchases, which he most likely would have remembered back in the Summer of 2007 (when the deposition was taken).  As things stand now, too much time has passed and the burden of gathering the information has only increased, firmly weighing against compelling TOYS to provide further responses to RFAs 38 and 39.

4.   **TOYS Has Not Waived the Right to Assert Undue Burden in Response to RFAs 38 and 39.**

Plaintiffs state that TOYS has waived any right to object to RFAs 38 and 39 on the grounds that they would require a burden not commensurate with any relevance or need for the information, because its original responses did not contain the objection.  This is not a correct interpretation of the law.  As Plaintiffs own cited case clearly states, a court should "not consider any objections raised for the first time in the Joint Stipulation." *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 409-410 (C.D. Cal. 2005).  TOYS is not raising the fact that conclusively answering RFAs 38 and 39

would be an unnecessary burden for the first time in this joint stipulation.  As Exhibit A to the Shelton Declaration and Exhibit C to the Moore Declaration show, Counsel for TOYS repeatedly explained the burden to Counsel for Plaintiffs (including in an intensive three-hour meet and confer session on January 4, 2010, and in correspondence and discovery requests before and after that session).

Even prior to the meet and confer exchanges on RFAs 38 and 39, TOYS provided verified interrogatory responses to Plaintiffs' other discovery requests in which it detailed the burden involved in gathering the requested information, including TOYS' supplemental written responses to Plaintiff Gregory Ellis Request for Production No 3 (which is the request at issue in the concurrently-filed motions of TOYS and Plaintiff Ellis)[7].   These responses were also served on Counsel for Edwards/Schley - *the week before* Edwards/Schley served RFAs 38 and 39.  On their face, RFAs 38 and 39 obviously require examination of the same documents requested in Ellis' RFP 3, so Edwards/Schley can't credibly claim they didn't know TOYS would have a problem answering RFAs 38 and 39 before they served them.  Accordingly, the issue of whether providing further responses to RFAs 38 and 39 would work an undue and unnecessary burden on TOYS is properly before the Court.

### D.   CONCLUSION

It has been three long years.  The case is, finally, ready for class certification briefing.  Counsel for Plaintiffs admitted Plaintiffs are "ready" for class certification.  Under the circumstances, it would be unfair to force TOYS to suffer the burden that would be necessary to further respond to last-minute discovery requests that are not necessary for class certification.  If a class is ever certified (which appears unlikely), then will be the time to address issues concerning "willfulness" and class notification,

---

[7]   *See* concurrently-filed "Joint Stipulation Re:  Ellis Plaintiff's Motion Re the Sufficiency of Defendant's Response and Objection to Second Request for Production of Documents No. 3.

1   including what additional discovery might be needed to address them.  Now is not the

2   time.  Accordingly, TOYS respectfully requests that the Court deny the motion to

3   compel.

4

5   **IV.    RFA NO. 38**

6          **1.    Text of RFA No. 38:**

7

8   38.    Admit that persons employed by TOYS who knew of FACTA's truncation
        requirements before December 4, 2006 made debit or credit card purchases
        between December 4, 2006 and December 27, 2006 that resulted in them being
9       provided with RECEIPTS on which ten account digits were visibly printed.
        *See* Moore Declaration, Exh. A, Request No. 38.

10

11         **2.    Defendant's Responses to RFA No. 38:**

12  RESPONSE:

13      TOYS objects to this request because it is irrelevant.   Subject to this objection,

14      TOYS responds that it does not have information sufficient to admit or deny this

15      request, but is prepared to stipulate that its employees made purchase [sic]

16      during the holiday season in the December 4, 2006 to December 27, 2006 time

17      period.

18  FURTHER RESPONSE:

19      Subject to the objections set forth in the original response to this request, TOYS

20      responds that it does not have information sufficient to admit or deny this

21      request, but is prepared to stipulate that its employees made purchases during the

22      holiday season in the December 4, 2006 to December 27, 2006 time period and

23      some of these employees may have been officers and some of these employees

24      may have been aware of FACTA's truncation requirements.

25        *See* Moore Decl., Exh. A, Further Response to Request No. 38.

26  ///

27  ///

28

### 3. __Plaintiffs' Contentions:__

The only difference between Request No. 38 and Request No. 39, set forth above, is that Request No. 39 is limited to "officers," whereas Request No. 38 applies to "persons employed by Toys," including those non-officer employees (such as Mr. Gleason and others) who Defendant has identified as having known of FACTA's requirements and/or been responsible for ensuring compliance with FACTA prior to the lawsuit (and thus implicitly knowing of FACTA's requirements).

Defendant's objections and responses are substantively identical, and improper for the reasons set forth above. Rather than repeating the text set forth above and unnecessarily extending the length of this brief, Plaintiffs incorporate their contentions set forth above in connection with RFA No. 39 as though set forth herein.

To summarize, Defendant's response and further response to RFA No. 38 do not satisfy Rule 36(a)(4), the information requested is plainly relevant, and Defendant did not object on burden grounds and has therefore waived any right to belatedly claim that an "undue burden" precludes it from responding in the fashion required by Rule 36(a)(4). Defendant had no basis, and has no basis, for refusing to respond as to whether those employees that it has previously identified as knowing about FACTA or being responsible for ensuring FACTA compliance in fact made credit/debit purchases during the time period in question that resulted in them receiving receipts that did not comply with FACTA. Plaintiffs' compromise proposal, discussed above, would have resolved the parties' dispute as to both RFA No. 38 and 39, had Defendant elected to accept it. Defendant did not do so, forcing Plaintiffs to bring this motion.

Request No. 38 therefore also should be <u>deemed admitted</u>. Defendant's failure to respond properly and continuing refusal to respond properly while seeking to rely on "burden" objections that it did not make and has not substantiated, combined with its willingness to stipulate - in lieu of responding - that employees who made credit/debit

1  card purchases during the period "may" have been officers who were aware of

2  FACTA's requirements, warrants simply deeming RFA No. 38 admitted.

3  In the alternative, if the Court will not deem the request admitted, Plaintiffs

4  respectfully request that the Court order Defendant to engage in a reasonable inquiry

5  and to provide a further response that is consistent with Rule 36(a)(4).

6

7        **4.    <u>Defendant's Contentions</u>:**

8  For the sake of brevity, TOYS incorporates herein by reference it's Contentions

9  Regarding RFA No. 39 above.

10

11  Dated:   January 20, 2010

12

13        By:_____/s/_____
          J. Mark Moore
14        of Spiro Moss LLP
          11377 W. Olympic Blvd., 5th Floor
15        Los Angeles, CA  90064
          Attorneys for Plaintiffs Edwards and Schley

16

17        By:_____/s/_____
18        Dominique R. Shelton
          WILDMAN, HARROLD, ALLEN & DIXON LLP
19        225 West Wacker Drive, Suite 2800
          Chicago, IL 60606-1229
20        Attorneys for Defendant
          Toys 'R' Us-Delaware, Inc.

21

22

23

24

25

26

27

28

32