Michael Dockterman (dockterman@wildman.com)
225 West Wacker Drive, Suite 2800
Chicago, IL 60606-1229
Telephone:   (312) 201-2000
Facsimile:    (312) 201-2555

Dominique R. Shelton (dshelton@wildman.com)
Clinton J. McCord (mccord@wildman.com)
9665 Wilshire Boulevard, Suite 200
Los Angeles, CA  90212
Telephone:   (310) 860-8700
Facsimile:    (310) 860-3800

Attorneys for Defendant
TOYS "R" US - DELAWARE, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ***In Re*: TOYS "R" US – DELAWARE, INC. – FAIR AND ACCURATE CREDIT TRANSACTIONS ACT (FACTA) LITIGATION** | MDL No. CV 08-01980 MMM (FMOx)<br>No. CV 06-08163 MMM (FMOx)<br>No. CV 08-06645 MMM (FMOx)<br><br>**JOINT STIPULATION RE: TOYS "R" US – DELAWARE, INC.'S MOTION FOR PROTECTIVE ORDER**<br><br>Date:   February 17, 2010<br>Time:   10:00 a.m.<br>Dept:   F, 9th Floor, Spring Street Courthouse<br><br>**[L.R. 37-2]** |

Pursuant to Local Rule 37, the Parties hereby submit this Joint Stipulation

Regarding Toys "R" Us' ("TOYS") Motion for Protective order:

# TABLE OF CONTENTS

TOYS' INTRODUCTION ................................................................................1

PLAINTIFFS' INTRODUCTORY STATEMENT ....................................................4

    1.    Toys Has Not Established Grounds For A Protective
           Order ..................................................................................5

    2.    Toys Is Not Candid About The History of this Litigation ................5

I.    PLAINTIFFS' F.R.C.P. 30(b)(6) DEPOSITION NOTICE ..........................7

    A.    A Protective Order is Necessary to Prevent a PMK
         Deposition Concerning TOYS' 2007 Document
         Production ..........................................................................8

         1.    Plaintiffs are Estopped From Questioning TOYS'
               Production Because It Was Approved Over Two
               Years Ago ..................................................................9

         2.    Plaintiffs' Delay in Objecting To TOYS'
               Thorough Production Has Caused Substantial
               Prejudice to TOYS ......................................................9

         3.    A PMK Deposition is Unnecessary Because
               TOYS' Entire 2007 Production Was Indexed in
               September 2009 ........................................................10

    B.    A Protective Order is Necessary to Prevent an
         Unnecessary PMK Deposition Regarding TOYS'
          Compliance with FACTA ....................................................13

         1.    These Subjects Are Irrelevant to Class
               Certification ............................................................13

         2.    A Deposition is Unnecessary Because TOYS Has
               Already Admitted It Had Knowledge of FACTA's
               Requirements ..........................................................14

         3.    A Protective Order is Necessary Because Plaintiffs
               Have Already Obtained Deposition Testimony
               Admitting that TOYS had Knowledge of FACTA
               at all Relevant Times ..................................................15

i

4.    Another Deposition Would Cause Substantial Prejudice to TOYS ................................................................16

C.    Toys Should Be Protected From Producing a Witness To Testify About TOYS Communications With Class Members ........................................................................16

    1.    This Subject is Irrelevant to Class Certification .....................16

    2.    A Deposition is Unnecessary Because TOYS Has Already Admitted That It Has Had No Such Communications ..................................................................17

D.    Toys Should Be Protected From Producing a Witness To Testify About Purchases Made by TOYS Employees During the 2006 Holiday Season .......................................................17

    1.    This Subject is Irrelevant to Class Certification .....................18

    2.    TOYS Knowledge of FACTA is Not at Issue ..........................18

    3.    The Deposition Would Cause Substantial Prejudice and Undue Burden .................................................18

    4.    TOYS Does Not Have a PMK, But Has Offered to Stipulate that Its Employees Made Purchases .........................19

E.    Toys Should Be Protected From Producing a Witness To Testify About TOYS' Ability to Identify Class Members Because A Class Has Not Been Certified ..........................................20

    1.    This Subject is Irrelevant to Class Certification .....................20

    2.    The Deposition Would Cause Substantial Prejudice and Undue Burden to TOYS .................................21

    3.    A Deposition is Unnecessary For Class Motions Because TOYS Has Stipulated to Numerosity .......................21

F.    TOYS Should Be Protected From Producing a Witness To Testify About Its Financial Condition ..........................................21

    1.    This Subject is Irrelevant to Class Certification .....................21

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**

2. A Deposition is Unnecessary Because TOYS Has Already Provided Financial Information ...............................22

G. TOYS Should Be Protected From Producing a Witness To Testify About TOYS' Legal Representation ...............................22

1. A Deposition on this Subject is Completely Irrelevant, for Any Purpose.....................................................22

2. The Request for this Information Serves No Legitimate Purpose, Only to Harass TOYS............................23

PLAINTIFFS' CONTENTIONS REGARDING THE COORDINATED 30(b)(6) DEPOSITION...................................................23

1. Toys' Introductory Discussion Regarding the Deposition Notice And Judge Morrow's Supposed "Instructions" Leaves Much to be Desired................................................................23

2. Toys Has Not  Met Its Burden To Obtain "Protection" From Its Own Deposition...................................................................26

3. Plaintiffs' Responses To Toys' Specific Arguments About Particular PMK Deposition Topics.........................................30

A. Topics Concerning Toys' 2007 Document Production [Nos. 1, 25-31] ...............................................................................30

(1) Toys' "Estoppel" Argument Is Baseless, Predicated On Untruths, and Waived ......................................30

(2) Toys' New Claims About "Substantial Prejudice" Are Unsupported...................................................................34

(3) Toys' Argument that a Deposition Is "Unnecessary" Because It Provided an "Index" in September, 2009 Is Likewise Baseless....................................36

B. Topics Relating to Toys' Knowledge of FACTA, Compliance/Non-Compliance with FACTA, and Communications With Officers/Employees Regarding Same.................................................................................................38

(1) Toys' "Irrelevance to Class Certification" Argument Fails .................................................................40

iii

(2)    Providing Some Written Discovery Responses
       Regarding Some of the Same Matters Does Not
       Preclude Being Deposed ...........................................................43

(3)    The Fact that the *Edwards* Plaintiffs – but not Mr.
       Ellis – Deposed Toys' MSJ Declarants In Order To
       Defeat Toys' Motion For Summary Judgment
       Does Not Preclude *Toys* Itself From Being
       Deposed ...................................................................................45

(4)    Toys' "Substantial Prejudice" Argument Is
       Unsupported and Baseless ......................................................49

C.    Topic 2 – Communications With Class Members
      Regarding the Existence, or Lack of, Injury or Damages .................51

D.    Topic Nos. 12-13, 20-25, and 32-33, Relating To Toys'
      Possible *Awareness That It Was Violating FACTA* Before
      It Claims It Had Such Awareness, Are Proper Subjects
      For Its Deposition ...............................................................................53

      1.    Plaintiffs Should Be Permitted to Depose Toys On
            These Relevant Matters Now ....................................................53

      2.    Toys' Boilerplate Arguments Lack Merit................................56

            (a)    This Discovery is Plainly Relevant ................................56

            (b)    Toys' Claims About Its "Admitted"
                   Knowledge of FACTA Miss The Point..........................56

            (c)    Toys' Claims About "Substantial Prejudice
                   and Undue Burden" Are Unsupported and
                   Baseless ..................................................................57

E.    Topics 3-8 and 19 Are Proper Subjects for Discovery
      Now ......................................................................................................59

F.    Topic No. 9 – Relating to Toys' Financial Condition – Is
      Proper ...................................................................................................61

G.    Topics 14 and 15 – Regarding Toys' Legal
      Representation in 2006 – Are Not Off-Limits ....................................63

iv

II.   PLAINTIFF GREGORY ELLIS' REQUEST FOR
      PRODUCTION OF ALL DOCUMENTS RELATED TO
      CREDIT/DEBIT PURCHASES BY TOYS' EMPLOYEES .......................64

      A.   TOYS Should Be Protected From the Unnecessary Time
           and Expense that Would Be Required to Respond to this
           Irrelevant and Overbroad Request ......................................................66

           1.   The Request is Irrelevant to Class Certification ......................66

           2.   The Request is Massively Overbroad .......................................67

           3.   The Request is Unduly Burdensome .........................................67

           4.   The Request is Completely Unnecessary Because
                TOYS Has Already Admitted the Information
                Sought .......................................................................................68

PLAINTIFF ELLIS'S CONTENTIONS RE ELLIS RFP NO. 3 ...........................68

           1.   The Relevance Behind *Ellis* RFP No. 3 ................................68

                a.   Ellis RFP No. 3 is Relevant to Class Certification .................69

           2.   Ellis RFP No. 3 Is Not Overbroad .........................................70

           3.   The Production Of Documents Pursuant To RFP No. 3 Is
                Not Burdensome .......................................................................70

III.  PLAINTIFFS NICOLA EDWARDS' AND JAMES
      SCHLEY'S REQUESTS FOR ADMISSIONS CONCERNING
      TOYS EMPLOYEES' PURCHASES ............................................................71

           1.   These Requests Are Irrelevant to Class Certification ........................73

           2.   TOYS Does Not Have Information to Admit or Deny
                These Requests, So a Protective Order is Necessary ..........................73

*EDWARDS* PLAINTIFFS' CONTENTIONS REGARDING
*EDWARDS* RFA NOS. 38 AND 39 ...............................................................73

IV.   A PROTECTIVE ORDER IS NECESSARY TO PREVENT
      THE DEPOSITION OF TOYS' IN-HOUSE COUNSEL ...........................77

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' POSITIONS REGARDING THE DEPOSITION OF
    JOEL TENNENBERG...............................................................................77

PLAINTIFFS' CONCLUSION................................................................................78

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

## TOYS' INTRODUCTION

TOYS seeks a protective order to stop Plaintiffs' repeated demands for additional information, depositions and documents that: (1) have already been provided; or (2) would require a burden that is utterly disproportionate to any stated need for the material. By way of background, this putative class action regarding the Fair and Accurate Credit Transactions Act ("FACTA") is over three years old. The Plaintiffs' claims result from a software glitch where for a period of six weeks TOYS customer receipts inadvertently printed more than five digits of the customers' credit card numbers. TOYS does not dispute that this glitch occurred but has confirmed its immediate repair within nine days of the filing of the Edwards complaint – by January 4, 2007.

In 2007, TOYS provided massive amounts of documents and information, which Plaintiffs accepted, without complaint until now. From 2007 to the present, TOYS has responded to <u>eighteen</u> separate discovery requests– comprised of three requests for documents, seven sets off interrogatories, and four requests for admissions.[1]  Moreover, in June 2007, TOYS produced <u>267,761</u> documents. That same year, the Edwards Plaintiffs deposed three key TOYS employees two of which TOYS previously identified in verified interrogatory responses as having knowledge of FACTA and TOYS' compliance with same.

Armed with the massive body of information TOYS produced in 2007, Plaintiffs have collectively filed *three* motions for class certification to date. Edwards' original class certification motion was filed on October 29, 2007 (Dkt 76), and Ellis' class certification motion was filed first in Illinois (in 2008) and a second time (on May 26, 2009) in the California MDL (Dkt 20).

This case was stayed pending resolution of a similar case by the Ninth Circuit. When the Court lifted the stay on June 15, 2009, Plaintiffs announced

---

[1] See concurrently-filed Declaration of Dominique R. Shelton in Support of Motion for Protective Order ("Shelton Decl."), Exh. A.)

1

1  intentions to file updated motions for class certification.  However, as Edwards'
2  counsel represented to the Court, **no new discovery was needed to do this**:

3        **The Court**:  So, I think Mr. Moore, maybe you can address
4        what discovery you believe is required for class certification
5        purposes.
6        **Mr. Moore:  None**, your Honor. We're ready.  (Emphasis
7        added)

8       Rather than simply updating their class motions, as they told the Court they
9  would, Plaintiffs have engaged in a pattern of serving wave after wave of
10 overlapping discovery requests and insisting on responses to old discovery that is
11 duplicative of what TOYS already provided in 2007.  When TOYS objected on the
12 grounds that the discovery was (1) duplicative of prior discovery; (2) ridiculously
13 overbroad and burdensome; and (3) completely irrelevant to the upcoming class
14 certification motions, Plaintiffs counsel responded with (1) vitriolic "meet and
15 confer" communications, (2) *more* sets of discovery, and (3) saber-rattling
16 regarding sanctions (a wholly improper and baseless tactic).  To be clear, Plaintiffs
17 have insisted on responses to 129 *specific* discovery requests – since June 15, 2009
18 – none of which are germane to class certification.

19      TOYS has spent hours meeting and conferring with opposing counsel about
20 their duplicative requests since June 2009.  In an effort to resolve Plaintiffs'
21 complaints, TOYS has repeatedly volunteered information, offered stipulations,
22 created indices of its 261,761 page document production and even amended its
23 responses <u>eight times</u> since September 2009.  Where TOYS has not had an
24 efficient way to provide precise answers (e.g., which of the 16 million receipts
25 belong to TOYS employees), TOYS has offered stipulations.

26      While most of the 100 plus disputes have been resolved, Plaintiffs have
27 refused to accept TOYS compromises as to 6 requests.  Specifically, Plaintiffs
28 have insisted on discovery to identify class members who are TOYS employees

2

1    (Edwards RFA 38, 39 and Ellis RFP No.3).  As explained repeatedly to Plaintiffs,

2    TOYS does not have an efficient way to determine which of the 16 million receipts

3    at issue were issued to employees.  Therefore, TOYS has offered a stipulation

4    instead that its employees made purchases in December 2006.  Plaintiffs have also

5    noticed a 30 (b)(6) deposition containing thirty-three separate burdensome topics

6    that either (a) overlap with the information TOYS produced in 2007, or (b) concern

7    class identification issues that should be addressed (if at all) <u>only</u> if a class is

8    certified.  Finally, after a multi-hour meet and confer on January 4, 2010, wherein

9    TOYS requested that plaintiffs work with TOYS to focus discovery on class issues,

10   plaintiffs re-noticed the deposition of TOYS' in-house litigation counsel, Joel

11   Tennenberg, whose testimony would be unrelated to class issues and useless given

12   attorney client privilege and work product concerns.

13         In meet and confer, Plaintiffs have contended that they have an absolute

14   right to propound numerous repetitive and duplicative sets of discovery – without

15   limits whatsoever.  Plaintiffs are wrong.  *Nicholas v. Wyndham Intl., Inc.*, 373 F.3d

16   537, 543 (4th Cir. 2004) is instructive here.  In *Nicholas*, the defendant sought to

17   compel the plaintiffs to submit to an F.R.C.P. 30(b)(6) deposition.  The district

18   court denied the discovery as "cumulative and duplicative, unduly burdensome and

19   harassing" because the information was only marginally relevant, and the

20   <u>defendant had already been provided documents and taken depositions concerning</u>

21   <u>the information sought</u>.  The Fourth Circuit affirmed.

22         A protective order is necessary now to focus plaintiffs on the issue at hand –

23   i.e., class certification.  It does not make sense for TOYS to expend resources on

24   class identification issues *before* we know whether a class will be certified or

25   whether it will concern a $16 billion exposure (if a class is certified) or a $3,000 (if

26   one is not).  This is especially true given that  85% of the district courts in this

27   Circuit have denied class certification in FACTA cases where the named plaintiffs

28   have not suffered any identity theft – which is the case here.

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**

FINAL Joint Stipulation (TOYS_ Motion) (3)

## **PLAINTIFFS' INTRODUCTORY STATEMENT**

Toys has filed a blunderbuss, wide-ranging "motion for protective order" which is entirely without merit. Its motion *belatedly* seeks (1) "protection" from two coordinated depositions – one of *Toys itself* – which were originally noticed for October 2009 and would already have taken place, if not for Toys' request that they be postponed until after the parties' December 3, 2009 mediation and after Toys' "holiday season," and if not for Toys' subsequent *flat refusal to appear for them on the newly-noticed deposition dates this month* despite lacking a protective order permitting Toys to do so; (2) "protection" from having to respond further to a document request propounded months ago in the second-filed *Ellis* case, to which Toys already responded (inadequately) *without* first seeking a protective order; and (3) "protection" from having to respond *properly* to two RFAs (Nos. 38 and 39) served by the *Edwards* plaintiffs, to which Toys already "responded" (inadequately), *without* any objections as to burden, and *without* seeking a protective order first.[2]

Primarily, what Toys seeks is "protection" forbidding Plaintiffs from taking *its own deposition* and the deposition of Joel Tennenberg, the person *it has identified* in sworn discovery responses as being in charge of FACTA compliance. None of the "protection" it seeks is warranted. To the contrary, its arguments are for the most part legally frivolous, unsupported by admissible *evidence*, and, often, predicated on outright falsehoods (explaining why Toys fails to offer sworn testimony proving many of its bald assertions about alleged facts). Toys has failed to meet the heavy burden it bears to demonstrate that good cause exists for the protective order it seeks.

Its motion should be denied, and Plaintiffs should be awarded their

---

[2] RFA Nos. 38 and 39 are **already** the subject of a pending motion, filed by the Edwards plaintiffs on January 20, 2010 (MDL Document No. 23), which leaves one wondering why Toys feels it needs to bring its own dueling, belated motion seeking nebulous "protection" from Plaintiffs' efforts to obtain proper responses under Rule 36(a)(4).

4

reasonable attorneys' fees in defeating it.  Toys also should be required to produce a corporate representative(s) and Mr. Tennenberg, for depositions forthwith.

### 1.  Toys Has Not Established Grounds For A Protective Order

"The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Duran v. Cisco Systems, Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009). A party seeking a protective order, as here, "must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements." *Skellerup Industries Ltd. V. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995).  A "strong showing is required before a party will be denied entirely the right to take a deposition." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)*.  Doing so is usually in error. WebSideStory, Inc. v. Netratings, Inc.*, 2007 WL 1120567, \*12 (S.D. Cal. April 6, 2007).

### 2.  Toys Is Not Candid About The History of this Litigation

Plaintiffs will address Toys' false and misleading statements as they appear in this document. For now, a few examples appearing *just in its Introductory Statement* are set forth here and in the footnote below.  Toys suggests that "Plaintiffs" "told" the Court that they were only going to be updating their class certification motions without further discovery of any sort, and says that "none" of Plaintiffs' discovery served since June 2009 relates to class certification.  This is untrue, and the transcript which Toys cites does not support its claim.  See Shelton Decl., Exh. "F".  Toys also says that Plaintiffs "have contended that they have an absolute right to propound numerous repetitive and duplicative sets of discovery – without limits whatsoever."   Nonsense.   Toys cites no evidence for this preposterous claim.  Plaintiffs do have a right to use the various discovery devices available to them. [3]

---

[3] Toys also says (without evidence) that Plaintiffs' claims result "from a software glitch where for a period of six weeks TOYS customer receipts inadvertently printed more than five digits of the

1    Despite Toys' misleading arguments and inexplicable efforts to preclude its
2  own deposition, Plaintiffs plainly can depose Toys, the named defendant.
3  Plaintiffs also are entitled to depose Mr. Tennenberg, since Toys has repeatedly
4  identified him as a witness having knowledge about central issues in the case.
5  Toys' efforts to preclude such discovery by claiming that it is irrelevant to class
6  certification fall flat because (1) relevance to class certification is *not* the standard;
7  (2) discovery plainly has *not* been bifurcated and merits-related discovery is fair
8  game (despite Toys' claims about Judge Morrow's supposed "instructions"); and,
9  in any event, (3) Toys errs in claiming that Plaintiffs' discovery is "irrelevant to
10  class certification."[4]   Merely repeating a mantra that everything is irrelevant
11  doesn't make it so, let alone demonstrate good cause to prevent Toys' deposition.

12    Toys' belated efforts to "protect" itself from *Edwards* RFA Nos. 38 and 39
13  and *Ellis* RFP No. 3 fare no better.  If it truly felt these requests were improper, it
14  should have sought a protective order before responding.  Its Motion lacks merit.

---

18  (..continued)
19  customers' account numbers."  In fact, the person responsible for the "glitch" testified that two
    officers of Toys approved the masking change, and the receipts printed with ten digits from late
20  October, 2006 through January 4, 2007 – far more than "six weeks."  *See also Edwards v. Toys
    "R" Us,* 527 F.Supp.2d 1197, 1203-1207, 1214, and n. 56 (C.D. Cal. Nov. 5, 2007) (denying Toys'
21  motion for summary judgment).  Toys suggests that discovery should be precluded because "this
    case" is "three years old," omitting that it was stayed from November 2007 until mid-June 2009,
22  and that Mr. Ellis did not become part of the litigation until 2009 after the MDL transfer order.
    Relatedly, Toys says that in 2007, it provided "massive amounts of documents and information,
23  which Plaintiffs accepted, without complaint until now."  This is inaccurate, both because the
    *Edwards* Plaintiffs *have* previously complained, as Toys concedes in saying it has amended its
24  responses "eight times since September 2009" (see also Moore Decl., Exh. 1) and because the
    plaintiff in *Ellis* was not part of the litigation in 2007, and thus *could not* have "complained" until
25  recently.  It is Mr. Ellis's attorneys who have understandably been the most interested in these
26  topics.

27  [4] Compare, *e.g.,* Toys' claim that its financial condition is "irrelevant" with its 2007 response to
    *Edwards* Interrogatory No. 1. d.  (Moore Decl., Exh. 2.)
28

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

## I.  PLAINTIFFS' F.R.C.P. 30(B)(6) DEPOSITION NOTICE[5]

Plaintiffs Edwards/Schley and Ellis served a "COORDINATED NOTICE
OF DEPOSITION OF DEFENDANT TOYS "R" US–DELAWARE, INC.,
PURSUANT TO FRCP 30(b)(6)" on December 31, 2009, including thirty-three
subjects for which they demanded that TOYS designate a "person most
knowledgeable" to testify ("PMK Notice").  TOYS served written objections to the
PMK Notice on the grounds that all of the subjects of inquiry were irrelevant to
class certification (and therefore in contravention of Judge Morrow's prior
instructions that the parties focus on class certification), duplicative of prior
discovery, and overly broad and unduly burdensome on December 16, 2009.
TOYS met and conferred with Plaintiffs' counsel for three hours and thirty minutes
on January 4, 2010 in an attempt to resolve the issues and encourage plaintiffs to
wait to deal with these topics until after class certification issues were addressed.
Although TOYS had the understanding that the parties were working towards
addressing  12 of the 33 topics[6], Plaintiffs counsel advised on January 14, 2010 that
they did not agree to compromise as to the twelve topics after all.[7]

All of the issues that are contained in the PMK Notice are not necessary for
class certification and can wait to be dealt with after the class certification hearing
has occurred. It makes no sense to have the parties engage in the burden and
expense of discovery that is not germane to class certification now – when this can
be addressed, if and when a class is actually certified.  As the *Nicholas* Court noted
in affirming the district's court refusal to permit a duplicative 30(b)(6) deposition:

> **Even assuming that this information is relevant (in the
> broadest sense)**, the simple fact that requested information
> is discoverable under <u>Rule 26(a)</u> **does not mean that
> discovery must be had**. On its own initiative or in response

---

[5] *See*  PMK notice, attached as Exh. P to Shelton Decl.

[6] *See*, Letter from Dominique Shelton dated January 6, 2010, attached Exh. B. Shelton Decl.

[7] *See*, Letter from Mark Moore dated January 14, 2010, attached as Exh. C Shelton Decl.

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

to a motion for protective order under <u>Rule 26(c)</u>, a district court **may limit "the frequency or extent of use of the discovery methods otherwise permitted"** under the Federal Rules of Civil Procedure if it concludes that "(i) the discovery sought is **unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive**; (ii) the party seeking discovery **has had ample opportunity by discovery in the action to obtain the information sought**; or (iii) **the burden or expense of the proposed discovery outweighs its likely benefit.**" <u>Fed.R.Civ.P. 26(b)(2)</u>. Further, upon motion of a party and "for good cause shown," the court in the district in which a deposition is to be taken may "**make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,**" including an order that the discovery not be had. <u>Fed.R.Civ.P. 26(c)</u>. (Emphasis added).

*Nicholas*, 373 F.3d at 543.

TOYS addresses each of the specific deposition subjects below.

## A.   <u>A Protective Order is Necessary to Prevent a PMK Deposition Concerning TOYS' 2007 Document Production</u>

PMK Notice Subjects 1 and 25 through 31 seek to question TOYS' production of 267,761 pages of documents which occurred in 2007 – *over two-and-a-half years ago*.[8]  A protective order should issue.

---

[8] **No. 1** ("All steps and procedures undertaken, and efforts made, by Defendant to determine that the non-privileged documents responsive to the Edwards plaintiffs' requests for production were located and produced."); **No. 25** ("The steps or procedures undertaken by Defendant to segregate the documents produced by Defendant on the 16 CDs produced in response to Plaintiff Ellis' Interrogatories and Production Requests such that the docun1ents are identified as to pertaining to a particular Interrogatory and/or Production Request of Ellis."); **No. 26** ("How the documents produced by Defendant on the 16 CDs in response to Plaintiff Ellis' Interrogatories and Productions Requests are kept and maintained by Defendant."); **No. 27** ("The identity of the person(s) responsible for overseeing and maintaining the docun1ents which were produced by Defendant on the 16 CDs in response to Plaintiff Ellis' Interrogatories and Productions Requests."); **No. 28** ("All efforts and steps undertaken by Defendant to determine that the documents which were produced by Defendant on the 16 CDs in response to Plaintiff Ellis' Interrogatories and productions requests are responsive to Plaintiff Ellis' Interrogatories and Production Requests."); **No. 29,** ("The location(s) where each of the documents which were produced by Defendant on the 16 CDs in response to Plaintiff Ellis' Interrogatories and Productions Requests are kept and maintained by Defendant."); **No. 30** ("How Defendant

8

---

1

### 1. Plaintiffs are Estopped From Questioning TOYS' Production Because It Was Approved Over Two Years Ago.

TOYS made their production of documents over two-and-a-half years ago, during which time Counsel for Edwards/Schley *never once objected* to the production. Moreover, Counsel for Edwards/Schley was consulted prior to the production, and was *actively involved* in structuring the parameters of TOYS' search for documents, which yielded more than 260,000 pages of documents. Moreover, Counsel for Plaintiffs *never brought a motion to compel further responses*. (Subjects 1 and 25 through 31 are simply an end run around a motion to compel.)[9] Under these circumstances, Plaintiffs have waived the right to seek additional information concerning the production. *See Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D.Nev.1999) (Requesting party waived right to compel further responses to discovery requests by waiting **136** days to bring motion to compel.) Here, Plaintiffs waited some 900 days to raise any questions regarding the nature of the production. The objections and discovery related to the production are waived.

### 2. Plaintiffs' Delay in Objecting To TOYS' Thorough Production Has Caused Substantial Prejudice to TOYS.

During the years that Counsel for Plaintiffs delayed seeking more information about TOYS' production of documents in 2007, some of the key people working on the massive production have left the company (including the person who oversaw the production). Of the people that remain at TOYS, the intervening years since the production have caused faded memories of the details

---

(..continued)

organized the documents that it produced on the 16 CDs in response to Plaintiff Ellis' Interrogatories and productions requests."); **No. 31** ("How Defendant retrieved the documents which are contained on the 16 CDs produced by Defendant in response to Plaintiff Ellis' Interrogatories and Productions Requests.")

[9] Seven months ago, Counsel for Plaintiff Gregory Ellis were provided with the exact same production that Counsel for Edwards/Schley were given in 2007. Counsel for Ellis have also not moved to compel further response in that time.

9

1   of the production. TOYS would have to undergo significant time and expense to

2   even locate and question the persons who are still with the company, which time

3   and expense would not have been necessary if this deposition was noticed long

4   ago.

5         Moreover, in September 2009, TOYS *already* responded to Plaintiffs recent

6   complaints, by serving a declaration from its paralegal Peter Heimbach (on

7   September 25, 2009), who was personally involved in gathering documents

8   responsive to the Edwards Plaintiffs' document requests. Mr. Heimbach averred

9   that (a) the electronic documents were gathered and produced to the Edwards

10  Plaintiffs in 2007 in the same format as they were stored; and (b) no effort was

11  made to conceal any documents.[10] In meet and confer on January 4, 2010,

12  Plaintiffs failed to identify what documents they thought they needed for class

13  certification or any alleged problems with Mr. Heimbach's declaration. Under the

14  circumstances, substantial prejudice exists and a protective order is needed. *See*

15  *Gault, supra*, at 622 ("Substantial prejudice" to responding party from requesting

16  party's delay is grounds to deny an attempt to compel further information in

17  response to discovery request.)

### 3.   A PMK Deposition is Unnecessary Because TOYS' Entire 2007 Production Was Indexed in September 2009

20        Plaintiff Gregory Ellis' document requests are entirely duplicative of the

21  prior Edwards discovery (such that Ellis' 54 document requests, served in 2008

22  were subsumed by the prior 61 Edwards' requests to which Toys fully responded in

23  2007).[11] At the June 15, 2009, status conference, TOYS' counsel advised the

---

[10] *See* declaration of Peter Heimbach, served on September 25, 2009, attached as Exh. "D" to Shelton Decl. Notably, Edwards' counsel's only prior comment on Toys' electronic production was that the production might have been *over*-inclusive in certain respects as it captured some personal content stored on employees' hard drives. Yet, plaintiffs were forewarned that this would be unavoidable given the breadth of plaintiffs' requests – before the production occurred in 2007. Moreover, plaintiffs did not object to the production on these grounds..

[11] See chart regarding overlapping nature of requests attached as Exh. E Shelton Decl.

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**

FINAL Joint Stipulation (TOYS_ Motion) (3)

Court of this fact.[12]  At the conference, Judge Morrow directed the parties to focus on discovery related to class certification.  Subsequently (by letter dated August 5, 2009), Counsel for TOYS again advised Counsel for Ellis that Ellis' First Set of Document Requests was entirely duplicative of the Edwards discovery.[13]

Five weeks later, on September 10, 2009, Counsel for Ellis finally responded, sending a letter in which they demanded specific responses to each of the 54 duplicative discovery requests, and failing to identify any relevance to class certification issues.[14]  In the letter, counsel for Ellis threatened to bring a motion to compel unless TOYS re-arranged its entire production of over 260,000 records to correspond to each of Ellis' 51 duplicative document requests.  Thereafter, on September 14, 2009, TOYS provided written responses to the Ellis requests in which it specifically objected on the grounds that the requests were duplicative of the Edwards requests.  That same day, the Court held a second scheduling conference, in which it <u>again instructed the parties to focus on class certification discovery</u>, and specifically directed counsel "to meet and confer regarding what discovery Ellis needs beyond the Edwards discovery within one week."[15]  Ellis never advised which requests related to class certification.

On September 17, 2009, Ellis' counsel sent a letter in which they conceded that all, but four of their requests were entirely duplicative of Edwards' requests.[16]  Thereafter, counsel for TOYS and Ellis held a meet and confer telephone conference in which TOYS (a) advised that all of the Ellis requests were duplicative of the Edwards requests; and (b) agreed to supplement TOYS responses to Ellis' requests to "direct Plaintiff Ellis to a more definite range of documents per response, if possible," even though TOYS had no obligation to do

---

[12] See June 15, 2009 Transcript attached as Exh. F Shelton Decl.

[13] See Letter from Dominique Shelton dated August 5, 2009, attached as Exh. G Shelton Decl.

[14] Letter from John Irwin dated September 10, 2009, attached as Exh. H Shelton Decl.

[15] See Civil Minutes of Further Scheduling Conference, dated September 14, 2009 (Dkt. No. 17).

[16] See letter from John Irwin dated September 17, 2009, Shelton Decl., Exh. I.

so as the 2007 documents were produced in the same format they were stored at Toys, and Plaintiffs had not complained about the production in two years.[17] Between September 14, 2009 and September 25, 2009, TOYS undertook great effort (and great expense) to index its entire 260,000 page electronic production (produced in 2007) using search terms culled from Ellis' duplicative document requests. On September 25, 2009, TOYS served amended responses in which it attached hundreds of pages of detailed indices (identifying documents by Bates number and cross-referencing same to correspond to each of Ellis' document requests).[18]

Notably, the Ellis Plaintiffs failed to place TOYS 260,000 page production on a searchable database, even though the documents were provided to them on 16 CDs as soon as the stay was lifted and they could have easily done so. Instead, TOYS undertook Ellis' counsel's job for them by providing indices that Ellis' counsel could have created. Now, despite the fact that they have the indices they sought (at great expense to TOYS) and did not complain about them for four months, Ellis wants to depose TOYS' PMK regarding how the searches were done – which is improper.

The fact is that over two-and-a-half years have gone by since the production was made. Plaintiffs' delayed complaints about TOYS' document production and threats to bring motion to compel after motion to compel have resulted in prejudice (and additional unnecessary expense) to TOYS. TOYS has done everything it is reasonably able to do to provide Plaintiffs with the information they seek. Consequently, a deposition on this subject would serve no purpose and would only increase the burden and prejudice on TOYS.

---

[17] See Shelton Decl., Exh. D, and ¶ 11.

[18] See copies of indices attached as Shelton Decl., Exh. J.

**B.     A Protective Order is Necessary to Prevent an Unnecessary PMK Deposition Regarding TOYS' Compliance with FACTA.**

Plaintiffs' deposition notice includes duplicative (and therefore harassing) subjects (Nos. 10 and 11) concerning TOYS' knowledge of the FACTA requirements before December 2006.[19]  A PMK deposition as to these topics is unnecessary because TOYS has admitted that it knew of FACTA's requirements at all relevant times.  PMK subjects 16 through 18 concern TOYS' compliance with FACTA truncation requirements.  This information has also been the subject of prior discovery requests, as described more fully below.[20]  Accordingly, subjects 10 and 11, and 16 through 18, are improper for the following reasons:

**1.     These Subjects Are Irrelevant to Class Certification.**

A protective order is necessary because the issue of TOYS' knowledge of FACTA is not germane to any issues pertaining to class certification.  This information is only relevant, if at all, to the "willfulness" of any alleged violation.  Because it is irrelevant to class certification, Plaintiffs' attempts to take discovery on it prior to class certification briefing contravenes Judge Morrow's June 15, 2009, instruction that the parties focus on discovery needed for class certification.

---

[19] **No. 10.** ("The extent of knowledge of Defendant's employees, officers and directors, during the period from October-December 2006, regarding legal truncation requirements for credit and debit card receipts."); **No. 11.** ("The nature, extent and substance of any communications between Defendant and its employees, officers and directors regarding their knowledge, as of the period from October-December 2006, of legal truncation requirements for credit and debit card receipts.")

[20] **No. 16.** ("The identity and nature of all publications and newsletters (in electronic or non-electronic format) that Defendant's information technology department, legal department, home office management, and officers and directors subscribed to or received during the period from the enactment of FACTA to Decen1ber 27, 2006."); **No.17.** ("The nature of all steps taken, or policies and procedures followed, by Defendant to ensure that FACTA's truncation rules for debit and credit card receipts were not violated after the implementation of CR 615."); **No.18.** ("The nature of all steps taken, or policies and procedures followed, by Defendant to ensure that FACTA's truncation rules for credit and debit card receipts were not violated after December 3,2006.")

## 2.   **A Deposition is Unnecessary Because TOYS Has Already Admitted It Had Knowledge of FACTA's Requirements.**

A PMK deposition to show Toys' knowledge of FACTA requirements would be burdensome, harassing and unnecessary because TOYS already admitted two years ago that it had knowledge of FACTA prior to December, 2006, and it identified the employees with that knowledge – who were also deposed in 2007.

Specifically, on **July 12, 2007**, TOYS admitted that prior to December 4, 2006, certain employees at TOYS corporate headquarters were aware that federal law required TOYS to mask credit and debit card account numbers on customer receipts"[21]

On **September 25, 2009**, in response to Ellis' (duplicative) Requests for Admissions, TOYS admitted (yet again) that it :

- "[L]earned of the truncation requirements under FACTA before you were served by this suit."

- "[L]earned of the truncation requirements under FACTA before December 4, 2006."

- "[L]earned of the truncation requirements under FACTA before January 1, 2005."[22]

In addition, as early as July 12, 2007, in response to at least six overlapping and duplicative interrogatories propounded by the Edwards Plaintiffs, TOYS repeatedly identified the specific employees with knowledge of FACTA and TOYS history of compliance dating back to five years before FACTA was operative.[23]  In September 2009, TOYS responded to additional duplicative

---

[21]   Toys' Responses to Edwards Plaintiffs First Set of Interrogatories, No. 4, attached as part of Shelton Exh. A.

[22] Plaintiff Gregory Ellis' First Set of Requests for Admissions, to which TOYS served responses on September 14, 2009), attached as part of Exh. A.

[23] In July 2007, Toys identified (by name) other employees – besides Gleason and Rooney -  with knowledge of FACTA and Toys Compliance– e.g.,  Scott Benson; Melissa Culhane; Dominic Cutillo; Jim Dowd; Joseph Guagenti; Jeannette Lee; Rowena Lochner; Sandy Nassau; Torque Perry; Mark Pfaeffle; Dion Rooney; Joel Tennenberg; Amy Testino; Kevin Walton. *See*  Toy's

14

interrogatories propounded by the Ellis Plaintiff, in which it provided (yet again) the names of the employees with knowledge of FACTA and details regarding TOYS program to protect privacy of customers' credit card numbers and FACTA compliance.[24]   A protective order is necessary to prevent further discovery on this moot issue.

### 3.   A Protective Order is Necessary Because Plaintiffs Have Already Obtained Deposition Testimony Admitting that TOYS had Knowledge of FACTA at all Relevant Times.

TOYS identified Dion Rooney and Dennis Gleason as employees with knowledge of FACTA on July 12, 2007.  These two employees were deposed in August 2007.  Moreover, the deposition of TOYS employee Dennis Gleason was noticed individually and "pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure."[25]  During his deposition, Mr. Gleason provided testimony regarding Toys knowledge of FACTA and compliance issues.[26]  In *Nicholas*, the Circuit Court held that where a party noticing discovery is advised that a witness who is previously deposed would be the corporate designee on the same topic, the 30(b)(6) deposition will not be permitted.  *Nicholas* 373 F. 3d 537 at 543 (denying 30(b)(6) where defendant was "aware that either of the Plaintiffs [who were already deposed]] would have been designated as Brainwave's corporate representative at any deposition).

Here, TOYS advised Plaintiffs in January 2010 that  Mr. Gleason (who has already been deposed) would be the corporate designee as to topics (10-11, 16-18)

_____

(..continued)

Responses to Edwards' First Set of Interrogatories Nos. 4-5, 8, 10-12 (Served July 12, 2007), attached as part of Shelton Decl. Exh. A.

[24] TOYS' Supplemental Responses to Ellis' First Set of Interrogatories  No. 7, served on September 25, 2009, attached as part of Shelton Decl. Exh. A.

[25] Notice of Deposition of Dennis M. Gleason, Shelton Decl., Ex. K.

[26] Gleason Deposition  ("Gleason Depo") 60:10-15, 61:2-3, 11-25, 62:23-63:24; 69:11-25; 66:16-67:7, 17-68:23, 72:-20-74:4 94:19-95:16, attached as Exh. L.

15

pertaining to TOYS FACTA knowledge and compliance.[27]  Plaintiffs insist that they would need to take his deposition yet again to cover ground that is already in the record.  A protective order should issue to prevent this.

### 4. Another Deposition Would Cause Substantial Prejudice to TOYS.

It is unreasonable for TOYS to be forced to attempt to designate anyone other than Mr. Gleason.  The time period at issue in this case is October through December, 2006, *over three years ago*.  During that time TOYS had hundreds of stores and *tens of thousands* of employees.  It would be impossible for TOYS to designate a person (or even ten persons) who could competently testify to the knowledge of those employees three years ago (many of whom were temporary employees and long ago left the company).  And to require TOYS to attempt to gather such information would require an enormous expenditure of resources, especially when such information has already been provided by TOYS' prior discovery responses.  Realistically, Mr. Gleason would be the only possible PMK for topics related to FACTA knowledge and compliance (nos. 10-11, and 16-18), but he was already deposed as a 30(b)(6) witness in August 2007.

### C. Toys Should Be Protected From Producing a Witness To Testify About TOYS Communications With Class Members.

Plaintiffs' Deposition Subject No. 2 concerns communications between TOYS and class members regarding the existence of any injury.[28]

### 1. This Subject is Irrelevant to Class Certification.

This information is obviously only relevant to alleged injuries and not class certification (and therefore contravenes Judge Morrow's instruction that the parties

---

[27] See email from Dominique Shelton dated January 11, 2010, attached as Shelton Exh. M.

[28] **No. 2** ("The nature, scope and substance of all communications between Defendant and class members regarding the existence of, or lack of, injury or damages caused by the illegal conduct at issue.")

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

focus on discovery needed for class certification prior to Plaintiffs' motions for certification).

### 2.     A Deposition is Unnecessary Because TOYS Has Already Admitted That It Has Had No Such Communications.

TOYS has already answered, under oath, the question.  It admitted the following statement (from Plaintiffs Edwards/Schley's Second Set of Requests for Admissions, to which TOYS served responses on December 16, 2009):

> Admit that you have not made any effort to inquire of the millions of customers who were provided with RECEIPTS that contained excess account digits as to whether they have suffered any harm or identity theft as a result of TOYS' having provided them with such RECEIPTS.

In addition, none of the named plaintiffs have even alleged any identity theft resulting from receiving receipts with additional credit card digits.  *See* Edwards complaint (filed December 27, 2006) and Ellis complaint (filed May 13, 2008). Accordingly, a deposition on this topic would be entirely duplicative, and would serve no purpose other than the unnecessary harassment of TOYS.  Although in meet and confer on January 4, 2010, Plaintiffs agreed to consider tabling this request, on January 14, 2010, Edwards Plaintiffs advised that no compromise had been reached.

### D.     Toys Should Be Protected From Producing a Witness To Testify About Purchases Made by TOYS Employees During the 2006 Holiday Season.

Plaintiffs' deposition subjects Nos. 12 and 13, 20 through 24, 32, and 33 concern credit/debit purchases of TOYS employees during the 2006 holiday season, and their recollections of receiving any FACTA non-compliant receipts during that time.[29]  These categories are not proper subjects of inquiry for the following reasons:

---

[29] **No. 12** ("The extent of knowledge of Defendant's employees, officers and directors, during the

17

1

### 1. This Subject is Irrelevant to Class Certification.

The topic of Toys' employees purchases is irrelevant to any issue in this case – much less class certification.

### 2. TOYS Knowledge of FACTA is Not at Issue.

As described above, TOYS has already admitted that it had knowledge of FACTA at all relevant times.

### 3. The Deposition Would Cause Substantial Prejudice and Undue Burden.

The time period at issue in this case is October through December, 2006, *over three years ago*. During that time TOYS had hundreds of stores, *tens of thousands* of employees and processed *tens of millions* of credit and debit transactions. Many of the employees were temporary holiday employees who long ago left the company. It would be impossible for TOYS to designate one person (or a hundred persons) who could competently testify to whether, or how many,

---

(..continued)

period from October-December 2006, regarding the presence or absence of extra account digits on customer credit and debit card receipts during the period from October 26, 2006 through December 27, 2006."); **No.13** ("The nature, extent and substance of any communications between Defendant and its current and former employees, officers and directors regarding the presence or absence of extra account digits on customer credit and debit card receipts during the period from October 26,2006 through December 27, 2006."); **No. 20** ("The identity of the current and former officers of Defendant who, while officers of Defendant, made a purchase(s) at Defendant's store(s) using a credit or debit card from October 27, 2006 through January 5, 2007."); **No. 21** ("The identity of the directors of Defendant who, while directors of Defendant, made a purchase(s) at Defendant's store(s) using a credit or debit card from October 27, 2007 through January 5, 2007."); **No. 22** ("The identity of the members of Defendant's management who, while employed by Defendant, made a purchase(s) at Defendant's store(s) using a credit or debit card from October 27,2006 through January 5, 2007."); **No. 23** ("The identity of the law department personnel of Defendant who, while employed by Defendant, made a purchase(s) at Defendant's store(s) using a credit or debit card from October 27, 2006 through January 5, 2007."); **No. 24** ("The number of credit and debit card purchases made by officers, directors, management and law department personnel of Defendant, Toys "R" Us at Defendant's store(s) from October 27,2006 through January 5, 2007."); **No. 32** ("The steps and procedures that Defendant has undertaken, or that Defendant would have to undertake, in order to determine which credit and debit card purchases at Defendant's stores were made by employees, officers or directors of Defendant from October 27, 2006 through January 5, 2007."); **No. 33** ("The steps or procedures that Defendant has undertaken, or that Defendant would have to undertake, in order to determine the documents or data in Defendant's possession, custody or control which would show the credit and debit card purchases made by Defendant's employees, including but not limited to its officers, directors, management, and law department, from October 27, 2006 through January 5, 2007.")

JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER
FINAL Joint Stipulation (TOYS_ Motion) (3)

transactions were made by employees during the 2006 holiday season.  So, there is no PMK on this topic.

As Counsel for TOYS has explained to Counsel for all Plaintiffs on numerous occasions, TOYS' database does not allow TOYS to simply pull up detailed customer transaction information, especially given the amount of time that has passed and the sheer number of transactions during the relevant time period (over 16,000,000).  TOYS is unaware of any reasonably cost effective way to gather all of the names of all of the people who made purchases in 2006 and compare them against the thousands of TOYS' employees from the same time period.  A protective order should issue.

### 4. TOYS Does Not Have a PMK, But Has Offered to Stipulate that Its Employees Made Purchases.

As set forth above, TOYS does not know which employees of the 16 million receipts at issue belong to TOYS employees and it would be burdensome to pinpoint this information right now – without knowing whether a class will ever be certified.  Despite the fact that the issue is irrelevant to class certification, and TOYS is unable to provide a PMK on this topic, TOYS has attempted to avoid burdening the Court with a discovery motion regarding these issues  by offering to stipulate that TOYS employees (who may have been officers and may have had knowledge of FACTA) made purchases during the relevant time period.  *See e.g.*, TOYS supplemental and amended responses to Request for Admission No. 39 of Plaintiffs Edwards/Schley's Second Set of Requests for Admissions (served on 12/16/09, and 12/29/09 respectively).[30]  Plaintiffs have refused to accept this compromise. A protective order is needed.

---

[30]TOYS amended responses (served on 12/16/09) offered to stipulate: "[TOYS] employees made purchases during the holiday season in the December 4, 2006 to December 27, 2006 time period and some of these employees may have been officers and some of these employees may have been aware of FACTA's truncation requirements."  A further amended response (served on 12/29/09) offered to stipulate as follows: [insert further amended response in relevant part], included in Shelton Exh. A.

1

2

3

### E.   Toys Should Be Protected From Producing a Witness To Testify About TOYS' Ability to Identify Class Members Because A Class Has Not Been Certified.

Plaintiffs' deposition subjects Nos. 3 through 8, and 19, concern the ability of TOYS to identify members of Plaintiffs' alleged class.[31]  In the meet and confer session held on January 4, 2010, and in prior meetings of counsel in July and December, 2009, TOYS' counsel advised that it will have an ability to notify a class if one is certified.  However, it identification of class members (now) will require unknown effort and expense, including most likely the creation of a new computer systems environment, which is why TOYS has asked that this matter wait until a determination is made regarding whether a class will be certified.  Consequently, this subject is an improper topic of inquiry for the following reasons:

### 1.   This Subject is Irrelevant to Class Certification.

If a class is certified, then it would make sense to explore the possibility of undertaking the effort and expense of notifying the class.  Prior to such time, there is no need for the information, and no reason to put TOYS to the burden of educating a PMK on the topic.

---

[31] **No. 3** ("Defendant's ability, or inability, to identify the consumer members of the proposed class(es) identified in Plaintiffs' complaint."); **No. 4** ("Defendant's ability, or inability, to distinguish between credit and debit card transactions made with corporate cards vs. individual cards, for transactions during the period from October 27,2006 through January 5, 2007."); **No. 5** ("The percentage of corporate credit card use, as a percentage of the total number of credit card purchases, during the period from October 27, 2006 through January 5, 2007."); **No. 6** ("The percentage of corporate debit card use, as a percentage of the total number of debit card purchases, during the period fron1 October 27,2006 through January 5, 2007."); **No. 7** ("All information retained by Defendant in electronic or non-electronic format regarding the identities, addresses, telephone numbers, email addresses, and/or credit or debit card account numbers of potential members of the proposed class(es) defined in Plaintiffs' complaint."); **No. 8** ("All steps taken by Defendant to determine the identities or account numbers of potential members of the potential class(es) defined in Plaintiffs' complaint."); **No.19** ("All facts supporting any claim that the members of the proposed class( es) cannot be identified.").

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

**2.      The Deposition Would Cause Substantial Prejudice and Undue Burden to TOYS.**

As explained above (and has been explained repeatedly to Counsel for Plaintiffs), TOYS' database does not allow TOYS to simply pull up detailed customer transaction information, especially given the amount of time that has passed and the sheer number of transactions during the relevant time period (over 16,000,000).  TOYS is unaware of any reasonably cost effective way to gather all of the names of all of the people who made purchases in 2006.  The time and expense of doing so could be significant – but this can be addressed if ever a class is certified. There is no need to undertake this expense now – before class determinations have even been made.

**3.      A Deposition is Unnecessary For Class Motions Because TOYS Has Stipulated to Numerosity.**

Even though the information is unnecessary for Plaintiffs' motions for class certification, TOYS has already offered to stipulate to numerosity.  In light of TOYS proposed stipulation, there is even less need to put TOYS to the burden of a deposition on this issue before class certification determinations have been made.

Plaintiffs have refused to accept TOYS stipulation, therefore a protective order should issue.

**F.      TOYS Should Be Protected From Producing a Witness To Testify About Its Financial Condition.**

Category No. 9 concerns TOYS' financial condition.[32]  This category is not a proper subject of inquiry for the following reasons:

**1.      This Subject is Irrelevant to Class Certification.**

TOYS financial information is completely irrelevant to whether or not Plaintiffs have alleged sufficient facts to certify a class in this case.  Counsel for

_____

[32] **No. 9** ("Defendant's net income, gross income, assets and general financial condition in 2008 and 2009.")

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

Plaintiffs have asserted that such information is relevant to show that TOYS will not be "annihilated" by the potential statutory damages if a class is certified.  In response, Counsel for TOYS offered to stipulate that TOYS will not argue that it would be annihilated by the statutory damages, only that such potential damages (in excess of $16 billion) are out of proportion to any actual injury suffered by any Plaintiffs (none of whom have experienced identity theft).

>> **2.** **A Deposition is Unnecessary Because TOYS Has Already Provided Financial Information**

Even though it is irrelevant to class certification, Counsel for TOYS provided to Counsel for Plaintiffs TOYS' 2008 10-K and its most recent 2009 10Q filing, along with links to additional financial information on TOYS' website.[33] Accordingly, Plaintiffs have the information they need, and there is no reason to put TOYS to the burden of a deposition on this topic prior class briefing.

>> **G.** **TOYS Should Be Protected From Producing a Witness To Testify About TOYS' Legal Representation.**

Plaintiffs' deposition subjects Nos. 14 and 15 concern TOYS' legal representation.[34]  This category is not a proper subject of inquiry for the following reasons:

>> **1.** **A Deposition on this Subject is Completely Irrelevant, for Any Purpose.**

The number of lawyers advising TOYS (and their identities) is absolutely irrelevant for any purpose, whatsoever.

---

[33] See January 6, 2010, letter from Counsel for TOYS to Counsel for Plaintiffs (Shelton Decl., Exh. B.)

[34] **No. 14** ("The size and members of Defendant's legal department during 2006."); **No. 15** ("The number and identity of law firms representing or providing counsel to Defendant during 2006.")

**2.      The Request for this Information Serves No Legitimate Purpose, Only to Harass TOYS.**

Because the size and scope of TOYS' legal representation is not relevant to any issue in this litigation (class certification or otherwise), the only conceivable reason to have requested a deposition on this topic is to harass TOYS.  This constitutes good grounds for a protective order.

**PLAINTIFFS' CONTENTIONS REGARDING THE COORDINATED 30(b)(6) DEPOSITION**

**1.      Toys' Introductory Discussion Regarding the Deposition Notice And Judge Morrow's Supposed "Instructions" Leaves Much to be Desired**

Toys commences its discussion of the parties' dispute regarding its deposition with a generalized, misleading and incomplete recitation of alleged facts, many of which are not supported by any evidentiary citation.  The truth follows:

Toys' Motion is largely based on its position that in June, after lifting the stay, Judge Morrow "instructed" the parties to "focus" on class certification.  Toys makes this claim despite knowing full well that she did *not* bifurcate discovery and did *not* order that discovery was limited to class-related discovery (as Judge Morrow knows, class discovery often overlaps with merits discovery).  A review of the transcript  gives no indication that the parties were "instructed" to focus on – let alone were restricted to - only class certification discovery.

Rather, having lifted the stay and now facing coordinated multidistrict proceedings with a new case (*Ellis*) the Court was simply attempting to *set a new schedule* for class certification briefing, and a pre-certification discovery cut-off (presumably so that briefing would take place during a discovery standstill).  See Shelton Decl, Exh. F, p. 4:6-7 (the Court noting that the parties were there for a scheduling conference). In the course of doing so, the Court inquired as to how

23

much time the parties really needed before briefing certification, since they had estimated six months.   First, she asked Edwards' counsel what discovery he believed was "required" for class certification purposes.   He responded, based on his thinking at that time, that none was actually "required."   Shelton Decl., Exh. F, p. 5, lines 3-5.

Toys takes this simple question-and-answer and infers that the question means that the Court was indirectly forbidding any discovery not required for class certification, rather than simply seeking time parameters to allow it to set a certification briefing schedule.   This is not reasonable, and it is not surprising that Toys has never asked for clarification from the Court as to the matter.

Notably, Toys then claims, based on this question and answer alone, that "Plaintiffs" "told" the Court that they would be "simply updating their class motions," without any citation to support this false claim.   Tellingly, Toys omits that the Court also inquired of Mr. Ellis' counsel, and he noted that discovery was needed and that depositions would likely be wanted.   Shelton Decl., Exh. F, p. 6:6-24.   Thus, the single question-and-answer on which Toys focuses so much attention simply does not mean what Toys claims it means.   The proof is in the pudding – the Court did not place any limitations on discovery in the transcript, but rather simply set a pre-certification discovery cut-off and a briefing schedule.   Nor did Toys *ask* the Court that discovery be limited to discovery "necessary" to class certification, either orally or in a motion or status report.

Toys' seeming belief that Mr. Moore's response somehow precluded the *Edwards* plaintiffs (let alone all Plaintiffs) from taking merits discovery during the last few months, or from changing his mind and seeking further discovery relevant to class certification (or, as is often the case, discovery that is relevant to both the merits and class certification) before briefing class certification, is unsupportable. Indeed, the notion that, as class counsel with duties to a putative class he has been representing since December 2006, Mr. Moore was supposed to sit idly by for

24

months, taking no discovery of any sort, while discovery in these coordinated proceedings was pursued only by Toys itself and by Plaintiff Ellis, is absurd. Its absurdity is rendered even more plain by the parties' *subsequent stipulations* to Judge Morrow, seeking extensions of the cut-off and the briefing schedule so that mediation could proceed and depositions could be postponed. (See Moore Decl, Exh. 3 and 4)  At no time has Judge Morrow held that any of Plaintiffs are barred from taking class or merits (or overlapping) discovery based on the sole question-and-answer that Toys now cites as being an "instruction" to focus only on discovery that *Toys* deems relevant to class certification.  Toys knew full well that Plaintiffs were entitled to continue with discovery until the cut-off.

In addition, the truth is that Plaintiffs initially noticed the deposition of Toys on a coordinated basis, pursuant to Rule 30(b)(6), *on October 1, 2009*.  Moore Decl., Exh. 5.  In late October, 2008 the parties agreed to a stay on the outstanding discovery, including the noticed depositions, until December 14, 2009, to allow the December 3, 2009 mediation to proceed without further discovery efforts and expenses.  See letters from Clint McCord dated October 26, 2009, attached collectively as Exh. 6 to the Moore Declaration, suggesting that discovery, including pending depositions, be *postponed*.  Toys knew full well that Plaintiffs intended to take its deposition if the case did not settle, but did not seek a protective order.

When the case did not settle at the December 3, 2009 mediation (where only Toys' counsel showed up, without their client, to Plaintiffs' surprise and consternation), Plaintiffs advised Toys again that they intended to re-notice the depositions.  However, Plaintiffs agreed not to notice them until  after the holiday season, as a courtesy to Toys, which apparently earns most of its profit during the holiday season.  Toys still did not seek a protective order.  Indeed, as Toys admits, it did not even serve written objections to the *original* Rule 30(b)(6) deposition notice until December 16, 2009 (long after the date on which the deposition was

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

originally noticed).

On December 31, 2009, Plaintiffs served a new coordinated deposition notice, setting the deposition out several weeks and inviting Toys to let Plaintiffs' counsel know if the noticed date (January 26, 2010) did not work.  Moore Decl., Exh. 7.   Toys then advised Plaintiffs that it intended to seek to preclude its deposition, and the parties  met and conferred on January 4, 2010, the same day on which they had previously agreed to meet to discuss Plaintiffs' complaints about RFA Nos. 38 and 39 – complaints which Plaintiffs had raised on December 22, 2009 and which are the subject of a pending motion.[35]  The parties did not resolve their disputes (about Toys' deposition, RFA Nos. 38 and 39, or Ellis RFP No. 3).  However, the parties did discuss possibly postponing testimony on certain topics, *if* Toys would provide stipulations or declarations in lieu of deposition testimony as to those topics for the time being.  See Moore Decl., Exh. 8.  Toys has not done so.

Toys now commences its briefing[36] regarding the PMK notice by declaring that "[a]ll of the issues that are contained in the PMK notice are not necessary for class certification" and should thus be postponed until later.  Toys is wrong, as shown below, setting aside that Plaintiffs are not limited to discovery "necessary for class certification."

## 2. <u>Toys Has Not  Met Its Burden To Obtain "Protection"  From Its Own Deposition</u>

Not surprisingly, Toys provides the Court with very little discussion of the law governing its motion.  Under Rule 26(b)((1), discovery is allowed of "any nonprivileged matter that is relevant to any party's claim or defense."  Relevant

---

[35] Formal objections to the new deposition notice were not served until the afternoon of January 21, 2010.  Moore Decl., Exh. 9.

[36] Plaintiffs say briefing because the "Joint Stipulation" Toys provided to them was, in fact, a brief, unlike a Joint Stipulation Plaintiffs' counsel had ever seen.  Plaintiffs suspect this is because defense counsel had previously advised Plaintiffs that Toys intended to file a unilateral motion, believing LR 37-1 did not apply.  When defense counsel realized they were wrong, they simply sent Plaintiffs their brief.

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

information for discovery purposes is information reasonably calculated to lead to the discovery of admissible evidence. *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 635 (9th Cir. 2005). "The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Duran v. Cisco Systems, Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Unexplained and unsupported boilerplate objections are improper. *Duran*, 258 F.R.D. at 379 (citing *Burlington N. & Santa Fe Ry. Co. v. United States Dist. Ct. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005). General or boilerplate objections "such as 'overly burdensome and harassing' are improper – *especially when a party fails to submit any evidentiary declarations supporting such objections.*" *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (italics added); *Columbia Pictures Industries, Inc., v. Bunnell*, No. CV 06-1093 FMC (JCx), 2007 WL 4916964, *5 (same, citing *A. Farber & Partners, supra*). Conclusory recitations of "expense" and "burdensomeness" are insufficient. *Bible v. Rio Properties, Inc.*, 246 F.R.D. 614, 619 (C.D. Cal. 2007) (citing *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1995).)

Those are just the general rules relating to discovery. Here, obviously, Plaintiffs are not seeking to compel further responses or a deposition. Rather, *Toys* is seeking a protective order, pursuant to Rule 26(c). As such, it "must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements." *Skellerup Industries Ltd. V. City of Los Angeles*, 163 F.R.D. 598, 600 (C.D. Cal. 1995).

The Ninth Circuit has declared that a "strong showing is required before a party will be denied entirely the right to take a deposition." *Blankenship*, 519 F.2d at 429 (citing 4 J. Moore, Federal Practice ¶ 26.69 at pp. 26-494-26-495 (2d ed. 1974)) (district court erred in granting protective order ordering plaintiff not to

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

depose newspaper publisher). Under the liberal rules of discovery, the party attempting to avoid discovery bears a "heavy burden" in demonstrating why discovery should be denied. *Id.* *See also First Methodist United Church of San Jose v. Atlantic Mutual Ins. Co.*, No. C-95-2243 DLJ, 1995 WL 566026, *2 (N.D. Cal. Sept. 19, 2005) (citing *Blankenship* and permitting deposition of defendant's president; *WebSideStory, Inc. v. Netratings, Inc.*, 2007 WL 1120567, *1-2 (S.D. Cal. April 6, 2007) (citing *Blankenship* in denying motion for protective order seeking to prevent "apex deposition", noting that to "establish good cause, the moving party must make a clear showing of a particular and specific need for the order.")  While a court has discretion to limit discovery and impose restrictions where the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive, "**[i]t is very unusual, however, for a court to prohibit the taking of a deposition altogether absent extraordinary circumstances, as such an order would likely be in error.**" *WebSideStory*, 2007 WL 1120567, *2; *see also DR Systems, Inc. v. Eastman Kodak Co.*, 2009 WL 2973008, *1-2 (S.D. Cal. Sept. 14, 2009) (noting that "courts should not bar a deposition 'absent extraordinary circumstances' as such a prohibition would 'likely be in error' and that "a party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied") (citing, *inter alia, Blankenship*); *United States EEOC v. Caesars Entm't, Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006) ("As a general rule, courts will not grant protective orders that prohibit the taking of deposition testimony.")

Here, Plaintiffs are not seeking to depose Toys' president, but rather *Toys itself*, in a 30(b)(6) deposition.  Toys' position that *its own deposition* is irrelevant or unduly burdensome and cannot be taken by Plaintiffs before proceeding to the critical class certification motion is unsupported and absurd.

The Fourth Circuit case on which Toys relies heavily, *Nicholas v. Wyndham International, Inc.*, 373 F.3d 537 (4th Cir. 2004) is so obviously inapposite as to

28

render Toys' reliance on it nearly farcical.  Notably, Toys does not discuss its facts. In *Nicholas*, defendant resort operators were sued in the U.S. District Court for the District of the Virgin Islands by the parents of a minor female who was allegedly molested by a resort employee.  That suit was pending outside the Fourth Circuit. The defendants subpoenaed a *non-party corporation* owned by the plaintiff-parents to appear for a PMK deposition, in part to seek information about liability and damages and in part to seek "credibility" discovery regarding their employment and immigration status.  Subsequently, the defendants moved, in the U.S. District Court for the Eastern District of Virginia (in the Fourth Circuit), to compel the PMK deposition.  The district court denied that motion, noting that *the plaintiffs themselves had already been deposed*, and the Court of Appeal affirmed its denial as not an abuse of discretion.  *Nicholas, supra* at 539.  The Court of Appeal noted that "Wyndham had already deposed both Plaintiffs, and Wyndham's counsel conceded to the district court that [the Plaintiffs' corporation] could have no more information about the facts of liability and damages than Plaintiffs themselves had."  *Id.*, at 543.  (Obviously, no such concession has been made here.)  The Court further noted that "the district court was well within its discretion to conclude that the additional discovery sought by Wyndham was cumulative and duplicative, unduly burdensome, and harassing."  *Id.*

How Toys thinks the result in *Nicholas* somehow mandates that Toys be given protection from its own deposition as the defendant in this case is unfathomable.

Moreover, as noted above, Toys was served with a proper deposition notice on December 31, 2009, requiring it to appear for deposition on the morning of January 26, 2010.  It simply refused to appear, despite having been advised that doing so was plainly improper under Ninth Circuit authority.  See Moore Decl., Exh. 11; *Pioche Mines Consolidated, Inc. v. Dolman*, 333 F2d 257, 269 (9th Cir. 1964) ("[I]t is for the court, not the deponent or his counsel, to relieve him of the

duty to appear."); FRCP 30(d)(1), Adv. Comm. Notes to 1993 Amendments to FRCP 30(d)(3). Its refusal to appear for a properly-noticed deposition based solely on its "objections" to the deposition, without first obtaining a protective order, is sanctionable. FRCP 37(d).

### 3. Plaintiffs' Responses To Toys' Specific Arguments About Particular PMK Deposition Topics

#### A. Topics Concerning Toys' 2007 Document Production [Nos. 1, 25-31]

Plaintiffs – primarily the *Ellis* plaintiff, who was not in the case in 2007 but who Toys wants to preclude from obtaining additional documents not produced at that time – want to inquire of Toys about the nature of its 2007 production and the steps it took to ensure that all responsive documents were produced. Toys thinks this is somehow improper, despite the frequency of custodian of records depositions in civil litigation. Toys does not seriously argue that a deposition regarding its document production efforts is not relevant or reasonably calculated to lead to the discovery of admissible evidence, but rather makes a number of other specious arguments seeking to preclude its examination on this important subject. Toys has failed to meet its burden of establishing that good cause exists for the relief it seeks.

##### (1) Toys' "Estoppel" Argument Is Baseless, Predicated On Untruths, and Waived

Toys contends that "Plaintiffs" (including Mr. Ellis) are "estopped" from questioning Toys' production because it purportedly was "approved" by *Edwards* counsel over two years ago. Toys does not cite a *shred of evidence* to support this claim, let alone demonstrate that the elements of "estoppel" are met. Toys ignores that Mr. Ellis was not part of the case at that time, and does not argue that *he* "approved" anything or participated in "structuring the parameters" of Toys' search for documents. How he could be "estopped" is unknown, and unexplained.

1  Judge Morrow made it very clear to Toys' counsel that the Mr. Ellis was <u>not</u>
2  precluded from seeking additional documents simply because Toys had produced
3  voluminous documents in 2007 as part of the initial production in *Edwards*, prior
4  to unsuccessfully moving for summary judgment.

5      Toys also claims, without evidentiary support, that counsel in *Edwards* was
6  "consulted" in advance, and was "*actively involved*" (Toys' emphasis) in
7  "structuring the parameters" of the production.  Not so.  Plaintiffs have asked Toys
8  to produce evidence in support of this claim, and Toys has failed to do so.  Moore
9  Decl., Exh. 12.  The only "evidence" Toys offers that is remotely related to this
10 factual claim is the email chain attached as Exhibit P to Ms. Shelton's declaration,
11 which (beyond being hearsay to the extent Toys wishes to rely on the truth of its
12 email statements of its former lead counsel Mr. Hoffman) demonstrates <u>only</u> that
13 Plaintiffs' counsel asked that any *electronic* documents be produced in their native
14 format.  It in no way establishes that Plaintiffs' counsel agreed to accept only
15 electronic documents or only the documents initially produced by Toys,
16 "structured the parameters" of Toys' search, or otherwise gave up any rights
17 whatsoever.

18      In any event, even if counsel in *Edwards* were somehow involved in
19 "structuring the parameters" of Toys' original production (whatever Toys means
20 by that), that would not justify any failure by Toys to produce all responsive
21 documents in response to Mr. Ellis's discovery requests.  How Toys thinks it can
22 argue that Mr. Ellis is "estopped" by the supposed conduct of lawyers who did not
23 represent him at a time when he was not part of the case is hard to fathom.

24      More importantly, the Court will note that Toys does *not* argue that it has, in
25 fact, produced all responsive documents.  Rather, it simply contends that it has
26 produced 200,000+ documents (many of which were not responsive) and that it
27 somehow has no obligation to do more, regardless whether responsive documents
28 were not produced.  Indeed, in seeking to preclude its deposition, it wants to forbid

Plaintiffs, including Mr. Ellis, from trying to learn whether, in fact, responsive documents may not have been searched for or produced in 2007. Again, at present, we are talking only about a deposition, not about any effort by Plaintiffs to require Toys to re-do the entire 2007 production.

The fact that the *Edwards* plaintiffs did not move to compel further responses to their document requests (yet, at least) is irrelevant. The *Ellis* plaintiff is now doing so, albeit only with respect to *Ellis* RFP No. 3. In seeking deposition testimony as to these disputed matters, Plaintiffs in both cases are merely seeking to determine whether, in fact, a motion to compel further documents may be appropriate. Toys' claim that Plaintiffs are "estopped" from deposing Toys about its 2007 production is silly.

Relatedly, Toys now suggests that the passage of time since its June 2007 production means that "Plaintiffs" – *including Mr. Ellis* – have "waived" the "right to seek additional information concerning the production" in the *Edwards* case. Toys says that "Plaintiffs" "waited some 900 days to raise any questions regarding the nature of the production." This is simply false, as is its assertion (as usual, unsupported by a sworn declaration) that *Edwards* counsel "*never once objected*" (Toys' emphasis) to its production. In fact, as shown by the correspondence to defense counsel attached as Exhibit 1 to the Moore Declaration, *Edwards* counsel did raise concerns about Toys' early document responses.

The true facts, as Toys knows, are that its initial production in *Edwards commenced* in June 2007. Subsequently, for weeks, Toys continued producing documents, eventually producing the "test receipts" printed in late October 2006 upon implementing CR 615, the software change that that resulted in its printing of millions of receipts that violated FACTA. Moore Decl., Exh. 13. Its production was not *complete* until late August, 2007. See Moore Declaration, Exh. 14 (August, 2007 correspondence from defense counsel relating to Toys' ongoing production). Those test receipts, as Mr. Gleason admitted in his deposition, visibly

revealed that Toys was violating FACTA (although Toys has thus far claimed that no one who knew about FACTA noticed the extra digits on them).  Even though they were obviously responsive and germane to its motion for summary judgment (see *Edwards*, 527 F. Supp. 2d at 1206), Toys for some reason failed to include them in its initial production of documents, only producing them when Plaintiffs realized they probably existed – since test receipts for early CR's (change requests) had been produced -- and demanded them.

Judge Morrow denied Toys' motion for summary judgment on November 5, 2007.  The *Edwards* Plaintiffs filed their class certification motion on or about October 29, 2007, pursuant to scheduling order. Almost immediately thereafter, on November 13, 2007, Judge Morrow stayed the *Edwards* matter, due to the pendency of a Rule 23(f) interlocutory appeal in the Ninth Circuit in another FACTA case (the *Soualian* case, discussed *infra*) in which certification had been denied on purported "superiority" grounds.  That stay ultimately continued until *mid-June, 2009* (i.e., for more than half of the "900 days" referenced by Toys.)

Toys' present suggestion that "Plaintiffs" – let alone Mr. Ellis – were obligated to complain about its production, which did not conclude until late August, 2007, *while the Edwards case was stayed for 20 months* is silly.  After the stay was lifted, counsel for plaintiff Ellis *immediately* began raising questions concerning the nature of the *Edwards* production.

Subsequently, as reflected in the letters from defense counsel sent October 26, 2009, the parties agreed to a further stay on discovery, including *pending noticed depositions*, until December 14, 2009, to permit the mediation to proceed. [Moore Decl., Exh. 6.]  During that stay, as Toys knows, no one was going to be moving to compel documents, despite Toys' present seeming claims that Plaintiffs improperly "delayed" in not doing so.

Despite Toys' claims, there has been no "waiver" of Plaintiffs' right to depose Toys regarding its document production.  Plaintiffs simply want to depose

Toys to determine, whether it actually complied with its document production obligations, and whether a motion to compel is needed. Neither the Federal Rules nor this Court's local rules specify a time limit for filing a motion to compel, let alone a time limit for a deposition of a custodian of records regarding a prior document production.[37]

In reality, it is *Toys* that failed to preserve these claims about "waiver" and "estoppel" by failing to raise them in its letter (actually, email) commencing the meet and confer process. Moore Decl., Exh. 15 (email from D. Shelton). See LR 37-1 ("The moving party's letter shall identify each issue and/or discovery request in dispute, shall state briefly with respect to each such issue/request the moving party's position (and provide any legal authority which the moving party believes is dispositive of the dispute as to that issue/request)." Toys apparently came up with these new baseless arguments in drafting its portion of the joint stipulation.

### (2) Toys' New Claims About "Substantial Prejudice" Are Unsupported

Toys also argues that the "delay" of "Plaintiffs" has "prejudiced" it and should operate to allow it to avoid having to produce a 30(b)(6) deponent to testify about its 2007 production. It now claims, vaguely, that "some" of the persons working on the production have "left the company (including the person who oversaw the production)," and for those who remain, "faded memories" of the details of the production have occurred. No *evidence* is provided to support these

---

[37]   The case Toys cites in support of its claim of "waiver," *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620 (D. Nev. 1999) is inapposite. *Gault* did not involve a class action, let alone nearly two years of agreed-to stays. In citing *Gault*, Toys also omits that the plaintiff files its motion to compel *76 days after the close of discovery*, as well as after the dispositive motions deadline and after a dispositive motion was filed pursuant to that deadline. *Gault*, at 621. Toys also ignores that the *Gault* court stated that "[a] motion to compel filed during the discovery period would rarely be considered untimely." *Id.* While there is a pre-certification discovery cut-off in this matter, there is no final discovery cut-off, and Plaintiffs have not sought to compel discovery on the "eve of trial," let alone after the discovery-cut off. *Gault*, at 622. Rather, *Toys* is seeking to preclude Plaintiffs from *deposing* it about its earlier document production, prior to the *pre-certification* discovery cut-off.

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

assertions, however.  Nor did Toys raise this in its LR 37-1 "letter."  Moore Decl., Exh. 15.  Likewise, Toys' boilerplate assertion that it would "have to undergo significant time and expense" to provide a deponent as to these document production-related matters is unsupported and worthless as a basis to deny a deposition.  *Bible v. Rio Properties*, Inc., 246 F.R.D. at 619; *A. Farber & Partners*, 234 F.R.D. at 188.

In any event, even if what Toys says were true (and it isn't, as shown below),  the law is clear that even if there are no longer any persons with personal knowledge of a particular PMK topic, a company has a duty to educate a deponent to testify about it.  *See, e.g., Medimmune, LLC v. PDL Biopharma, Inc*., C08-05590, 2009 WL 5069142, *1-2 (N.D. Cal. Dec. 17, 2009); FRCP 30(b)(6).

> "As other courts have noted, 'it is not uncommon' for a company to claim that a Rule 30(b)(6) deposition would cause an undue burden because it no longer employs anyone with personal knowledge of the events at issue. [Citation.] Yet PDL is not relieved of its obligation to prepare one or more designees on this ground alone."

*Medimmune*, 2009 WL 5069142, at *2.

Toys' claims that it cannot locate and provide a qualified deponent are untrue anyway.  Indeed, in virtually its next breath, Toys asserts that "its paralegal Peter Heimbach" was "personally involved in gathering documents responsive to the Edwards Plaintiffs' document requests."  And, just this September, Toys points out, Mr. Heimbach provided a declaration about the prior production.  Why, then, is he not a suitable designee?

Apparently, Toys thinks he cannot be deposed because he already provided a declaration.  However his "declaration" that the documents that Toys *did* produce were "gathered and produced to the Edwards Plaintiffs in 2007 in the same format that they were stored" and that "no effort was made to conceal" any documents hardly precludes a deposition.  Such statements do not establish that all responsive documents were in fact produced, and do not address all of the topics at issue in the

35

PMK notice (Nos. 1, 25-31) in any event.

Topic No. 28, for example, seeks deposition testimony regarding the efforts and steps taken to determine that the documents produced by Toys are responsive to Mr. Ellis's interrogatories and production requests. Toys does not claim (because it can't) that Mr. Heimbach's declaration provides detailed testimony about that matter. In any event, Plaintiffs need not blindly accept the conclusory assertions of a Toys paralegal in an attorney-drafted declaration without the benefit of the cross-examination and follow-up questioning that a deposition would facilitate.

Likewise, Toys claims that Plaintiffs did not previously identify "problems" with Mr. Heimbach's declaration. But Plaintiffs need not do so in order to depose a 30(b)(6) witness regarding the matters at issue.

Toys, of course, cites no law holding that a plaintiff cannot depose a company about its document production merely because the company has voluntarily provided a declaration in an effort to provide information about that production and/or to avoid a deposition about the production. *See, e.g., United States v. Johnson Controls, Inc.,* SACV 03-0028 DOC (ANx), 2008 WL 4601430, *2-3 (C.D. Cal. Oct. 15, 2008) (citing *Blankenship* before denying motion for protective order, rejecting arguments that depositions could be precluded because declarations had been offered by the deponents, and because the requisite information had already been obtained through prior depositions of others.)

### (3) <u>Toys' Argument that a Deposition Is "Unnecessary" Because It Provided an "Index" in September, 2009 Is Likewise Baseless</u>

The fact that Toys has recently "indexed" its production for Mr. Ellis does not mean that Toys in fact *produced all responsive documents.* Assuming, for argument's sake alone, that most of the *Ellis* plaintiffs' requests were "duplicative" of the earlier requests made in *Edwards* (and Toys' counsel's conclusory

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

statements and hearsay "chart" do not establish this), that in no way means that Toys production in *Edwards* was in fact fully *responsive* to the *Edwards* requests, let alone to the *Ellis* requests.

Indeed, Toys does not even *argue* – let alone offer evidence proving – that all responsive documents have in fact been produced, and that there would be nothing relevant to learn from deposing it on the noticed matters. (Indeed, it essentially admits, in connection with Ellis RFP No. 3, that it has *not* produced all responsive documents.)  Toys seems to forget the burden it is facing here as a moving party seeking to evade its deposition.  For present purposes, Plaintiffs are not seeking to compel documents, let alone "duplicative" documents that were already produced. (Plaintiffs have *no interest whatsoever* in obtaining documents that were already produced.)

Rather, Plaintiffs are merely seeking to depose a qualified deponent to learn how Toys searched for and produced documents, and whether, in fact, all responsive documents were searched for and produced.  Perhaps that deponent is Mr. Heimbach.  Perhaps not.  Regardless, an "index" of the production that Toys *did* make is not a substitute for a deposition seeking to determine whether, in fact, that production was sufficient, or whether responsive documents exist that obviously are not referenced in the index.

Finally, Plaintiffs note that Toys is *again* mischaracterizing Judge Morrow's supposed "instructions."   In urging that its "index" renders a deposition inappropriate, Toys represents that on September 14, 2009, at a scheduling conference, Judge Morrow "again instructed the parties to focus on class certification discovery" (Toys' emphasis).  Toys cites *only* the minutes of that further scheduling conference as evidence for this emphatic claim.  In fact, the minutes do not support this claim, but rather, as relevant, state only that "Counsel are directed to meet and confer regarding what discovery Ellis needs beyond the Edwards discovery in one week." (Dkt. No. 17.)

In reality, to Plaintiffs' recollection, Judge Morrow *scolded Toys' counsel* at the September 14, 2009 conference for its positions about its obligations to respond to Mr. Ellis's discovery. The statement in the minute order (underlined by Toys and quoted above), which Toys now cites out of context to support its claim that Judge Morrow was "instructing" the parties to "focus" on class certification, related to *that* issue, and, in fact, arose from the Court's evident *dissatisfaction with Toys' discovery stance*.[38] It therefore is not surprising that Toys does not offer the *transcript* of that hearing as evidence for its claims that Judge Morrow's minute order somehow means that deposing it about its document production is off-limits.

In sum, Defendant has failed entirely to demonstrate that good cause exists to preclude Rule 30(b)(6) testimony about its prior production.

## B. Topics Relating to Toys' Knowledge of FACTA, Compliance/Non-Compliance with FACTA, and Communications With Officers/Employees Regarding Same

Toys seems to think that Plaintiffs should not be able to depose it about basic issues in the case prior to class certification. Its relevance claims lack merit, as do its claims that previous written discovery responses somehow absolve it of any duty to sit for a deposition.

All of these topics are unquestionably proper subjects for discovery. Since Toys glosses over them in its arguments, Plaintiffs describe each of them separately before proceeding to Toys' arguments.

Topic **No. 10** relates to the knowledge of Toys' employees, officers and

---

[38] Plaintiffs do not possess the transcript of the September 14th status conference, but are attempting to obtain it. Suffice it to say that when the Court reviews that transcript, it will wonder how Toys thinks that hearing went well for it. Indeed, as referenced by the minute order, the Court also ordered Toys to participate in a mediation before a retired judge. Toys subsequently failed to show up for the mediation, sending only its counsel of record. See Plaintiffs' Post-Mediation Status Report [MDL Document No. 22].

38

1    directors, during the period of noncompliance, regarding legal truncation
2    requirements.  Unquestionably, it is relevant to the case.

3        Topic **No. 11** is "[t]he nature, extent and substance of any communications
4    between Defendant and its employees, officers and directors regarding their
5    knowledge, as of the period from October-December 2006, of legal truncation
6    requirements for credit and debit card receipts."  It is likewise relevant.  Toys has
7    vaguely stated in discovery responses, for example, that after being sued it had
8    conversations with numerous unidentified "key personnel" regarding these issues.
9    Plaintiffs are entitled to seek information about those communications.

10        Topic **No. 16** is "[t]he identity and nature of all publications and newsletters
11   (in electronic or non-electronic format) that Defendant's information technology
12   department, legal department, home office management, and officers and directors
13   subscribed to or received during  the period from the enactment of FACTA to
14   December 27, 2006" [when the *Edwards* case was served].  Plainly, this topic
15   seeks information relevant to Plaintiffs' claims and information that may lead to
16   the discovery of admissible evidence relating to those claims.

17        Specifically, Plaintiffs want to know about the documents that key personnel
18   received that may have advised them that Toys was not permitted to print 10 digits
19   on its receipts, as it did millions of times after October 27, 2006 purportedly
20   without noticing the visibly illegal information.  Interestingly, Toys
21   mischaracterizes this topic, claiming that, like Nos. 17 and 18, it concerns its
22   compliance efforts.  In fact, Topic 16 seeks information about publications,
23   newsletters, and the like received by Toys' key personnel, some of which
24   contained articles advising retailers and businesses about FACTA's requirements
25   and compliance deadlines, and/or about the fact that class action lawsuits were
26   being filed, as of early December, 2006, for violating FACTA  Such sources of
27   information might have caused a reasonable company to check, prior to December
28   4, 2006, to ensure that it was complying with the law.  Notably, Toys does not

39

demonstrate that it has previously provided any interrogatory responses or documents regarding Topic No. 16, because it has not done so.

Topic **No. 17** is "[t]he nature of all steps taken, or policies and procedures followed, by Defendant to ensure that FACTA's truncation rules for debit and credit card receipts were not violated after the implementation of CR 615." [CR 615 is the software change that resulted in the printing of illegal information on customer receipts, after October 27, 2006.].  Plainly, this topic is relevant.  Again, Toys has not previously detailed any steps it took to ensure its FACTA compliance *after implementing CR 615 in October 2006.*  (Plaintiffs suspect this is because it took no such steps, but a deposition will provide binding testimony on this question.)

Topic **No. 18** is "[t]he nature of all steps taken, or policies and procedures followed, by Defendant to ensure that FACTA's truncation rules for credit and debit card receipts were not violated after December 3, 2006."  (On December 4, 2006, FACTA became applicable for all registers, regardless of age.)  Obviously, this topic satisfies the test for relevance.  Again, contrary to its suggestions, Toys has <u>not</u> previously provided sworn discovery responses identifying any steps it took, or policies and procedures it followed, to ensure that FACTA's rules were not violated after December 3, 2006.  It may be that it took no such steps and does not want to admit as much.   Regardless, Plaintiffs are entitled to seek this information in a deposition.  Undoubtedly, Toys *has* repeatedly asserted that it was truncating account digits on receipts for "years" prior FACTA's enactment and prior to the so-called "glitch."  But that is immaterial to the question, in Topic 18, of the steps, if any, that Toys took to ensure that it was complying with the law *after* FACTA became fully effective on December 4, 2006.

### (1) Toys' "Irrelevance to Class Certification" Argument Fails

As shown above, these topics are unquestionably relevant.  Toys, however,

40

1  argues that its deposition may not be taken because these topics are "irrelevant to
2  class certification." But that is not the standard, particularly since discovery has
3  not been limited to discovery that is relevant solely to class certification,
4  notwithstanding Toys' baseless contrary suggestions. Plaintiffs are entitled to
5  depose Toys, the defendant, about the key issues in the case, and Toys certainly
6  has not met its heavy burden of establishing that it can avoid that deposition now
7  simply because it claims the topics are irrelevant "to class certification."

8  In any event, all of this discovery *is* relevant to class certification. First,
9  Plaintiffs must demonstrate that predominating common issues exist in order to
10  certify a class. Specifically, Plaintiffs must show that willfulness can be proven on
11  a class-wide basis, whether the class commences at October 27, 2006, when the
12  FACTA violations commenced for customers receiving receipts with excess digits
13  printed at "old" registers, or at December 4, 2006, when Toys was required to
14  ensure its compliance at all registers regardless of age. While the burden of
15  proving predominance is likely not a difficult one in this sort of case, involving
16  standardized receipt-printing practices, Plaintiffs want to know whether Toys'
17  knowledge of the legal rules, and Toys' compliance efforts, were uniform during
18  the non-compliance period in question, potentially from October 2006 to early
19  January 2007.

20  Second, the discovery is relevant to "superiority" at least as that element has
21  been analyzed by some judges in this district ruling on the propriety of class
22  treatment in FACTA cases. Toys has made it clear that it intends to oppose class
23  certification by arguing that it always acted in "good faith" and that when it
24  "learned" – upon being served with the *Edwards* complaint – that it was not
25  complying with the law, it "immediately" took steps to become compliant. Some
26  courts have concluded that such arguments have a bearing on class certification,
27  because, e.g., they demonstrate that a class action would not serve a "deterrent

28

41

effect." [39]

The truth, in this case, is that one of Toys' main defenses appears to be a "shell game." According to Toys' current briefing, it has always admitted that "it" was aware of FACTA. In fact, it has not admitted that *all* officers, directors, etc. were aware of FACTA. Topics 10 and 11 seek to explore the knowledge question. In advancing its "shell game," Toys has admitted that "certain" employees at its home headquarters (e.g., Dennis Gleason and Dion Rooney, in its IT Department), were aware of FACTA, but Toys has claimed that such persons were not aware that it was "inadvertently" *violating* FACTA (millions of times), because, e.g., they were not the persons who saw the test receipts or the millions of illegal customer receipts. *See, e.g.,* Toys' responses to *Edwards* plaintiffs RFA Nos. 1, 4, 7 and 8 in their First Set of Requests for Admissions, which is part of Shelton Decl., Exh. A. Other employees and officers, according to Toys, may have been aware Toys was printing extra digits on receipts, because of the test receipts and/or the visibly illegal millions of customer receipts being printed each week, but those persons supposedly were not aware that printing 10 digits on receipts violated FACTA.

Toys' counsel has advised Plaintiffs' counsel that while Toys will not argue it was not willful in opposing class certification (perhaps because it failed at that already, and perhaps because it needs to hold out the prospect of a willfulness finding in order to advance the notion that class certification should be denied as not "superior" *because* of the fearful prospect of potential statutory damages), Toys still intends to offer the same factual story that it offered in seeking summary

---

[39] *See, e.g., Soualian v. International Coffee & Tea, LLC*, Case No. CV 07-502-RGK (JCx), 2007 WL 4877902, *3 (C.D. Cal., June 11, 2007) ("Furthermore, as soon as becoming aware that having the expiration date on credit card and debit card receipts was a technical violation of FACTA, Defendant investigated and removed the expiration dates on the receipts distributed in all of its Coffee Bean locations within two days. Defendant's immediate action to comply with FACTA's requirements once becoming aware of this action also supports denial of class certification.") Notably, the Ninth Circuit Court of Appeals granted immediate review of the district court's denial of class certification in *Soualian*, pursuant to FRCP 23(f), and the case later settled on a class basis while the appeal was pending. Plaintiffs' counsel Mr. Moore was class counsel in the case.

judgment.  Obviously, *any "facts" that Toys intends to offer to oppose class certification are "relevant," at least in Toys' mind, to class certification*, or Toys presumably would not be planning to include them in its briefing.  Accordingly, all such factual areas are, in Plaintiffs' view, ripe for discovery prior to briefing class certification, and Plaintiffs told Toys as much at the meeting among counsel on January 4, 2010.

### (2) Providing Some Written Discovery Responses Regarding Some of the Same Matters Does Not Preclude Being Deposed

Toys bears a "heavy burden" to avoid its deposition.  *DR Systems, Inc. v. Eastman Kodak Co.*, 2009 WL 2973008, *1-2 (S.D. Cal. Sept. 14, 2009) (noting that "courts should not bar a deposition 'absent extraordinary circumstances' as such a prohibition would 'likely be in error' and that "a party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied") (citing, *inter alia, Blankenship*).  Yet seems to think that because Plaintiffs have propounded interrogatories and requests for admissions, to which it has to some degree responded, Plaintiffs may not also take its deposition.  It cites no authority for this novel proposition.  The discovery devices permitted by the FRCP are cumulative, not alternative.

The idea that Plaintiffs have somehow given up their right to depose the named defendant in the case by propounding written discovery first is specious.  A deposition of the named defendant, which permits detailed questioning and follow up questions, cross-examination, credibility assessments, and videotaping for use at trial, is not, as Toys says, "moot" because Toys has provided information in written discovery responses relating to some of the same areas.

Nor is there anything unduly "burdensome, harassing and unnecessary" about deposing Toys now.  Plaintiffs are entitled to seek testimony that *binds the company.*  They need not accept only interrogatory responses with Mr. Gleason's

43

half-hearted verifications stating that Toys' responses are "based upon information reasonably available" and that "he does not have personal knowledge of all statements set forth in TOYS' Interrogatory Responses."

Toys does not cite a single case allowing a party to obtain a protective order precluding its own deposition because it has earlier responded to written discovery. The Ninth Circuit authorities discussed by Plaintiffs above demonstrate that to avoid a deposition, a company must show more than that it has served responses to written discovery earlier in the case.

In any event, Toys does not even do a convincing job of establishing that it has, in fact, already provided all the information Plaintiffs supposedly need at this stage.

For example, Toys points out that in an interrogatory response served in July, 2007 (Response to *Edwards* Interrogatory No. 4), it "admitted" that "certain employees" at its corporate headquarters were aware that federal law required it to mask credit and debit card receipts. So what. That does not mean Plaintiffs have no right to depose Toys, and moreover that response has no relation to Topics 16, 17 and 18 anyway.

Toys further asserts that in September 2009, it admitted in response to Ellis RFA's that it learned of FACTA's truncation requirements prior to January 1, 2005. Again, such a response is completely unconnected to Topics 16, 17 and 18. Moreover, the fact that Toys has admitted that it was aware of FACTA's truncation requirements does not preclude a deposition regarding when it became aware of those requirements, the extent to which it was aware of those requirements (i.e., was it aware that FACTA became effective for all registers as of December 4, 2006), etc.

Similarly, the fact that Toys supposedly has outlined its supposed "history of compliance dating back to five years before FACTA was operative" and its "program to protect privacy of customers [sic] credit card numbers" says nothing

44

about whether it has provided any information regarding the steps it took to ensure that it was complying *after implementing CR 615, and after December 3, 2006.* In any event, again, merely responding to *written discovery*, whether responsively or non-responsively, truthfully or evasively, does not allow a named defendant in a class action to avoid its own deposition under oath.

In a deposition, as the Court undoubtedly knows, it is much more difficult for a corporate representative to avoid responding to straightforward questions posed by counsel. Further, instructions not to respond are generally improper. Counsel can ask follow-up questions, and can cross-examine the witness. Written discovery responses, in contrast, tend to be far more subject to the control of defense counsel.

> ### (3) <u>The Fact that the *Edwards* Plaintiffs – but not Mr. Ellis – Deposed Toys' MSJ Declarants In Order To Defeat Toys' Motion For Summary Judgment Does Not Preclude *Toys* Itself From Being Deposed</u>

Toys next argues that because the *Edwards* plaintiffs took the depositions of Dennis Gleason and Dion Rooney in 2007 in opposing Toys' baseless summary judgment motion, Toys itself cannot now be deposed, either by the *Edwards* plaintiffs or the *Ellis* plaintiff. Toys' arguments in this regard are factually misleading and legally absurd, and Toys has patently failed to make the strong showing it must make, according to the Ninth Circuit in *Blankenship*, to preclude its own deposition.

***First***: Toys brazenly misrepresents that Mr. Gleason was deposed in 2007 individually and "pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure." This is simply ***false***, as Toys knows in proffering this quoted language, which was a <u>typographical error</u> in Mr. Gleason's deposition notice, attached as Shelton Decl., Exh. K. Not content to make this false claim once, Toys subsequently reiterates it, asserting at the conclusion of its argument regarding

45

these deposition topics that Mr. Gleason "was already deposed as a 30(b)(6) witness in August 2007."

Toys knows full well that, despite the typo on the first page of his deposition notice, Mr. Gleason was *not* deposed on a 30(b)(6) basis, because:

- Mr. Gleason's notice did not identify any topics of examination, as required for a 30(b)(6) notice, and Toys' own counsel confirmed as much in writing in objecting to the inadvertent reference to Rule 30(b)(6) before Mr. Gleason's deposition [Moore Decl., Exh. K, Moore Decl., Exh. 16, p. 3];

- the notice plainly indicated that Plaintiffs were deposing Dennis Gleason, the individual and summary judgment declarant, not Toys, the entity, as would be required for a 30(b)(6) notice, and as Toys' counsel understood (*Id.*);

- Plaintiffs' counsel recently wrote to Toys' current counsel, Ms. Shelton, who was not counsel at the time of Mr. Gleason's deposition, explaining that it was a typographical error, and that Mr. Gleason was not deposed on a 30(b)(6) basis [Moore Decl., Exh. 12];

- there is no evidence whatsoever in the deposition transcript itself that Mr. Gleason was deposed as a corporate representative, because he wasn't, as Plaintiffs' counsel and Toys' counsel at the time understood; and

- Toys' counsel repeatedly instructed Mr. Gleason not to answer for improper reasons, including that he should testify based only on his own personal knowledge; those instructions would have been improper in any deposition, but are even more improper in a Rule 30(b)(6) deposition, where the witness is *required* to testify regardless whether he or she has personal knowledge regarding the

noticed matters at issue.  See excerpts of Gleason Depo., Moore Decl., Exh. 17.

In sum, on this point, Toys' counsel are simply fabricating facts, and knowingly so.[40]

***Second***, Plaintiffs have already refuted Toys' reliance on the *Nicholas* case, discussed above.  Here, Toys relied on Mr. Gleason as their primary summary judgment declarant.  The *Edwards* Plaintiffs deposed him and demonstrated that summary judgment was not warranted.  Now, Toys argues that if it merely designates Mr. Gleason again, it can preclude Plaintiffs – *including plaintiff Ellis*, who was not even involved in the case when Mr. Gleason was deposed -- *from deposing Toys*, the named defendant, about critical matters in the case.  Suffice it to say that *Nicholas* "holds" no such thing.  If only a corporate party could avoid its own deposition in such a fashion.

The reason the Fourth Circuit found no abuse of discretion in *Nicholas* was because it was apparent that the defendant was attempting to harass the plaintiffs by seeking to depose their non-party corporation, and because the defendant's

---

[40] Rule of Prof. Conduct 5-200 states:

In presenting a matter to a tribunal, a member:

(A) Shall employ, for the purpose of maintaining the causes confided to the member such means only as are consistent with truth;

(B) Shall not seek to mislead the judge, judicial officer, or jury by an artifice or false statement of fact or law;

(C) Shall not intentionally misquote to a tribunal the language of a book, statute, or decision;

(D) Shall not, knowing its invalidity, cite as authority a decision that has been overruled or a statute that has been repealed or declared unconstitutional; and

(E) Shall not assert personal knowledge of the facts at issue, except when testifying as a witness.

In addition, Business & Professions Code § 6068 ("Duties of attorney") states that it is the duty of an attorney "to employ, for the purpose of maintaining the causes confided to him or her those means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law."

47

lawyer conceded that the non-party corporation's designee – one of the plaintiffs – would have no further information than had already been provided in the plaintiffs' depositions. *Nicholas*, 373 F.3d at 539, 543.

Here, Toys is a named party. It has <u>not</u> yet been deposed, but wants to avoid its own deposition (going so far as to simply not show up on the noticed date of January 26, 2010). Likewise, Plaintiffs have made no concession that an appropriately prepared designee of Toys would not provide additional or different testimony than Mr. Gleason did.

The *Ninth Circuit* authority Plaintiffs cite above (absent from Toys' briefing) makes clear that Toys bears a heavy burden in seeking to preclude its own deposition. The facts that one of its employees was previously deposed and that its counsel now have conveniently begun claiming – as of January 11, 2010 - that Toys would designate the same employee as its corporate designee on these matters does not somehow cleverly allow Toys to avoid being deposed as a party defendant in the case. If Toys wants to designate Mr. Gleason again, so be it, although this time he will be giving testimony binding on the company and will not be permitted to avoid responding based on his own claimed lack of personal knowledge.

**Third**, as noted above, Toys ignores that when the *Edwards* plaintiffs deposed Mr. Gleason as an individual in August, 2007, *Mr. Ellis was not even in the case*. Indeed, he had not even filed suit yet in Illinois. The idea that Mr. Ellis is precluded from deposing **Toys** because Mr. Gleason was deposed by the *Edwards* plaintiffs for the purposes of defeating an early summary judgment motion brought in the *Edwards* case is unsupportable.

**Fourth**, as noted above, Toys' counsel repeatedly instructed Mr. Gleason not to answer on improper grounds. Moore Decl., Exh. 17. Accordingly, Plaintiffs may seek to depose Mr. Gleason again as an individual in the future. For now, however, the instructions by Toys' counsel at his deposition make clear that,

assuming he *had* been a 30(b)(6) designee, Toys would now have to designate a new one.

### (4) Toys' "Substantial Prejudice" Argument Is Unsupported and Baseless

Toys asserts that it would be "prejudiced" to designate someone other than Mr. Gleason.  As usual, its claims about "substantial prejudice" are not supported by any evidence, and should be disregarded. *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) (General or boilerplate objections "such as 'overly burdensome and harassing' are improper – especially when a party fails to submit any evidentiary declarations supporting such objections.")  In addition, Toys arguments do not even directly address most of the topics at hand.  It asserts, for instance, that it would be "impossible" to designate a person who could "competently testify" as to the knowledge of thousands of employees three years ago.  However, only Topic 10 even partly relates to the knowledge of employees (as well as officers and directors).  Topics 11, 16, 17 and 18 do not.  See also *WebSideStory, Inc.*, 2007 WL 1120567, at *4 ("**a claimed lack of knowledge does not provide sufficient grounds for a protective order**.")

In addition, in a PMK deposition, Toys is required to seek information about the noticed topics, regardless whether any one individual can "competently testify" in the sense that would be required if he or she were testifying based on personal knowledge. *See, e.g., Medimmune*, 2009 WL 5069142, *1 (noting that personal knowledge of the designated subject matter is "of no consequence" in a 30(b)(6) depositions)

For example, Toys could easily email its individual store managers who were with the company in the fall of 2006 and are still with the company and ask them whether they were aware at that time that printing 10 account digits on customer receipts was illegal.  Toys has admitted this, despite its present unsupported claims of burden. See Toys' Amended Response to Edwards' RFA

49

No. 27 (part of Shelton Decl., Exh. A). Toys could also make the same inquiries, personally or by email (if it has not done so already), of its in-house counsel, officers and directors as of late 2006. In addition, see Toys' amended response *admitting* Edwards RFA No. 28, that it "could inquire by means of TOYS' company email system as to whether TOYS' store employees were aware in November and December 2006 that TOYS was printing excess account digits on RECEIPTS during November and December 2006, " and Toys' response to Edwards RFA No. 29, *admitting* that it could inquire of its home-office personnel "as to whether they were aware in November and December 2006 that TOYS was printing excess account digits" on receipts during that period. *Id.*

Toys also has claimed, in sworn discovery responses, that after being sued it interviewed various personnel about their knowledge of FACTA and about Toys' compliance efforts. See, e.g., Shelton Decl., Exh. A, Toys' Amended Responses to [Edwards] Plaintiffs' Third Set of Interrogatories, regarding the basis for its response to RFA No. 26, (stating that Toys "thoroughly investigated the facts underlying Plaintiffs' claims in this lawsuit, including speaking to various Toys personnel regarding their knowledge and compliance with all FACTA requirements in November and December 2006" and identifying Joel Tennenberg as the Toys employee with knowledge of these alleged facts). Presumably, someone can testify about those communications.

Finally, Toys suggests that only Mr. Gleason is capable of testifying as to these topics. Toys can, of course, designate Mr. Gleason, if it wishes, assuming he is prepared "so that [he] may give knowledgeable and binding answers for the corporation." *Medimmune*, 2009 WL 5069142, *1 (citing *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D. N.C. 1996).)

In sum, Toys is simply wrong, and obviously so, in urging that Mr. Gleason's deposition in 2007 has some bearing on its motion. The fact that Mr. Gleason was deposed individually (in *Edwards*, not *Ellis*) does not preclude him

50

from being deposed as a corporate designee.  Nor does Toys' stated intention to designate him as the 30(b)(6) witness preclude Toys from being deposed.  The fact that Toys stoops to actually telling this Court that he was previously deposed pursuant to Rule 30(b)(6) demonstrates the depths to which it will go to evade its own deposition.

### C. Topic 2 – Communications With Class Members Regarding the Existence, or Lack of, Injury or Damages

Plaintiffs agree entirely that the existence of actual injury to themselves or class members, as a result of Toys' allegedly willful violations of FACTA, is irrelevant to the propriety of class certification in a case that seeks statutory damages.  However, relevance to class certification is not the standard.  Moreover, other courts, in purportedly assessing the "superiority" of class treatment in a FACTA case seeking statutory damages, have found that the purported lack of actual injury and/or damages to class members as a result of the defendants' allegedly willful FACTA violations support denying class certification.  And, Toys itself has stated in sworn interrogatory responses that the supposed lack of injury is relevant to the denial of class certification  Toys has made very clear that, like other FACTA defendants, it will argue that class certification is inappropriate because of the large statutory damages that might (or might not) ultimately be imposed in a case where, supposedly, no one was harmed.  *See, e.g.*, the final sentence of Toys' introductory statement in this very document (stating, gratuitously for present purposes, that "85% of the district courts in this Circuit have denied class certification in FACTA cases where the named plaintiffs have not suffered any identity theft".)

Therefore, Plaintiffs are unable to take Toys at its word when it now says through counsel, in attempting to avoid its deposition, that this information is not relevant to class certification.  As Plaintiffs have previously advised, if Toys wishes to formally stipulate that the existence or non-existence or actual injury or

51

damages suffered by Plaintiffs and class members is irrelevant to the propriety of class certification, then Plaintiffs will forego seeking testimony on this topic for now.

The matter is also relevant, more generally.  Toys has claimed that it always puts the privacy and data security interests of its customers first, suggesting to Plaintiffs' counsel that this is relevant both to the superiority of a class action seeking relief for its illegal conduct, and to the liability question of whether it willfully violated FACTA.  If Toys really cared so much about its customers, Toys plainly could have advised its customers – many of whose email addresses it possesses – that it had "inadvertently" violated a law that was intended to protect them from the risk of identity theft, and could have inquired whether, in fact, they had suffered any identity theft or injury as a result.  Apparently, it has not done so, even though it has asserted repeatedly in discovery responses and in its prior motion for summary judgment that no one was injured by its illegal conduct.  Plaintiffs are inquired to inquire about this topic, and about the foundation, if any, for its continuing claims that no one was harmed, in a deposition.

Toys also argues that none of the named Plaintiffs "have even alleged any identity theft."  This is misleading.  While Plaintiffs Schley and Edwards have not themselves claimed that they actually had their identities stolen as a result of Toys' illegal acts (and need not do so to recover if willfulness is shown), they alleged in paragraph 28 of their Complaint:

"Plaintiffs and Class Members also were exposed to at least an increased risk of identity theft by reason of [Toys'] conduct.  However, Plaintiffs do not seek to quantify or recover actual damages in this case, either for themselves or the Class Members.  That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest statutory damages without proof of injury.  *Any Class Members who suffered substantial actual damages due to identity theft or other damages resulting from the violations alleged above*

1    *will be entitled to opt out of this action, should they so desire, and litigate*
2    *independently*." (Emphasis added.)

3          Thus, Plaintiffs' allegations – which must be accepted as true – are that
4    some Class Members may, in fact, have suffered actual damages as a result of
5    Defendants' conduct.    Some courts have attempted to impose an actual
6    damages/injury prerequisite to class certification in FACTA cases where actual
7    damages need not be shown if willfulness is proven, under the guise of analyzing
8    the "superiority" of class treatment.  Toys, for its part, wants to argue at the class
9    certification stage that no one was harmed by its conduct, notwithstanding
10   Plaintiffs' allegations set forth above.  Plaintiffs are entitled to seek to demonstrate,
11   through a deposition of the named defendant, that, in fact, Toys has not even
12   attempted to learn whether class members have been harmed.  That information
13   might or might not be germane, in Judge Morrow's view, to class certification. A
14   jury might also find Toys' disinterest in learning whether its customers suffered
15   harm to be germane in considering whether Toys was willing to knowingly or
16   recklessly ignore that, in its busy holiday season in 2006, it had started violating a
17   law it did not deem worthy of disrupting its busy holiday sales operations after its
18   2006 holiday season concluded.

19             **D. <u>Topic Nos. 12-13, 20-25, and 32-33, Relating To Toys' Possible**
20             *<u>Awareness That It Was Violating FACTA</u>* **<u>Before It Claims It**
21             **<u>Had Such Awareness, Are Proper Subjects For Its Deposition</u>**

22             **1. <u>Plaintiffs Should Be Permitted to Depose Toys On These**
23             **<u>Relevant Matters Now</u>**

24         These topics – despite Toys' efforts to mischaracterize them – all relate to
25   the central issue of Toys' knowledge that it was *violating* FACTA before Plaintiffs
26   filed suit.   Toys largely ignores the actual topics at issue, suggesting in its
27   argument that Plaintiffs only want "burdensome" testimony regarding actual
28   purchases by "*tens of thousands of employees*" years ago.

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

The actual topics are:

12. The extent of knowledge of Defendant's *employees, officers and directors*, during the period from October-December 2006, regarding the *presence or absence of extra account digits on customer credit and debit card receipts* during the period from October 26, 2006 through December 27, 2006.

13. The nature, extent and substance of any *communications* between Defendant and its *current and former employees, officers and directors* regarding the presence or absence of extra account digits on customer credit and debit card receipts during the period from October 26, 2006 through December 27, 2006.

20. The identity of the *current and former officers* of Defendant who, while officers of Defendant, made a purchase(s) at Defendant's store(s) using a credit or debit card from October 27, 2006 through January 5, 2007.

21. The identity of the *directors* of Defendant who, while directors of Defendant, made a purchase(s) at Defendant's store(s) using a credit or debit card from October 27, 2007 through January 5, 2007.

22. The identity of the members of *Defendant's management* who, while employed by Defendant, made a purchase(s) at Defendant's store(s) using a credit or debit card from October 27, 2006 through January 5, 2007.

23. The identity of the *law department personnel* of Defendant who, while employed by Defendant, made a purchase(s) at Defendant's store(s) using a credit or debit card from October 27, 2006 through January 5, 2007.

24. The *number of credit and debit card purchases made by officers, directors, management and law department personnel* of Defendant, Toys "R" Us at Defendant's store(s) from October 27, 2006 through January 5, 2007.

32. *The steps and procedures that Defendant has undertaken, or that Defendant would have to undertake*, in order to determine which credit and debit card purchases at Defendant's stores were made by employees, officers or directors of Defendant from October 27, 2006 through January 5, 2007.

33. The *steps or procedures that Defendant has undertaken, or that Defendant would have to undertake*, in order to determine the documents or data in Defendant's possession, custody or control which would show the credit and debit card purchases made by Defendant's employees, including but not limited to its officers, directors, management, and law department, from October 27, 2006 through January 5, 2007.

(Italics added.)

Toys has repeatedly claimed (in its failed motion for summary judgment and subsequently) that despite its supposed long efforts to comply with FACTA before the supposed "inadvertent glitch" in late October, 2006, it somehow did not discover that it was visibly violating the law millions of times until after it was served with Plaintiffs' complaint on December 27, 2006 (see, e.g., Toys' response to Interrogatory No. 10, Moore Decl., Exh. 2). Conveniently, that date was also right after its 2006 holiday season ended, and is when it undertook its supposedly unprecedentedly quick efforts to roll-out new software so as to stop violating the law. Toys has suggested it will reiterate this story in opposing class certification and at trial in seeking to avoid a willfulness finding. Plaintiffs do not believe such "facts," relating to acts taken after being sued for earlier willful violations, should have any bearing on class certification. Yet the fact remains that Toys intends to make the argument in opposing class certification, and that some judges have found – that efforts to quickly cease noncompliance upon "learning" of it are germane to superiority in this sort of statutory damages case.

Accordingly, Plaintiffs have a right to seek discovery to prove, once and for all, that officers, managers and other key personnel at Toys were in fact fully aware that Toys was violating FACTA earlier than it has claimed (never mind that it printed test receipts in October 27, 2006 that showed the presence of extra digits and that the extra digits were visible to the human eye on the millions of receipts it subsequently provided to customers before Plaintiffs filed suit.)

Toys refuses to provide information relating to this issue, such as

55

1   information regarding whether key personnel received noncompliant receipts prior
2   to the suit being filed and/or served, that would have made them aware that Toys
3   was violating the law well before it began its supposed "quick fix" after Christmas,
4   2006.
5       The parties' dispute over *Edwards* RFA Nos. 38 and 39 (the subject of a
6   motion filed January 20, 2010), *Ellis* RFP No. 3, and these PMK topics, all relate
7   to this central issue in the case.  As previously noted, given the analysis some
8   courts have employed in considering the "superiority" of a class action, such
9   discovery is arguably "relevant" to class certification, although Plaintiffs disagree
10  that such an analysis is correct.  *See, e.g., Soualian, supra.*

### 2.  Toys' Boilerplate Arguments Lack Merit

12      Toys' arguments about why it should not be deposed on these topics are
13  unsupported, unsupportable, and at least close to frivolous**.**

### (a) This Discovery is Plainly Relevant

15      First, Toys declares, without explanation, that the subject of its "employees'
16  purchases" is irrelevant to "any issue in the case – much less class certification."
17  As discussed previously, the notion that determining the knowledge whether, when
18  and to what extent officers, managers, etc. had knowledge that Toys was violating
19  FACTA, or made purchases that would have (or at least should have) alerted them
20  to Toys' illegal conduct is somehow irrelevant is sheer nonsense.  Notably, Toys
21  cannot even muster an explanation as to why this discovery is "irrelevant."   Its
22  continuing boilerplate pronouncements in that regard fail to establish the good
23  cause required to prevent its deposition.

### (b) Toys' Claims About Its "Admitted" Knowledge of
### FACTA Miss The Point

26      Next, Toys argues that knowledge "of FACTA" is not at issue because it has
27  admitted that "it" had knowledge of FACTA at all relevant times.  This is a smoke-
28  screen .  First, these topics do not concern knowledge of *FACTA*, per se, but rather

1   to knowledge that Toys was *violating* FACTA.  Second, Toys has in fact only

2   admitted that a handful of "certain" employees and officers were aware of FACTA,

3   while claiming, for example, that *others* – such as quality assurance manager

4   Rowena Lochner, who reviewed the test receipts that showed Toys was violating

5   the law in October 2006 – were *not* aware of the law.  In effect, Toys seems to

6   think it can play a knowledge "shell game," arguing that some persons (e.g., IT

7   personnel) were aware of FACTA's truncation requirements but were not aware

8   that Toys was printing millions of receipts violating FACTA (without permitting

9   discovery to determine whether the latter was true), while others may have been

10  aware that extra digits were being printed on receipts but were not aware that this

11  was a violation of the law.  While Plaintiffs do not believe that such a shell game is

12  legally effective, the fact remains that Plaintiffs have the right to take discovery on

13  such matters.

14              ### (c) Toys' Claims About "Substantial Prejudice and

15                    Undue Burden" Are Unsupported and Baseless

16       Next, Toys claims that deposing it as to the topics at issue would be

17  burdensome, and that obtaining the information requested would be virtually

18  impossible, since Toys processed tens of millions of transactions and had "*tens of*

19  *thousands* of employees," many of whom long ago left the company.  According to

20  Toys, it would be "impossible" to "designate one person (or a hundred persons)" to

21  testify about the number of transactions made by employees during the 2006

22  holiday season."

23       Toys' focus on purchases by "tens of thousands" of employees is <u>utter

24  nonsense</u>.  Toys is not even *arguing* about the actual topics at issue.  Not a single

25  one of these topics seeks testimony forcing Toys to identify, in a deposition, each

26  of the tens of thousands of employees who might have made their own credit/debit

27  purchases during the period in question.  Toys apparently thinks it can preclude

28  testimony on these topics by ignoring what they seek.

Topic **12** is the "extent of knowledge of Defendant's employees, officers and directors" regarding the presence or absence of extra digits on receipts during the period in question. Setting aside that there were probably only *a few dozen officers and directors*, the referenced individuals' knowledge of the extra digits would not necessarily be predicated solely on their own purchases. Perhaps a store manager told them that extra digits were being printed. Perhaps they reviewed the test receipts that showed extra digits, etc.

Topic No. **13** is the nature, extent and substance of *communications* between Toys and others regarding the presence or absence of extra digits during that period. Toys has admitted that, after this lawsuit was commenced, it had discussions with key personnel about their knowledge and its compliance with FACTA prior to being sued.

Topic **20** relates to the identity of the **officers** who, while officers of Toys, made purchases using a credit or debit card during the period in question. Topics **21-23** are the same, except they relate to the identity, respectively, of **directors**, **management**, and **law department personnel** – not *all* employees -- who made purchases during the period in question.

Topic **24** seeks the number of credit and debit card purchases made by officers, directors, management and law department personnel" – not all tens of thousands of employees – during the period in question. Toys can easily obtain this information, by inputting the names, employee numbers, etc. of these limited persons into its own purchase database or its third party vendor transaction database to determine whether their names appear, and/or even by asking the referenced individuals if they made. It certainly has provided no *evidence* that it can't, or that doing so would be so unfairly and unduly burdensome that it can avoid doing so.

Topic No. **32** is the steps and procedures that Toys has undertaken, or would have to undertake, to determine which credit and debit card purchases at its stores

58

were made by officers, directors and employees during the period in question. While making unsworn, incompetent and wholly unsupported representations, through counsel, about what it can and cannot do, it actually thinks Plaintiffs should be forbidden from seeking the relevant information in a deposition, where it will be forced to testify under oath. Topic No. **33** is similar.

In sum, setting aside that Toys has not offered a shred of *evidence* to support is claims of "burden" and "prejudice," its claims about burden are baseless and are predicated on ignoring the actual topics at hand. There is nothing inappropriately burdensome about deposing Toys about any of these topics – let alone all of them – such that Toys has demonstrated good cause to preclude its deposition from going forward.

Finally, Plaintiffs were in no way obligated to accept Toys' offer to equivocally "stipulate" that some employees made purchases during the referenced period who "may" have been officers and who "may" have had knowledge of FACTA, in lieu of deposing Toys and obtaining binding testimony going to its knowledge or reckless disregard of the fact that it was printing millions of illegal receipts *before* it was sued, and *before* it finally started taking efforts to address its illegal conduct after Christmas 2006. If, as Toys claims, Toys "does not have" a PMK (and a company rarely does until it actually receives a PMK notice and inquires about who would be qualified to testify about the matters at issue), it should designate and educate one.

### E. Topics 3-8 and 19 Are Proper Subjects for Discovery Now

Toys claims it should not have to identify all of the millions of class members until after class certification. This misses the point, since Plaintiffs are not asking it to do so. A class action defendant can hardly claim that its *ability* to identify class members is irrelevant. Rather, Toys concedes (through counsel's argument) that it *can* identify and notify a class if one is certified, and thus, it argues, deposing it *before* class certification is inappropriate and "irrelevant."

1   Setting aside that relevance to class certification is not the standard, if a

2   defendant's ability to identify class members is not discovery that is relevant to

3   class certification, nothing is.

4   In any event, Toys appears to misunderstand what Plaintiffs seek here. As

5   should have been apparent from the deposition notice itself and from the parties'

6   discussions, but apparently still is not, Plaintiffs are *not* asking Toys to *identify* all

7   the class members now. As such, Plaintiffs do not even understand Toys'

8   misplaced (and, as usual, unsupported) argument that identifying all the class

9   members now, before a class is certified, "will require unknown effort and

10  expense, including most likely the creation of a new computer systems

11  environment, which is why TOYS has asked that this matter wait until a

12  determination is made regarding whether a class is certified."

13  Plaintiffs are simply seeking sworn deposition testimony *from Toys itself* –

14  rather than the continuing, unsworn assertions of its counsel -- regarding Toys'

15  ability or inability to identify class members and to distinguish between different

16  types of credit transactions, etc.   (Topics 3-6, 19), regarding the sorts of

17  information that Toys retains regarding class member identities (Topic 7), and

18  regarding the steps, if any, that Toys has taken to determine the identities of class

19  members who received illegal receipts. (Topic 8.) All of this is relevant. Notably,

20  some of these topics dovetail with Topics 20-23 and 32-33, discussed above.

21  Finally, Toys says it has offered to stipulate to numerosity. This is a non-

22  sequitur. Plaintiffs know full well that any class(es) they ultimately seek to certify

23  will be sufficiently numerous, based on Toys' sworn discovery responses that it

24  violated the law millions of times on a nationwide basis and thousands of times on

25  even a one-store basis. Thus, it is immaterial that Toys says it is willing to

26  concede numerosity. Numerosity has never been an issue, and Plaintiffs are not

27  seeking testimony from Toys on these topics in order to show numerosity.

28

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

### F. **Topic No. 9 – Relating to Toys' Financial Condition – Is Proper**

Toys now argues that its financial condition is irrelevant to class certification.  While Plaintiffs would normally agree, the fact is that some courts considering the propriety of class certification in FACTA cases have held differently, based on purported "superiority" grounds.

Notably, in seeking to avoid a deposition, Toys ignores its sworn interrogatory response, served in July, 2007, to the *Edwards* plaintiffs' Interrogatory No. 1, which asked Toys to "[s]tate all facts supporting YOUR contentions that a class should not be certified in this case."  Moore Decl. Exh. 2.  After making purported objections, Toys responded as follows:

> ". . . TOYS contends that a class is not a superior method for adjudicating plaintiffs' claim or the claims of class members, and that class certification would *violate TOYS' due process rights for the reasons cited by the courts* in [four citations omitted].  TOYS contends that a potential damage aware based on the number of receipts issued by TOYS which did not comply with FACTA times the statutory penalty sought by plaintiffs *substantially exceeds TOYS' net worth* and/or is grossly disproportionate to the actual damage alleged (none).  Because it is not a publicly held and traded company, TOYS' net worth cannot be calculated through standard means used with public companies such as multiplying the number of outstanding shares by the stock price.  TOYS has not yet calculated its net worth, but the information necessary to make that determination is contained in TOYS' most recent 10-K and 10-Q filings, both of which have been produced to plaintiffs by TOYS.  TOYS refers plaintiffs to these documents pursuant to Rule 33(d) of the Federal Rules of Civil Procedure.  Based on its analysis to date, TOYS has determined that over 29 million receipts which did not comply with the FACTA requirements were issued by TOYS from October 2006 until TOYS corrected the inadvertent error that led to its non-compliance in January 2007."  (Italics added.)

Thus, Toys' financial condition is, *in Toys' view*, relevant, according to its own sworn discovery response to the very first interrogatory in this litigation, which it has *not* amended.  Indeed, concerns about its financial condition and the

61

large potentially statutory damages award in a class action were the *sole* ground it identified as a basis for denying class certification.

Toys next argues that it has already provided its 2008 10-K and its most recent 2009 10-Q filing, as if its voluntary production of such hearsay documents (recently, in an effort to preclude a deposition) allows it to unilaterally circumvent its deposition under oath, to obtain binding testimony about the matters at issue.

Toys' assertion that it is now willing to stipulate that it will not argue that it will be "annihilated," i.e., put out of business – the analysis adopted by a number of courts denying class certification as not "superior" -- but rather that it will argue only that such "potential damages (in excess of $16 billion") are out of proportion to any actual injury suffered . . . ." also does not allow it to avoid its deposition. Plaintiffs do not believe there is any likelihood whatsoever that the Ninth Circuit will accept that mere "disproportion" of potential statutory damages, if willfulness is proven, allows a district judge to deny class certification in a FACTA case seeking congressionally-authorized statutory damages for willful violations of the FCRA, of which FACTA is a part.   Plaintiffs also do not believe that Judge Morrow will accept that claim, but cannot know at present.

Further, Plaintiffs have not yet filed their renewed class certification motions, but have advised Toys that they will seek certification of non-overlapping classes (i.e., non-nationwide classes).   Plaintiffs are considering the sizes of the proposed classes and/or subclasses they will ask the Court to certify, only because of the sort of "superiority" analysis adopted by some courts in this district. (Plaintiffs note that the propriety of that "superiority" analysis is now before the Ninth Circuit for an immediate appeal pursuant to a successful FRCP 23(f) petition, following the denial of class certification on similar grounds in another case where Spiro Moss is class counsel.)   Plaintiffs advised Judge Morrow and Toys of this at the June 15, 2009 scheduling conference.   Shelton Decl., Exh. F, p. 11:11-19.

In determining the size of classes and/or sub-classes, if any, that would minimize the strength of any such "superiority" argument by Toys (at the district court stage and on appeal), Plaintiffs are entitled to seek financial information to establish, e.g., that Toys would in no sense by seriously harmed, in terms of continuing as a successful functioning entity, by a potential statutory damages award to a particular proposed class/sub-class, assuming willfulness were later proven in this case.  Obviously, Plaintiffs do not believe this sort of analysis of "superiority" under Rule 23 is appropriate in any event, but Plaintiffs are covering all the bases, and leaving nothing to chance.  Considering such matters, as putative class counsel, is plainly appropriate at the pre-certification stage, given some courts' conclusions that certification for allegedly willful FACTA violations is not "superior" because a defendant might be wiped out by an overly large statutory damages award.

Moreover, Toys' Amended Answer contains only a single affirmative defense, which asserts that an award of statutory damages would violate its due process rights.  Accordingly, this discovery is also relevant to the merits of Toys' sole purported affirmative defense.

## G. Topics 14 and 15 – Regarding Toys' Legal Representation in 2006 – Are Not Off-Limits

Finally, Toys seeks to preclude its deposition regarding the size and members of its legal department in 2006 (No. 14), and the number and identity of law firms representing or providing counsel to it in 2006 (No. 15).  Toys says such discovery is irrelevant "for any purpose, whatsoever" and thus can only be intended to "harass" TOYS.  Nonsense.

Such discovery is plainly germane to the question of willfulness.  Unlike other companies sued for violating FACTA, Toys is a top-100 retailer, with a legion of lawyers.  If a company with many attorneys in-house and on retainer printed millions of illegal receipts for months, despite admittedly knowing of

63

FACTA's requirements, without any monitoring system in place, that could very well go to willfulness. *Edwards*, 527 F.Supp.2d at 1214, n. 56.

And, given evidence Plaintiffs' counsel have obtained in other cases, some law firms sent newsletters to their clients prior to December 4, 2006 advising them of FACTA's upcoming final compliance deadline (December 4, 2006) and advising them to assure that their registers were in compliance. Toys obviously took no such steps. It claims this was because it was not aware that it was generating millions of visibly illegal receipts. However, the truth may well be that it did not commencing fixing its registers during the busy holiday season, until after Christmas, for business-related reasons. Regardless, we are talking about *discovery*. Merely requesting information regarding the number of and identity of lawyers representing Toys in 2006 plainly does not impose any burden on Toys, as Toys admits by not arguing otherwise. Notably, Toys' counsel suggested on January 8, 2010 that Toys would likely be willing to simply provide this basic information by stipulation or declaration at the parties' January 4, 2010 meeting, in lieu of requiring a deposition as to these two topics, but never followed up. Moore Decl., Exh. 18.

Moreover, this information is also likely to lead to the discovery of admissible evidence regarding Toys' upcoming arguments, in opposing class certification, that it was unaware that it was violating FACTA until it was served with a complaint in this case, and thus its supposedly quick compliance efforts thereafter tend to support denial of class certification on "superiority" grounds.

## II.   PLAINTIFF GREGORY ELLIS' REQUEST FOR PRODUCTION OF ALL DOCUMENTS RELATED TO CREDIT/DEBIT PURCHASES BY TOYS' EMPLOYEES

As part of his Second Set of Requests for Production (originally served back in October 7, 2008, prior to the consolidation of the Edwards and Ellis action and subsequent stay was issued) Plaintiff Gregory Ellis included the following request

64

(Request No. 3), one of the broadest requests served by any of the Plaintiffs in the last three years:

> "All documents evidencing all purchases made by your employees, including but not limited to, officers, directors, management, and law department, by debit or credit card from October 27, 2006 through January 5, 2007."

**TOYS' RESPONSE:**

On September 14, 2009, TOYS responded to the request as follows:

> "TOYS objects to this request on the ground that it is vague with respect to the phrase "all purchases." TOYS further objects on the grounds that the request is irrelevant, overbroad, and unduly burdensome and harassing, in that it seeks voluminous private consumer records that have no bearing on the claims or defenses in this lawsuit. It is not clear what documents are sought by the request, but to the extent the request seeks records of debit or credit card transactions at TOYS stores, TOYS directs Plaintiff to the written responses and production in response to the requests propounded by Plaintiffs Nicola Edwards and James Schley on April 2, 2007, which have been provided to Plaintiff."[41]

**TOYS' AMENDED RESPONSE:**

On September 24, 2009, TOYS provided the following amended response:

> "TOYS objects to this request on the ground that it is vague with respect to the phrase "all purchases." It is not clear what documents are sought by the request. TOYS also objects to this interrogatory on the grounds that it is unduly burdensome. In order to even begin to search for documents responsive to this request, TOYS would have to compile a list of the names of all employees who worked during the 2006 holiday season, estimated to be thousands of people. TOYS also objects on the grounds that the request is overbroad, irrelevant and harassing, in that it seeks voluminous private consumer records that have no bearing on the claims or defenses in this lawsuit. TOYS also objects to this interrogatory on the grounds that it seeks information that is not relevant to any issues pertaining to class

---

[41] Shelton Decl., Ex. A.

certification, and therefore runs afoul of the Court's scheduling order, which specifically delineated a separate schedule for class certification discovery, and Judge Morrow's comments on June 15, 2009, and Order issued on September 14, 2009, in which she directed the parties to focus on discovery that is related to class certification. Based on these objections, TOYS will not produce any additional records responsive to this request."

**TOYS' FURTHER AMENDED RESPONSE:**

On September 25, 2009, TOYS provided the following further amended response:

TOYS objects to this request on the ground that it is vague with respect to the phrase "all purchases." It is not clear what documents are sought by the request. TOYS also objects to this interrogatory on the grounds that it is unduly burdensome. In order to even begin to search for documents responsive to this request, TOYS would have to compile a list of the names of all employees who worked during the 2006 holiday season, estimated to be tens of thousands of people, and at a minimum have to obtain from them the credit card numbers that they used for each such transaction. TOYS further objects on the grounds that the request is irrelevant, overbroad, and unduly burdensome and harassing, in that it seeks voluminous private consumer records that have no bearing on the claims or defenses in this lawsuit. Based on these objections, TOYS will not produce any additional records responsive to this request.

A.   **TOYS Should Be Protected From the Unnecessary Time and Expense that Would Be Required to Respond to this Irrelevant and Overbroad Request.**

1.   **The Request is Irrelevant to Class Certification.**

This request is irrelevant to any issues involved in the upcoming motions for class certification (and therefore contravenes Judge Morrow's instructions that the parties focus on discovery necessary for class certification).

## 2. The Request is Massively Overbroad.

This request is the single broadest discovery request served by any party in the last three years. TOYS has hundreds of stores and tens of thousands of employees at any given time. This request seeks every document related to every purchase made by every employee over a three-month period, three years ago, during the busiest time (holiday season). Moreover, the documents, even if they could be located, would serve no purpose in this litigation. Accordingly, this request is overbroad.

## 3. The Request is Unduly Burdensome.

Documents that might be responsive to this request do not exist as such. TOYS' database does not contain the names of debit and credit customers, just the first initial and last name, and not in a database that can be easily searched. In order to even begin to search for documents responsive to this request, TOYS would have to compile a list of the names of all employees who worked during the 2006 holiday season (estimated to be tens of thousands), including temporary employees (most of whom are gone). TOYS would then have to work with software technicians to determine how to create a systems environment that would allow TOYS to search through the universe of potentially relevant credit/debit card information (relating to over 16,000,000 receipts). Some of the information would need to be obtained from third party vendors and reconciled with TOYS' electronic database. At that point, assuming the information could even be compiled in a searchable form, the name of each TOYS employee (potentially tens of thousands) would have to be run through the database of information. The entire process could require hundreds of man-hours and untold expense.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.     The Request is Completely Unnecessary Because TOYS Has Already Admitted the Information Sought.

TOYS has already admitted the following Requests for Admissions (in the First Set of Requests for Admissions served by Gregory Ellis, to which TOYS served responses on September 14, 2009):

- "You learned of the truncation requirements under FACTA before you were served by this suit."

- "You learned of the truncation requirements under FACTA before December 4, 2006."

- "You learned of the truncation requirements under FACTA before January 1, 2005."

Here, TOYS has admitted to having knowledge of the relevant law (FACTA's truncation requirements) at all relevant times.  If Plaintiffs contend that they need the requested documents to prove "willfulness" under FACTA (the only conceivable issue to which the documents could be relevant), the utility of the documents for such purpose is completely removed by TOYS' admission.  Going one step further, TOYS has also offered to stipulate that: (1) its employees did make purchases during the relevant time period; and (2) some of those purchases may have been officers with knowledge of FACTA.  In light of TOYS' admissions and offered stipulations, the burden that TOYS would have to undergo to even attempt to find the requested documents is completely outweighed by Plaintiffs' asserted need for the documents.

### PLAINTIFF ELLIS'S CONTENTIONS RE ELLIS RFP NO. 3.

**Toys should produce documents pursuant to Ellis RFP No. 3 immediately.**

### 1.     The Relevance Behind *Ellis* RFP No. 3.

Defendant acknowledges that RFP No. 3 is relevant to prove "willfulness" under FACTA.  Defendant merely argues that RFP No. 3 is not relevant to class certification.  Defendant is wrong.

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**

FINAL Joint Stipulation (TOYS_ Motion) (3)

Certain Toys' officers and employees were aware of FACTA's requirement in October 2006, but Defendant claims that it was unaware that it was violating FACTA (despite doing so, on paper, millions of times) until *December 27, 2006*, when it was served with the *Edwards* Plaintiffs' lawsuit. In moving unsuccessfully for summary judgment as to the "willfulness" issue, Defendant claimed that immediately upon "learning" (via service of the complaint) that it had been printing millions of receipts containing illegal information for months, it quickly began taking steps to "fix" the "glitch" and thereby comply with the law, resulting in its compliance by January 5, 2007.

Ellis RFP No. 3 goes directly to the central merits issue of willfulness – i.e., did Defendant knowingly or recklessly disregard FACTA's truncation requirement. Plaintiff contends that if officers of the company who were aware of the law in fact received credit or debit card receipts on which illegal information was visibly printed, in, e.g., early December 2006, and yet Defendant continued to go about its business without attempting to alter its illegal conduct until after it was served with the lawsuit, a jury might infer that Defendant knowingly or recklessly disregarded its obligations under FACTA.

### a.     Ellis RFP No. 3 is Relevant to Class Certification.

Even if the Court enters an order bifurcating discovery, RFP No. 3 is relevant to class certification because certain judges in this District have denied class certification in FACTA cases based in part on the defendants' submission of "evidence" that they immediately began rectifying their illegal conduct upon "learning" that they were violating the law. Some courts have found that such evidence supports denying class certification in FACTA cases.[42]

---

[42] *See*, e.g., *Soualian v. International Coffee & Tea, LLC*, Case No. CV 07-502-RGK (JCx), 2007 WL 4877902, *3 (C.D. Cal., June 11, 2007) ("Defendant's immediate action to comply with FACTA's requirements once becoming aware of this action also supports denial of class certification."). Notably, this case settled on a class basis while a Rule 23(f) appeal was pending.

Plaintiff disagrees with this merits-based "superiority" analysis, in that a defendant's belated effort to quickly stop violating the law after being sued for statutory damages is in any way relevant to a Rule 23 superiority analysis. However, until the Ninth Circuit rules on this issue, Plaintiffs must learn exactly when a Defendant knew it was violating FACTA prior to class certification. Ellis RFP No. 3 seeks to find out this information. Documents evidencing purchases made by Toys' employees, including officers, directors, management and law department for Toys' related items show that Toys knew of the their FACTA violation long before Toys received the *Edwards* Complaint. As a result, this would show that Toys did not "immediately act" to comply with FACTA's requirements avoiding any potential Rule 23 superiority arguments facing the Plaintiffs here.

### 2.   Ellis RFP No. 3 Is Not Overbroad.

Defendant contends that RFP No. 3 is overbroad because it seeks "every document related to every purchase made by every employee over a three-month period, three years ago, during the busiest time." This is not accurate. As Defendant points out, the parties have gone to great lengths to resolve all of their discovery concerns. During this process, Plaintiff's counsel assured Defendant's counsel that "all purchases" was limited to purchases made at Toys' various stores. As a result, Defendant's contention that RFP No. 3 seeks every purchase is not accurate. RFP No. 3 is then limited to a finite time period of just three-months and limited to a finite amount of people of Toys' employees. This type of document request is not overbroad.

### 3.   The Production Of Documents Pursuant To RFP No. 3 Is Not Burdensome.

Defendant talks in circles when making assertions that producing documents responsive to RFP No. 3 is unduly burdensome. Defendant stated that: (1) it has a database of names (first initial and last name) for each debit/credit card purchase

1  made at a Toys' store during the relevant time period; (2) it has a list of Toys'

2  employees during the relevant time period; (3) software technicians could cross

3  reference this information.  Without providing any specifics, Defendant then states

4  that "the entire process could require hundreds of man-hours and untold expense."

5  This bald assertion is improper.

6       Defendant has had RFP No. 3 for over 15-months and Defendant is still

7  speaking in vague and unacquainted terms.  All of the required information is

8  available in electronic databases.  During all of the above-mentioned meet and

9  confers, defense counsel has never been able to explain why this is a difficult

10 process, how long this process would take or how much this process would cost.

11 Instead, defense counsel resorts back to their "talking points" that there were many

12 employees and many transactions during the relevant time period and that Toys

13 would have to work with a third-party to find the information.  Defendant has

14 never explained exactly how the process would work, how much time would it

15 take or how much it would cost.

16       Moreover, it is understood that Toys' employees receive an "employee

17 discount" of some sort.  Plaintiff's counsel asked defense counsel if this "employee

18 discount" information can be searched, but defense counsel could never answer

19 that question.  It is difficult to understand that a large corporation such as Toys

20 would not keep track of how much money it cost itself to give its employees an

21 "employee discount."

22 **III.   PLAINTIFFS NICOLA EDWARDS' AND JAMES SCHLEY'S**

23 **REQUESTS FOR ADMISSIONS CONCERNING TOYS**

24 **EMPLOYEES' PURCHASES.**

25       **Request No. 38:**  "Admit that persons employed by TOYS
26       who knew of FACTA's truncation requirements before
         December 4, 2006 made debit or credit card purchases between
27       December 4, 2006 and December 27, 2006 that resulted in
         them being provided with RECEIPTS on which ten account
28       digits were visibly printed."

71

**TOYS' RESPONSE:**

"TOYS objects to this request because it is irrelevant.  Subject to this objection, TOYS responds that it does not have information sufficient to admit or deny this request, but is prepared to stipulate that its employees made purchase during the holiday season in the December 4, 2006 to December 27, 2006 time period."

**TOYS' FURTHER RESPONSE:**

"Subject to the objections set forth in the original response to this request, TOYS responds that it does not have information sufficient to admit or deny this request, but is prepared to stipulate that its employees made purchases during the holiday season in the December 4, 2006 to December 27, 2006 time period and some of these employees may have been officers and some of these employees may have been aware of FACTA's truncation requirements."

**Request No. 39:**  "Admit that officers of TOYS who knew of FACTA's truncation requirements before December 4, 2006 made debit or credit card purchases between December 4, 2006 and December 27, 2006 that resulted in them being provided with RECEIPTS on which ten account digits were visibly printed."

**TOYS' RESPONSE:**

"TOYS objects to this request because it is irrelevant.  Subject to this objection, TOYS responds that it does not have information sufficient to admit or deny this request, but is prepared to stipulate that its employees made purchases during the holiday season in the December 4, 2006 to December 27, 2006 time period and some of these employees may have been officers who were aware of FACTA's truncation requirements."

**TOYS' FURTHER RESPONSE:**

"Subject to the objections set forth in the original response to this request, TOYS responds that it does not have information sufficient to admit or deny this request, but is prepared to stipulate that its employees made purchase during the holiday season in the December 4, 2006 to December 27, 2006 time period and some of these employees may have been officers and some of these

72

employees may have been aware of FACTA's truncation requirements."

### 1. **These Requests Are Irrelevant to Class Certification.**

These requests for admission are irrelevant to any issues involved in the upcoming motions for class certification (and therefore contravene Judge Morrow's instructions that the parties focus on discovery necessary for class certification).

### 2. **TOYS Does Not Have Information to Admit or Deny These Requests, So a Protective Order is Necessary.**

This requests for admission are duplicative of the PMK Notice on the same topics. Accordingly, TOYS incorporates by this reference the discussion in section I(D), above. TOYS does not have information right now to respond definitively to these RFAs. That said, TOYS has offered to stipulate that its employees made purchases and they may have been officers or had knowledge of FACTA. This compromise is reasonable and TOYS should not be put to the burden of identifying which of the 16 million receipts were issued to employees and/or be forced to interview those employees to determine their knowledge of FACTA. A protective order should issue.

### *EDWARDS* PLAINTIFFS' CONTENTIONS REGARDING *EDWARDS* RFA NOS. 38 AND 39:

Toys' responses to RFA Nos. 38 and 39 are inadequate on their face, pursuant to FRCP 36(a)(4), as Toys does not state that it made a reasonable inquiry regarding the matters at issue before claiming it was unable to admit or deny. In fact, Toys has admitted it made no such reasonable inquiry. As such, Plaintiffs had every right to complain about them, and to demand that Toys provide amended responses or, since it would not, to demand that the requests be deemed admitted.

These RFAs are already the subject of a pending motion filed by the *Edwards* plaintiffs on January 20, 2010. It is unclear why Toys thinks it can, or

73

1    should, file its own motion for protective order now, regarding the same dispute.

2        Toys fails to explain why it waited, until *after* responding, and *after*

3    Plaintiffs began complaining about Toys' responses, to seek a "protective order."

4    It should have made the motion earlier (but didn't) or at least objected on burden

5    grounds (but didn't) if it thought that making a reasonable inquiry and responding

6    as required by Rule 36(a)(4) was simply too much for it to handle. *See, e.g.*, Cal.

7    Practice Guide: Federal Civil Procedure Before Trial, Calif. & 9th Cir. (The Rutter

8    Group) Chapter 11:1162 ("A motion for protective order ordinarily should be

9    noticed at the earliest possible time and certainly before the discovery procedure is

10   set to occur.")

11       Obviously, what is happening here is that Toys is unhappy that Plaintiffs

12   would not accept the equivocal "stipulation" it offered in lieu of responding

13   properly.   Toys is concerned that the requests – which it knows it would have to

14   admit if it made a reasonable inquiry – might prove very damaging.  So, it claims it

15   wants a "protective" order, but it does not say exactly what it wants, except that it

16   doesn't want to have to respond properly.  Even now, in its Joint Stipulation, Toys

17   does not state – let alone offer evidence – that it in fact made a reasonable inquiry.

18   It seemingly wants this Court to order that, despite the clear dictate of FRCP

19   36(a)(4), it was not required to make a reasonable inquiry before claiming it lacked

20   the information needed to admit or deny the requests.

21       Toys' boilerplate announcement that these requests seek information

22   irrelevant to class certification is just that – boilerplate, and unexplained.  It should

23   be disregarded for that reason alone. *See, e.g., Ramirez v. County of Los Angeles*,

24   231 F.R.D. 407, 409-410 (C.D. Cal. 2005).    Moreover, relevance to class

25   certification is not the standard, as previously discussed.

26       In addition, as discussed more fully in the *Edwards* Plaintiffs' own

27   previously-filed motion, these requests are relevant to class certification, in the

28   sense that certain judges in this District have denied class certification in FACTA

74

1    cases based in part on the defendants' submission of "evidence" (usually before

2    discovery commenced) that they immediately began rectifying their illegal conduct

3    upon "learning" that they were violating the law; i.e., upon being sued for violating

4    the law.   Some courts have found that such evidence supports denying class

5    certification in FACTA cases.

6         Plaintiffs vehemently disagree with this sort of novel, merits-based

7    "superiority" analysis, and vehemently disagree that a defendant's belated effort to

8    quickly stop violating the law after being sued for statutory damages is in any way

9    relevant to any proper Rule 23 superiority analysis regarding the question of

10   certifying a class seeking statutory damages based on earlier, allegedly willful

11   violations.   Unfortunately, notwithstanding Plaintiffs' disagreement, some (but not

12   all) courts in this District have in fact engaged in just this sort of "superiority"

13   analysis.   *See, e.g., Soualian, supra.*   As such, until this Court (or the Ninth Circuit)

14   agrees with Plaintiffs that such a "superiority" analysis is in fact incorrect, it cannot

15   be safely concluded that the facts underlying such "superiority" findings are

16   necessarily "irrelevant" to the propriety of certifying a class in this case.   The fact

17   that Plaintiffs are unwilling to concede that such arguments are in fact relevant to

18   any proper class certification analysis does not mean that mean that seeking

19   discovery related to the arguments underlying such  denials is "irrelevant."[43]

---

[43] For its part, Toys has indicated that, like other FACTA defendants, it will urge that "superiority" is lacking in part because it quickly rectified its illegal conduct upon "learning" that it had been printing millions of illegal receipts when it received the Complaint in this case. These requests plainly seek information bearing on the question of when Defendant in fact became aware of its noncompliance and, relatedly, whether it in fact began seeking to comply with FACTA immediately thereafter, as it claimed in seeking summary judgment and as it intends to argue in opposing class certification.

   Defendant's counsel suggested at the parties' January 4, 2010 "meeting of counsel" that even if its officers who knew of FACTA's truncation requirement did receive receipts that visibly violated FACTA long before Defendant took steps to stop violating the law, that would not mean Defendant acted willfully.  Perhaps so.  Perhaps not.  However, having failed to secure summary judgment, the inferences that may be drawn from such evidence are now within the province of the jury.  The question for now is whether the matters at issue meet the relevance standard at the discovery stage, so as to allow Plaintiffs to obtain evidence to allow the jury to draw its own conclusions.  They do.

Finally, Toys' argument that it "does not have information to admit these requests" is immaterial, and unsupported.   Despite repeated requests for substantiation of these claims, it has failed to provide any evidence that it cannot – and could not, when it responded – properly provide responses to these requests. If, in fact, it made a reasonable inquiry (and it still does not say it did) and, after doing so, did not have information to admit these requests, then it could have said so. But, instead, it effectively admits that it did not make a reasonable inquiry, and that it will not do so. Its proffered, equivocal stipulation is not, as an alternative to a proper response in conformity with FRCP 36(a)(4), is not, and has never been, acceptable to Plaintiffs.

Indeed, since officers, etc. who received receipts during the period in question fall within the class, and Toys now admits in its portion of the Joint Stipulation that it *can* in fact identify the class members (but doesn't want to do so until after class certification), the Court should flatly reject Toys claims that "protection" (after the fact) is required, and instead, deem the requests admitted based on Toys' continuing refusal to respond properly to them, as  requested by Plaintiffs in their own previously-filed motion.

Indeed, Toys is making up these claims of impossibility after responding, without burden objections, to RFA Nos. 38 and 39. See Toys' Amended Response to Edwards' Plaintiffs RFA No. 27 (part of Shelton Decl., Exh. A); See also Toys' amended response *admitting* Request No. 28, that it "could inquire by means of TOYS' company email system as to whether TOYS' store employees were aware in November and December 2006 that TOYS was printing excess account digits on RECEIPTS during November and December 2006, " and Toys' response to RFA No. 29, *admitting* that it could inquire of its home-office personnel "as to whether they were aware in November and December 2006 that TOYS was printing excess account digits" on receipts during that period. *Id.*

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.  A PROTECTIVE ORDER IS NECESSARY TO PREVENT THE DEPOSITION OF TOYS' IN-HOUSE COUNSEL.

Plaintiffs noticed the deposition of Joel Tennenberg on January 13, 2010.[44] A protective order is necessary, because Mr. Tennenberg's testimony is irrelevant to class certification issues, and would provide no meaningful information to Plaintiffs in any event because of attorney-client and work product issues.

## PLAINTIFFS' POSITIONS REGARDING THE DEPOSITION OF JOEL TENNENBERG:

Toys devotes 4 lines of text at the end of its Joint Stipulation to arguing that it should be able to preclude Plaintiffs from deposing Joel Tennenberg. Toys does not claim that it adhered to the process required by LR 37, and by FRCP 26(c), before seeking a protective order to preclude his deposition, because it did not. For that reason alone, its motion – which is untimely in any event, because his deposition was already set to occur, but Toys simply refused to show up – should be denied.

As noted, Mr. Tennenberg refused to show up for his properly-noticed deposition, set to take place in New Jersey on January 27, 2010. Moore Decl., ¶ 11, Exh. 11. This, in itself, is improper, according to the Ninth Circuit's *Pioche Mines* decision, 333 F.2d at 269.

Now, having flatly violated Ninth Circuit law by refusing to show up, and despite its heavy burden to preclude a deposition, Toys declares in conclusory fashion that his testimony "is irrelevant to class certification issues." Such boilerplate pronouncements of irrelevance do not justify a protective order. Mr. Tennenberg's testimony is relevant because Toys has repeatedly identified him in sworn discovery responses as a fact witness with knowledge of facts. *See, e.g.*, Toys' Response to Edwards Interrogatory No. 4 (Moore Decl., Exh. 2) (identifying Tennenberg as the person *responsible for oversight of FACTA compliance*). Toys'

---

[44] *See* Notice of Joel Tennenberg attached as Exh. N.

77

alleged compliance practices plainly are relevant to the merits *and* class certification, since Plaintiffs must demonstrate, based on Toys' practices, that predominating common issues exist in their quest to prove Toys acted willfully with respect to all class members on a class-wide basis.   In addition, Mr. Tennenberg can testify about other relevant matters, such as the newsletters he received, and whether he himself made purchases that resulted in him receiving visibly illegal receipts in the period before Toys was sued.

Toys' bald assertion that he would provide "no meaningful information" because of unidentified "attorney-client and work product issues" is worthless as a basis for ordering that he cannot be deposed at all, given Toys' sworn assertions that he possesses knowledge of relevant facts.   Indeed, given its identification of him as a witness, its assertions of privilege may be waived but, in any event, can be stated at his deposition.   There is no general rule forbidding the deposition of witnesses with knowledge of relevant facts simply because they may be attorneys. *See, e.g.,* The Rutter Group, Federal Civil Proc. Before Trial, *supra*, Chapter 11:1144-1149 (noting that attorneys can be deposed where the client has put their knowledge at issue, and where the attorneys are fact witnesses to unprivileged information).

Toys has failed, with its four lines of "contentions" to demonstrate good cause exists to issue a protective order precluding Mr. Tennenberg's deposition, particularly since it did not even comply with LR 37-1 before including the subject of his deposition in its portion of the Joint Stipulation.   The fact that it simply refused to produce him for a deposition, despite being advised of *Pioche Mines*, is inexcusable and sanctionable.

### PLAINTIFFS' CONCLUSION:

Toys' Motion for Protective Order is entirely without merit.   Plaintiffs do not believe anyone could reasonably have believed it would succeed.   Counsel for *Edwards* alone has devoted more than 18 hours to analyzing and opposing this

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

motion, and Plaintiffs request that Toys and their counsel be ordered to pay the *Edwards* Plaintiffs $9,000.00, as a *conservative* estimate of the costs incurred in defeating this baseless motion.  See Moore Decl., paragraph 20.


**IT IS SO STIPULATED**:


DATED: January 27, 2010.                        Respectfully submitted,

                                                TOYS "R" Us-Delaware, Inc.

                              By:      _____/s/_____

                                       WILDMAN, HARROLD, ALLEN &
                                       DIXON LLP
                                       Michael Dockterman
                                       (dockterman@wildman.com)
                                       225 West Wacker Drive, Suite 2800
                                       Chicago, IL 60606-1229
                                       Telephone:  (312) 201-2000
                                       Facsimile:   (312) 201-2555

                                       Dominique R. Shelton
                                       (dshelton@wildman.com)
                                       Clinton J. McCord
                                       (mccord@wildman.com)
                                       9665 Wilshire Boulevard, Suite 200
                                       Los Angeles, CA  90212
                                       Telephone:  (310) 860-8700
                                       Facsimile.:   (310) 860-3800

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**
FINAL Joint Stipulation (TOYS_ Motion) (3)

DATED:  January 27, 2010.                     Respectfully submitted,
                                              NICOLA  EDWARDS  AND  JAMES
                                              SCHLEY


                                  By:    _____/s/_____
                                         SPIRO MOSS LLP
                                         J. Mark Moore
                                         11377 Olympic Bld., 5th Flr.
                                         Los Angeles, CA 90064
                                         Telephone:  (310) 235-2468
                                         Facsimile:   (310) 2352-2465


DATED:  January 27, 2010.                     Respectfully submitted,

                                              GREGORY ELLIS

                                  By:    _____/s/_____
                                         ANDERSON + WANCA
                                         Brian Wanca
                                         Jonathan E. Irwin
                                         3701 Algonquin Rd, Suite 760
                                         Rolling Meadows, IL 6008

**JOINT STIPULATION REGARDING TOYS' MOTION FOR PROTECTIVE ORDER**

FINAL Joint Stipulation (TOYS_ Motion) (3)