1

2   Brian J. Wanca (bwanca@andersonwanca.com)

3   Jonathan E. Irwin (jirwin@andersonwanca.com)
    **Anderson + Wanca**

4   3701 Algonquin Road, Suite 760
    Rolling Meadows, IL  60008

5   Telephone:  847-368-1500; Fax:  847-368-1501

6

7   Richard J. Doherty (rich@bockhatchllc.com)
    James M. Smith (jim@bockhatchllc.com)

8   **Bock & Hatch, LLC**

9   134 N. LaSalle Street, Suite 1000
    Chicago, IL  60602

10  Telephone:  312-368-5500; Fax:  312-658-5555

11

12  Attorneys for Plaintiff Gregory J. Ellis

13              **UNITED STATES DISTRICT COURT**

14              **CENTRAL DISTRICT OF CALIFORNIA**

15

16

17                                      | MDL No. CV 08-01980 MMM
                                          (FMOx)

18                                        No. CV 06-08163 MMM (FMOx)

19  **IN RE: TOYS 'R' US -**              No. CV 08-06645 MMM (FMOx)
    **DELAWARE, INC. – FAIR AND**

20  **ACCURATE CREDIT**                   **PLAINTIFF'S REPLY TO**
    **TRANSACTIONS ACT (FACTA)**          **TOYS "R" US' OPPOSITION**

21  **LITIGATION**                        **TO GREGORY J. ELLIS'**
                                          **MOTION FOR CLASS**

22                                        **CERTIFICATION**

23

24                                        Date:  May 24, 2010

25                                        Time: 10:00 a.m.
                                          Judge: Hon Margaret M. Morrow

26                                        Ctrm: 780

27  PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
    CERTIFICATION

28  Case No. MDL No. CV 08-01980 MMM (FMOx)
    Case No. CV 06-08163 MMM (FMOx)
    Case No. CV08-06645 MMM (FMOx)

# TABLE OF CONTENTS

I.   INTRODUCTION.................................................................................- 1 -

II.  ARGUMENT…........................................................................................- 2 -

    A.   This Court Should Apply the Law of the Transferor Jurisdiction....................- 2 -

        1. Class Certification is Not a Pretrial Proceeding for §1407 Purposes........- 3 -

        2. The Law of the Transferor Court is Entitled to Consideration Where

           No Binding Precedent Governs Multidistrict Litigation of a Class Action

           …......................................................................................- 6 -

           a. A Transferee Court's Consideration of the Law of Transferor States

             and Circuits is Supported by Precedent.................................- 6 -

           b. This Court is Not Bound by a Majority of Ninth Circuit District

             Courts.......................................................................- 8 -

           c. The Law of the Transferee Forum Does Not Govern a Class Action...- 8 -

    B.   Class Treatment is Superior Under Rule 23(b)(3) Due to the Nature of Toys'

       Violations and is Consistent with Remedies Prescribed By FACTA ............. - 9 -

        1. Plaintiff Has Met its Burden Under Rule 23(b)(3) in Supporting its

           Motion for Class Certification with Specific Facts .............................. - 10 -

        2. Proportionality of Expected Damages is Immaterial to Class Certification.

           .........................................................................- 11 -

        3. FACTA Liability is Unrelated to "Actual Injury"................................- 16 -

           a. Toys Pleads a Non-Existent Liability Standard...............................- 16 -

           b. Toys' "Expert" on "Actual Injury" Lacks Credibility.....................- 17 -

           c. FACTA Violations Create a Risk of Actual Harm..........................- 19 -

        4. Class Treatment is Superior to Individual Litigation............................- 20 -

    C.   The Named Plaintiff Has Established That He is an Adequate Class

Representative..................................................................- 21 -

1.  No Conflict Exists...............................................- 22 -

a.  Plaintiff Ellis and Attorney Brian Wanca are "Acquaintances" That Have Not Worked in the Same Field for 20 Years.......................- 22 -

b.  Plaintiff Ellis' Testimony Clearly Indicates That His Interests Lie with the Class Members........................................................- 23 -

III.  CONCLUSION.....................................................................- 25 -

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

ii

# TABLE OF AUTHORITIES

**CASES**

*Amchem Products, Inc. v. Windsor*, 457 U.S. 147 (1982) .................................- 3, 4, 8, 9 -

*Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F.Supp.2d 965, (C.D.Cal. 2007)................................................................................................ .- 16, 17 -

*Beringer v. Standard Parking Corp.*, No. 07 C 5027, 07 C 5119, 2008 WL 4390626 (N.D.Ill. Sept. 24, 2008).........................................................................- 3 -

*BMW v. Gore*, 517 U.S. 559 (1996) ................................................................. ..- 15, 16 -

*Cicilline v. Jewel Food Stores, Inc.*, 542 F.Supp.2d 831 (N.D. Ill. 2008).....................- 3 -

*Dukes v. Wal-Mart Stores*, __ F.3d. __ No. 04-1668 (9th Cir. April 26, 2010)......- 11, 13

*Halperin v. Interpark Inc.*, No. 07 C 2161, 2007 WL 4219419 (N.D.Ill. Nov. 29, 2007) .............................................................................................................- 3 -

*Harris v. Best Buy Co., Inc.*, 254 F.R.D. 82 (N.D. Ill. 2008)........................................- 3 -

*Harris v. Circuit City Stores, Inc.*, No. 07 C 2512, 2008 WL 400862 (N.D.Ill. Feb. 7, 2008) ..........................................................................................................- 3 -

*Hoffman v. Citibank (South Dakota), N.A.*, 546 F.3d 1078 (9th Cir. 2008)....................- 7

*In re Air Crash Disaster at Boston, Mass. On July 31, 1973*, 399 F.Supp. 1106 (D.Mass. 1975)........................................................................................................ - 6 -

*In re Continental Illinois Securities Litigation*, 962 F.2d 566 (7th Cir. 1992).......- 23, 24 -

*In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d 1171 ................. - 3, 8, 9 -

*In re Methyl Tertiary Butyl Ether ("MTBE") Products Liab. Litig.*, 241 F.R.D. 435 (S.D.N.Y. 2007) ......................................................................................... - 3, 4, 6 -

*In re MTBE Prods. Liab. Litig.*, No. 1:00-1898, 2005 WL 106936 (S.D.N.Y. Jan. 18, 2005)........................................................................................................ - 5 -

*In re Plumbing Fixture Cases*, 298 F. Supp. 484 (J.P.M.L. 1968)...........................- 5 -

*Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324 (N.D.Ill. 1993) ........................... - 23 -

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

iii

*Jiminez v. Sambrano*, No. 04-cv-1833 L (PCL), 2009 WL 653877

  (S.D.Cal. March 12, 2009)...........................................................-17-

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)............................- 6 -

*Kline v. Caldwell, Banker, & Co.*, 508 F.2d 226 (9th Cir. 1974)........................- *passim* -

*Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) .... - 3, 8, 9 -

*Matthews v. United Retail, Inc.*, 248 F.R.D. 210 (N.D.Ill. 2008)...................- 3 -

*Meehan v. Buffalo Wild Wings, Inc.*, 249 F.R.D. 284 (N.D. Ill. 2008)..........................- 3 -

*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006)......................- *passim* -

*Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148 (1992).......................- 7 -

*Newton v. Thomason*, 22 F.3d 1455 (9th Cir. 1994)....................................- 8 -

*Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290 (N.D.Ill. 2008) .............. - 3, 23 -

*Reiter  v. Sonotone Corp.*, 442 U.S. 330 (1979) ...................................- 13 -

*Shady Grove v. Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, No. 08-1008, 2010 WL

  1222272 (U.S. 2010)...........................................................- 4, 14 -

*Susman v. Lincoln American Corp.*, 561 F.2d 86 (7th Cir. 1977) ...............................- 23 -

*Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001)............................- 11 -

*Tchoboian v. Parking Concepts, Inc.*, No. SACV 9-422, JVS (ANx), 2009 WL 2169883

  (C.D. Cal. July 16, 2009) ...............................................................- *passim* -

*Troy v. Red Lantern Inn, Inc.*, No. 07 C 2418, 2007 WL 4293014 (N.D.Ill. Dec. 4,

  2007).............................................................................- 3 -

*White v. E-Loan, Inc.*, 2006 WL 2411240 (N.D.Cal. 2006) ......................................- 13 -

**STATUTES**

28 U.S.C. §1407..............................................................................- *passim* -

15 U.S.C. § 1681.............................................................- 1, 13, 16, 17 -

Pub.L. 110-241, §2, 122 Stat. 1565 (June 3, 2008) ..............................................- 10, 14 -

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

iv

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(4) ............................................................................ - 18 -

Fed. R. Civ. P. 23(b)(3) ..........................................................................- *passim* -

Manual for Complex Litigation § 20.132 at 245 (4th ed. 2004) .................................... - 6 -

Restatement Second of the Conflict of Laws, §187(2) (1971) ................................. - 6, 7 -

George W. Bush, Remarks on Signing the Fair and Accurate Credit Transactions Act of

2003, December 4, 2003 ............................................................................- 18 -

1

## I.  __INTRODUCTION__

2   The prospective classes, represented by Plaintiff Gregory J. Ellis ("Plaintiff" or

3   "Ellis") should be certified in light of violations of the Fair Credit Reporting Act

4   ("FCRA"), specifically the "Fair and Accurate Transactions Act of 2003," 15 U.S.C.

5   §1681 et seq. ("FACTA") by Defendant Toys "R" Us' ("Toys" or "Defendant").

6   Plaintiff previously set forth the specific reasons why class certification is warranted in

7   his Memorandum of Points and Authorities in support of his Motion for Class

8   Certification. (Doc. 43) ("Mem.").  Subsequently, Toys submitted its Opposition to

9   Plaintiff's Motion for Class Certification (Doc. 54) ("Def. Opp."), to which Plaintiff now

10  replies.

11   Toys' Opposition brief concedes that the numerosity, commonality and typicality

12  prongs of Federal Rule of Civil Procedure Rule 23 have been met.  Toys also does not

13  dispute the adequacy of class counsel.  Instead, Toys focuses on its contention that this

14  Court should ignore Seventh Circuit precedent and instead, in the face of no Ninth Circuit

15  precedent and a split within the Courts in this District, apply the rationale from those

16  decisions most favorable to Toys.  In doing so, Toys relies upon the so-called

17  "annihilating damages" theory which has barred certification in certain cases.  Toys also

18  contends that it, and not Plaintiff, is the aggrieved party here because Plaintiff has not

19  alleged or suffered a "risk of harm".  Finally, Toys attacks Plaintiff himself, conjuring

20  spurious conflicts of interest in an attempt to prevent certification.

21   Toys' arguments are unsound in both theory and practice.  Where an Illinois

22  Plaintiff brings claims against a New Jersey Defendant, it would be inequitable to apply

23  California law to those claims.  This is particularly true where, as here, there is binding

24  7th Circuit law on the issues presented in this case, as contrasted with a lack of Ninth

25  Circuit precedent and a split within the District Courts in California.  Plaintiff Ellis'

26  claims will ultimately be determined according to Seventh Circuit law; sidestepping that

27

28

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 1 -

law now frustrates the economies sought through pulling Ellis into an MDL proceeding. Once the issue of the application of Seventh Circuit law is settled, Toys' arguments are a re-hashing of what has been argued and remains un-decided in the Ninth Circuit: whether the potential for statutory damages determines that a class action is not superior here.  In this, Ellis contends that the views of Toys (and its supposed "expert") ignore the clear language of FACTA and the intent of Congress; no "actual harm" is required and a risk of harm is presented by violation of the truncation requirement, which risk is recognized in the application of statutory damages.  Finally, Toys' assertion that Ellis is an inadequate Plaintiff is absurd.  Mr. Ellis has already amply demonstrated the zeal required of a class representative and no conflict of interest is present here.

The requirements of Rule 23 have been met and this Court should certify the proposed classes.

## II.   ARGUMENT

### A.   THIS COURT SHOULD APPLY THE LAW OF THE TRANSFEROR JURISDICTION.

As conceded by the main thrust of Toys' brief, a virtually dispositive issue with respect to Ellis' class certification motion is which law this Court will apply to Ellis' class certification motion.  Toys asks the Court to apply the position of certain Ninth Circuit District Courts which have denied class certification in FACTA cases based on the rationale that the potential damages were disproportionate to the injury sustained.  *See, e.g., Bateman v. American Multi-Cinema, Inc.*, 252 F.R.D. 647, 652 (C.D. Cal. 2008). Plaintiff argues that there is no Ninth Circuit "precedent" for this Court to follow; by contrast, the Northern District of Illinois (where this case was originally filed) is bound by precedent mandating that class certification is not the appropriate time for the court to consider the impact of a FACTA plaintiff's possible recovery.  *Murray v. GMAC*

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 2 -

1  *Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).[1]

2       The Seventh Circuit law of class certification should govern the issue of class

3  certification for Plaintiff Ellis because the law of the **transferor court** applies to [a]

4  motion for class certification under Rule 23." *In re Methyl Tertiary Butyl Ether*

5  *("MTBE") Prods. Liab. Litig.*, 241 F.R.D. 435, 439 (S.D.N.Y. 2007)(emphasis added).

6  While the law of the transferee court is binding insofar as consolidated, pre-trial matters

7  are concerned (*See, e.g., In re Korean Air Lines Disaster of September 1, 1983*, 829 F.2d

8  1171, 1175 (D.D.C. 1987)) class certification will affect the merits of a case at trial.  *See*

9  *Amchem Products, Inc. v. Windsor*, 457 U.S. 147, 160 (1982).  As such, it is litigated not

10  only at the class certification stage, but also *after* the case's mandatory remand to its

11  original court, whether at trial or on appeal.  *Lexecon, Inc. v. Milberg Weiss Bershad*

12  *Hynes & Lerach*, 523 U.S. 26, 34 (1998).  Given that Ellis' claims will ultimately be

13  decided pursuant to Seventh Circuit law, it makes little sense to forego application of that

14  law here, particularly in the absence of any contrary, binding Ninth Circuit precedent.

15  Finally, Illinois has a superior interest in this action when considered using California's

16  choice of law test.  Class certification in the present action should be analyzed according

17  to Seventh Circuit law, and granted.

**1.    Class Certification is Not a Pretrial Proceeding for §1407**
19                **Purposes.**

20       Toys asserts that "the federal courts are in <u>unanimous agreement</u> that when a case

---

[1] Following *Murray*, courts within the Northern District of Illinois (the transferor court here) have certified at least nine classes involving FACTA statutory damage claims.  *See Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290 (N.D.Ill. 2008) and *Matthews v. United Retail, Inc.*, 248 F.R.D. 210 (N.D.Ill. 2008); *Meehan v. Buffalo Wild Wings, Inc.*, 249 F.R.D. 284 (N.D. Ill. 2008); *Cicilline v. Jewel Food Stores, Inc.*, 542 F.Supp.2d 831 (N.D. Ill. 2008); *Harris v. Best Buy Co., Inc.*, 254 F.R.D. 82 (N.D. Ill. 2008) (St. Eve, J.); *Troy v. Red Lantern Inn, Inc.*, 07 C 2418, 2007 WL 4293014 (N.D.Ill. Dec. 4, 2007); *Halperin v. Interpark Inc.*, No. 07 C 2161, 2007 WL 4219419 (N.D.Ill. Nov. 29, 2007); *Beringer v. Standard Parking Corp.*, Nos. 07 C 5027, 07 C 5119, 2008 WL 4390626 (N.D.Ill. Sept. 24, 2008); *Harris v. Circuit City Stores, Inc.*, 07 C 2512, 2008 WL 400862 at *6 (N.D.Ill. Feb. 7, 2008).

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 3 -

is transferred under 28 U.S.C. §1404 or 28 U.S.C. §1407 (as this case was), the law of the <u>transferee</u> circuit controls on all questions of <u>federal law</u>." (Def. Opp. at 2) (emphasis in original).  This is not true.  In *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 241 F.R.D. 435 (S.D.N.Y. 2007), the Southern District of New York held that "the law of the **transferor court** applies to [a] motion for class certification under Rule 23." *Id.* at 439 (emphasis added).

*MTBE* involved a class action transferred from the Northern District of Illinois to the Southern District of New York pursuant to §1407, which states: "When civil actions involving one or more questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. §1407.  The court rejected the notion that class certification is a pretrial issue governable by the law of the transferee court, instead holding that "'the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Id.* at 439-440, *quoting Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469 (1978).  This view finds further support in the Supreme Court's pronouncement "that when certifying a class action under Rule 23, the requirements of Rule 23(b)(3) must always be satisfied *for purposes of the trial* regardless of whether a jury will consider the case . . . ." *Id.* at 440, *citing Amchem Products, Inc. v. Windsor*, 457 U.S. 147, 160 (1982) (emphasis in original).

Class certification is obviously not strictly a "pretrial proceeding"; a decision to deny or grant class certification will greatly impact the merits of a case after it is remanded to the transferor Court and may be taken up on appeal.  It therefore makes little sense to avoid the outcome-determinative law of the Seventh Circuit here. *Murray*, 434 F.3d at 953.[2] Rather, any concerns about potentially excessive or unconstitutional

---

[2] *Murray*'s holding is bolstered by the recent Supreme Court decision in *Shady Grove v. Orthopedic Assocs., P.A. v. Allstate Ins. Co.*: "Rule 23 unambiguously authorizes any plaintiff, in any federal civil

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 4 -

1    statutory damages should be addressed at a later date.  *Id.*

2          Ironically, Toys' position on the superiority prong of Rule 23 - that class

3    certification is more than a pretrial issue and the merits of a plaintiff's claims must be

4    considered - is in complete agreement with Ellis' position on the choice of law issue.

5    Toys simultaneously asserts that class certification is: 1) purely "pre-trial" and unrelated

6    to the merits for purposes of this Court's choice of law analysis, yet; 2) outcome

7    determinative and dependent upon the merits with respect to the Court's superiority

8    analysis.  Toys cannot have it both ways.  If this Court is to consider the merits of the

9    Plaintiffs' claims at this stage, it only makes sense to consider the 7th Circuit precedent

10   binding upon Plaintiff Ellis.

11         Should this Court choose to ignore Seventh Circuit law and deny class

12   certification, reversal on remand would be certain.  The Seventh Circuit, controlled as it

13   is by *Murray*, is not bound by several Ninth Circuit District Courts' interpretations of

14   Rule 23.  It is therefore unclear what purpose would be served by ignoring *Murray* here;

15   certainly not "the just and efficient resolution of the proceedings.  *In re Plumbing Fixture*

16   *Cases*, 484, 491-492 (J.P.M.L. 1968).  At a minimum, the aims of §1407 would be

17   contravened should the transfer of this matter result in the very outcome that it was

18   designed to prevent, *i.e.*, "delay, confusion, conflict, inordinate expense, and

19   inefficiency." *In re MTBE Prods. Liab. Litig.*, Case No. 1:00-1898, 2005 WL 106936, at

20   *5 (S.D.N.Y. Jan. 18, 2005).  The Court should apply the law of the transferor circuit to

21   the instant case.

25   proceeding, to maintain a class action if the Rule's prerequisites are met." No. 08-1008, 2010 WL
26   1222272, at *7 (U.S. 2010).  Concerns over the effect of potential damages present an extraneous
     concern that extends beyond the purview of Rule 23's "Superiority" prong; procedural and not
27   substantive fairness controls.
     PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS     - 5 -
     CERTIFICATION
28   Case No. MDL No. CV 08-01980 MMM (FMOx)
     Case No. CV 06-08163 MMM (FMOx)
     Case No. CV08-06645 MMM (FMOx)

      **2.   The Law of the Transferor Court is Entitled to Consideration Where No Binding Precedent Governs Multidistrict Litigation of a Class Action.**

          **a.   A Transferee Court's Consideration of the Law of Transferor States and Circuits is Supported by Precedent.**

Toys is unpersuasive in insisting that this Court only entertain the views of other Ninth Circuit District Courts. "Where a claim or defense arises under federal law . . . the transferee judge should consider whether to apply the law of the transferee circuit or that of the transferor court's circuit . . . ." *MTBE*, 241 F.R.D. at 440, *citing* Manual for Complex Litigation §20.132 at 245 (4th ed. 2004). Moreover, "it is within the very nature of coordinated or consolidated pretrial proceedings in multidistrict litigation for the transferee judge to be called upon to apply the law of more than one state." *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975*, 407 F.Supp. 244, 246-247 (J.P.M.L. 1976). Toys focuses on the term "state" to contend that the above proposition has no bearing here. (Def. Opp. at 3.) Yet Toys provides no reason that the *Kennedy* requirement for *interstate* cases does not logically extend to inter-*circuit* cases.[3] As noted in *In re Live Concert Antitrust Litigation*, "the Court will give the precedent of transferor circuits close consideration." 247 F.R.D. 88, 104-105 (C.D.Cal. 2007). The best framework through which to give such consideration effect is California's choice of law test, which, if applied at the federal level, would take account of both the transferor and transferee forums.[4]

California's choice of law test is derived from the Restatement (Second) of the

---

[3] Indeed, the court in *In re Air Crash Disaster at Boston, Mass. On July 31, 1973*, 399 F.Supp. 1106, 1108 (D.Mass. 1975) drew this connection in stating that "a United States District Court to which an action is transferred pursuant to 28 U.S.C.A. §1407 must apply the substantive law of the transferor *state and circuit*." (emphasis added).

[4] Recourse to state choice-of-law prescriptions is already the settled practice in diversity cases. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941).

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 6 -

Conflict of Laws §187(2) (1971).  In *Hoffman v. Citibank (South Dakota), N.A.*, the Ninth Circuit Court of Appeals summarized the prevailing approach:

> The California Supreme Court has held that under California's choice of law analysis, a court must determine as a threshold matter "whether the chosen state has a substantial relationship to the parties or their transaction, or … whether there is any other reasonable basis for the parties' choice of law." [*Hoffman v. Citibank (South Dakota), N.A.*, 546 F.3d 1078, 1082 (9th Cir. 2008), *citing Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1151 (1992)].

"If either of these tests is satisfied, the second inquiry is whether the 'chosen state's law is contrary to a fundamental policy of California." *Id.*  In the event that "there is a fundamental conflict with California law, then the choice of law analysis would turn to whether California has a materially greater interest . . . in the outcome of the case." *Id.* at 1085 FN5.

This case has a substantial relationship with Illinois and the Seventh Circuit. Plaintiff is an Illinois consumer, the *situs* of the underlying conduct at issue is Illinois, and Illinois has a clear interest in protecting its consumers.  The District Court in which Plaintiff filed this action is bound by precedent (*Murray*) forbidding denial of class certification based on potential damages.  Ultimately, this case will be decided on the merits in the Seventh Circuit.  By contrast, the Ninth Circuit has no relationship to Plaintiff or the incident underlying this matter.  Similarly, Toys is a New Jersey resident with no connection to this forum.  The instant case has been transferred to this Court for the sole purpose of "coordinated or consolidated pretrial proceedings." 28 U.S.C. §1407. Toys offers no means of accounting for this disparity.  Application of California's Choice of Law test is warranted because it would remediate these concerns.

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 7 -

1  **b. This Court is Not Bound by a Majority of Ninth Circuit**

2  **District Courts.**

3      The position advocated by Toys is not Ninth Circuit precedent binding on this

4  Court.  This is fatal to Toys' invocation of *Newton v. Thomason*, which holds that "when

5  reviewing federal claims, a transferee court in this circuit is bound by our circuit's

6  precedent." 22 F.3d 1455, 1460 (9th Cir. 1994); (Def. Opp. at 3).  While other FACTA

7  cases in this district have been denied certification on purported "superiority" grounds,

8  *Tchoboian* demonstrates the non-unanimity of this result.  Furthermore, *Bateman*, which

9  exemplifies the majority position on this issue, is presently before the Ninth Circuit Court

10 of Appeals. (Def. Opp. at 6).  Toys contends that the view of *most* Ninth Circuit District

11 Courts, which is not binding precedent, applies here.  *Newton*'s requirement that circuit

12 precedent be followed is inapplicable to the instant case because no such precedent exists.

13     **c. The Law of the Transferee Forum Does Not Govern a Class**

14     **Action.**

15     The cases cited by Toys favoring the transferee forum's law in §1407 cases are

16 inapposite because they fail to account for circumstances unique to a class action.  *In re*

17 *Live Concert Antitrust Litigation*, in particular, endorses the proposition that a transferee

18 court's class certification determination should bind the transferor/trial court.  247 F.R.D.

19 98, 105 (C.D.Cal. 2007).  Yet the court did not address the inherent conflict between that

20 position and the exclusively pretrial scope of §1407 transferee courts.  *See Lexecon*, 523

21 U.S. at 34.  Class certification is an issue relevant to adjudication on the merits.  *Amchem*,

22 457 U.S. at 160.

23     *Live Concert* itself relies heavily on *Korean Air Lines*, which did not involve a

24 class action.  In *Korean Air Lines*, the court characterized § 1407 as "a statute authorizing

25 transfers only for pretrial purposes." *Id.* at 1174.  The court also made clear its view that

26 uniformly applying the law of the transferee court would maximize "the efficiencies

27
28

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 8 -

1  achievable through consolidated *preparatory* proceedings." *Id.* at 1175 (emphasis added).

2  Therefore, the scope of *Korean Air Lines* is limited to *pretrial* issues only.  However,

3  *Amchem* instructs that class certification is *not* a pretrial issue.  The decision in *Live*

4  *Concert* omits this crucial distinction, which excludes class certification from the

5  category of pretrial issues governed by the transferee court's law.

6       Because *Lexecon* requires that multidistrict litigation cases be remanded to their

7  original courts for trial purposes, the Seventh Circuit's application of *Murray* to class

8  certification is inevitable.  A denial of class certification pursuant to Ninth Circuit District

9  Court practice will be overturned by the Seventh Circuit at a substantial cost of time and

10  resources.  Accordingly, this Court should reject Toys' arguments and apply Seventh

11  Circuit precedent based on both the guidance provided by case law and basic judicial

12  economy concerns.

13      **B.**    **CLASS TREATMENT IS SUPERIOR UNDER RULE 23(b)(3) DUE**

14                   **TO THE NATURE OF TOYS' VIOLATIONS AND IS CONSISTENT**

15                   **WITH REMEDIES PRESCRIBED BY FACTA.[5]**

16      Toys incorrectly asserts that Plaintiff has not satisfied the "superiority" prong of

17  Rule 23(b)(3).  (Def. Opp. at 4).  In fact, Plaintiff has demonstrated the existence of

18  common questions of law and fact with respect to the entire class, all of whom have

19  suffered FACTA violations resulting from Toys' practices.  Toys cites inapplicable case

20  law to argue that the potential size of the maximum award possible in this matter defeats

21  class superiority. (Def. Opp. at 5).  In effect, Toys contends that the massive scope of its

22  FACTA violation should exempt it from liability.  Toys' concern over the size of a

23  possible adverse judgment is belied by its well-documented non-cooperation in

24  settlement and mediation.  Toys implication that the maximum potential recovery would

---

[5] The below analysis is only relevant in the event that this Court declines to decide Plaintiff's class
certification claims under Seventh Circuit law.

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 9 -

1   violate its due process rights is unsupported by law.  Contrary to Toys' view, FACTA

2   does not require a plaintiff to establish actual damages.  Therefore, the testimony

3   proffered by Toys' "privacy expert," Mari Frank, is irrelevant, particularly when Frank's

4   own conflicts of interest and lack of credibility are considered.  Finally, Toys' suggestion

5   that individual lawsuits present viable alternative to class actions where FACTA

6   violations have been alleged has no basis in fact or law.

7       **1.  Plaintiff Has Met its Burden Under Rule 23(b)(3) in Supporting its**

8       **Motion for Class Certification with Specific Facts.**

9       The proposed class definition comports with Rule 23(b)(3)'s requirement because

10  Plaintiff has shown that "questions of law or fact common to the members of the class

11  predominate over any questions affecting only individual members, and that a class

12  action is superior to other available methods for the fair and efficient adjudication of the

13  controversy."  Fed. R. Civ. P. 23(b)(3).

14      As to the first part of the test, Plaintiff has shown Toys' violation of FACTA in

15  regard to each of them. (Mem. at 13).  "Class members share the significant common

16  questions of law as to whether [Defendant] violated FACTA and whether such

17  noncompliance was willful." *Tchoboian*, 2009 WL 2169883, at *7.  Common questions

18  of fact include whether Toys printed sales or transaction receipts in violation of FACTA

19  and when Toys put its machines or hard drives in service.  (Mem. at 14).  These

20  collective issues affecting the Class and subclasses are predominant in this action.  Toys'

21  suggestion that Plaintiff's motion for class certification amounts to "[s]imply repeating

22  the language of the Rule" is patently false.  (Def. Opp. at 4).  Interestingly, Toys provides

23  no factual support for its argument that Plaintiff has not reached the evidentiary floor for

24  Rule 23 purposes.  Toys demands specific proof that Plaintiff (1) obtained a "receipt" as

25  defined by statute, and (2) was acting as a "consumer" under the statute (Def. Opp. at 22),

26  even though Plaintiff attested to both of these facts in his deposition.  *See* Deposition of

27
    PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
28  CERTIFICATION
    Case No. MDL No. CV 08-01980 MMM (FMOx)
    Case No. CV 06-08163 MMM (FMOx)
    Case No. CV08-06645 MMM (FMOx)

- 10 -

1   Gregory J. Ellis, February 1, 2010, pp. 27:14-24, 28:1-9; Declaration of Gregory J. Ellis,

2   April 23, 2010, ¶¶ 2-3.  (Exhibit A).

3          Toys encourages the Court to "look beneath the surface of a complaint to conduct

4   the inquiries identified in [Rule 23] and exercise the discretion it confers."  *Szabo v.*

5   *Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001).  However, Toys leaves out

6   the corollary requirement that courts not address any issue pertaining to the merits of the

7   case.  *Id.*  The possible risk of Toys' loss on the merits represents an even more remote

8   concern that has no place in the Court's class certification analysis.  Indeed, "[t]he

9   predominance test turns on the primary goal and nature of the litigation – not the

10  theoretical or possible size of the total damages award." *Dukes v. Wal-Mart Stores*, __

11  F.3d. __ No. 04-1668 (9th Cir. April 26, 2010), slip op'n at 6218.

12         "*Szabo* simply states that some evidence is necessary where there are significant

13  factual and legal disputes in the determination of whether Rule 23 is met.  And, where

14  evidence is required, only minimal evidence is necessary – an affidavit is sufficient."

15  *Lau v. Arrow Financial Services*, No. 06 C 3141, 2007 WL 1502118, *8 (N.D.Ill. 2007).

16  Thus, Plaintiff's proffered allegations and evidence made in support of a class action

17  complaint are rebuttable.  It is not enough, as Toys apparently believes, to simply

18  challenge the reliability or sufficiency of Plaintiff's proof without submitting any

19  contrary rebuttal evidence of its own.

20         **2.  Proportionality of Expected Damages is Immaterial to Class**

21             **Certification.**

22         Toys cites to *Kline v. Caldwell, Banker, & Co.*, 508 F.2d 226 (9th Cir. 1974) in

23  furtherance of its theory that Plaintiff's motion for class certification should be denied

24  because "the potential award is out of proportion to any injury suffered . . . ." (Def. Opp.

25  at 5).  *Kline*, however, is not on point here for reasons discussed in *Tchoboian*, a FACTA

26  case:

27

28  PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
    CERTIFICATION
    Case No. MDL No. CV 08-01980 MMM (FMOx)
    Case No. CV 06-08163 MMM (FMOx)
    Case No. CV08-06645 MMM (FMOx)

- 11 -

*Kline* does not directly control in this case . . . . First, the reasoning in Kline turned on the drastic effect that joint and several liability would have on the potential individual liability of each of 2,000 co-defendants.  [*Kline*, 508 F.2d] at 234.  The same concern regarding joint and several liability is not present here.  Second, the plaintiffs in Kline brought claims for treble damages on unlimited actual damages under the Sherman and Clayton Acts, whereas here the claims are for limited statutory damages under the FCRA *Id.* at 235.  Finally . . . the class members are only entitled to damages if they can show a willful violation of the statute. [*Tchoboian*, 2009 WL 2169883, at *9 (citations omitted).]

Toys disputes this distinction of *Kline*, as iterated by Judge Selna[6].  First, Toys seeks to avoid the joint and several liability issue by hypothetically converting *Kline* to a class action by some imaginary metric. (Edwards Opp. at 13).  This is a misleading tactic: the question of joint and several liability raises specific questions of law that cannot be leapfrogged by analogy.  The individual liability of *each of 2,000 co-defendants* is not comparable to a potential judgment against a distinct corporate entity.  This fact alone bodes poorly for Toys' suggestion that *Kline* has more factual application to the case at bar than does *Murray*, which was a FACTA class action (Def. Opp. at 11).  The view that an antitrust suit involving joint and several liability between thousands of individual defendants (*Kline*) is more analogous to this matter than an FCRA case against a single corporate entity (*Murray*) is absurd on its face.

Next, Toys disagrees with Judge Selna's distinguishing "unlimited actual damages" under the Sherman and Clayton Acts from the limited statutory damages prescribed by FACTA.  (Edwards Opp. at 13).  While Toys is free to indulge in the

---

[6] Toys incorporates by reference its disagreement with Judge Selna's view of *Kline* as set forth in its opposition to the *Edwards/Schley* motion, at pages 12-14.  Plaintiff counters these objections here, with reference to the *Edwards* opposition (Edwards Opp.) so noted.

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 12 -

1    fantasy that its FACTA violations "did not cause <u>any</u> damage to anyone" (*Id.*), the plain

2    language of FACTA does not make actual injury a prerequisite to recovery.  Instead, it

3    automatically permits recovery of a fixed amount upon proof of a willful violation.  An

4    area as nebulous as "unlimited actual damages" under Sherman/Clayton calls for a

5    court's exercise of discretion in reviewing an award.  Conversely, objections to the fixed

6    damages legislatively authorized for willful violations of FACTA are policy arguments

7    better addressed to Congress than this Court.  *See Reiter v. Sonotone Corp.*, 442 U.S. 330,

8    344-345 (1979).

9        Finally, the required showing of "willfulness" is relevant to whether the damages

10   attributable to a FACTA defendant are proper.  While willfulness may not have been at

11   issue in *Kline*, it is the standard by which damages are apportioned under FACTA.  15

12   U.S.C. § 1681n(a); (Edwards Opp. at 13).  "Willfulness" is a threshold: once it is

13   established, a FACTA plaintiff can recover statutory damages.[7]  By this measure, Judge

14   Selna was correct in discerning the fundamental relatedness of FACTA damages to the

15   "willfulness" standard.  This nexus distinguishes FACTA litigation from other cases in

16   which "actual damages" are imposed for mere "technical" violations of say, the Sherman

17   and Clayton Acts.  *Tchoboian*, 2009 WL 2169883, at *9.  Congress intended that

18   statutory damages flow from a finding of "willfulness" in FACTA cases.

19        Furthermore, Toys' position on the damages issue would necessarily compel

20   an absurd result.  In certifying an FRCA class action, the Court in *White v. E-Loan,*

21   *Inc.*, 2006 WL 2411240, at *8 (N.D.Cal. 2006), observed that should aggregate statutory

22   damages present a bar to class certification, then a defendant's FCRA liability would be

23   inverse to the number of its violations. *See also Dukes v. Wal-Mart Stores*, __ F.3d. __

24   No. 04-1668 (9th Cir. April 26, 2010), slip op'n at 6218 (affirming, for the most part,

---

[7] "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable…."  15 U.S.C. §1681n.

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 13 -

1   order certifying class and noting that "'focusing on the potential size of a punitive

2   damage award would have the *perverse effect of making it more difficult to certify a class*

3   *the more egregious the defendant's conduct or the larger the defendant*.'") (Emphasis

4   added. This outcome is antithetical to the purpose of FACTA – an FCRA amendment –

5   which, as Toys admits, is aimed at remedying specific retail practices giving rise to

6   instances of identity theft. (Def. Opp. at 6, *citing* Pub.L. 110-241, § 2, 122 Stat. 1565

7   (June 3, 2008)).  Toys cannot explain why it should be immune from class liability based

8   on its accumulation of more statutory violations than a less culpable defendant, who,

9   following Toys' argument would be amenable to a class action.

10      Toys claims that it can divine congressional intent to punish only "actual harm" (as

11  defined by Toys) and to limit "abusive lawsuits." *Id.*  Yet as Judge Easterbrook observed

12  in *Murray*, "[m]aybe suits such as this will lead Congress to amend the Fair Credit

13  Reporting Act; maybe not.  While a statute remains on the books, however, it must be

14  enforced rather than subverted." 434 F.3d at 954[8]; *Tchoboian*, 2009 WL 2169883, at *9.

15  Toys reads FACTA as intending to curtail lawsuits, then advocates that this Court simply

16  disregard penalties that Toys finds inconvenient.[9]  Toys cannot choose which portions the

17  statute are worthy of its attention and compliance.

18      Moreover, for all the calculations produced by Toys assuming that Plaintiff will

19  recover the potential *maximum* statutory award, no relief has been granted.  (*See* Def.

20  Opp. at 10, 13, 24).[10]  A uniform class recovery is particularly unlikely given the

---

22  [8] The Supreme Court's recent decision in *Shady Grove*, No. 08-1008, 2010 WL 1222272 (U.S. 2010)
23  informs the issue: if Rule 23 is to be read singularly and without reference to extraneous sources
    (including *Kline*), and FACTA's damages provisions are not bound by Toys' requested limitations, then
24  Toys' arguments regarding proportionality of the potential judgment have no basis in law.
25  [9] *See also Reiter*, 442 U.S. 344-345 (complaints that "the cost of defending class actions will have a
    potentially ruinous effect on small businesses . . . are policy considerations more appropriately
26  addressed to Congress than to this Court.").
27  [10] Damages under FACTA range from a minimum of $100 per violation to a maximum of $1,000 per
    violation.  Toys' calculations presume without merit that the maximum-per-violation award will be

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
28  CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

1   existence of three distinct subclasses, some of which could recover to the exclusion of

2   others (Mem. at 11).  In crafting a hypothetical payout and repeatedly presenting it as the

3   "the statutory damages award () sought by Plaintiff" (*Id.* at 10), Toys attempts to

4   disingenuously shift the Court's focus from the plain meaning of the statute to an

5   alternate reality where Toys, and not the customers it exposed to the perils of identity

6   theft, is the aggrieved party.  The Court's "superiority" analysis under Rule 23(b)(3)

7   should not be swayed by such irrelevant and heretofore unrealized concerns.

8          While Toys complains that its potential liability might result in "grievous harm" at

9   trial, it has continually thwarted Plaintiff's good faith efforts at resolving this matter

10  through mediation and settlement.  For example, when settlement discussions were held

11  by the parties, Toys failed to extend the common courtesy of sending a representative to

12  mediation sessions. (Mem. at 6).  Toys also delayed depositions, only to fail to produce

13  any deponents at all.  *Id.*  These actions are at odds with Toys' professed apprehension of

14  a judgment against it.  Such a risk, after all, "justifies a compromise that affords a lower

15  award with certainty." *Murray*, 434 F.3d at 953.  Toys should not be permitted to take

16  advantage of its own bad faith conduct and avoid liability by asserting that the only

17  viable avenue for relief left open to Plaintiff – a class action – is presumptively unfair.  If

18  anything, Toys' non-cooperation with the parties underscores the necessity of a class

19  action to ensure its just and efficient resolution.

20         Lastly, Toys fails to make out a viable claim that its due process rights would be

21  violated by an adverse judgment.  (*See* Def. Opp. at 13-14).  Toys' argument that the

22  potential award has no relationship to the injury suffered amounts to an allegation that

23  FACTA damages are punitive.  In *BMW v. Gore*, 517 U.S. 559 (1996), the Supreme

24  Court applied a series of guideposts to determine whether a punitive damages award

25
26  recovered by each potential member of the class.  Consequently, the astronomical payout that defendant
    allegedly anticipates has no basis in reality.  The same may be said of Toys' alleged worth of $117
27  million (*see* Def. Opp. at 10), which has not been substantiated by properly authenticated evidence.

    PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
    CERTIFICATION
28  Case No. MDL No. CV 08-01980 MMM (FMOx)
    Case No. CV 06-08163 MMM (FMOx)
    Case No. CV08-06645 MMM (FMOx)

- 15 -

1   should be stricken on constitutional grounds.  These include the following:

2       [1] the degree of reprehensibility of the [defendant's conduct]; [2] the

3       disparity between the harm or potential harm suffered by [the plaintiff] and

4       his punitive damages award; and [3] the difference between this remedy and

5       the civil penalties authorized or imposed in comparable cases [*Id.* at 576].

6   *See also Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F.Supp.2d 965, 974

7   (C.D.Cal. 2007).   As stated in *Arcilla*, [1] Toys cannot deny the reprehensibility" of

8   congressionally-prohibited conduct in which it is alleged to have "repeatedly and

9   systematically" engaged, [2] nor can it ignore the fact that "potential harm" such as the

10  risk of identity theft is envisaged by the guideposts, and [3] the non-existence of

11  comparable FACTA cases forecloses the possible application of the third guidepost.  *Id.*

12  Toys cannot assert that its due process rights have been violated by the potential award in

13  question by reference to the vague proportionality" analysis in *Kline* when it has plainly

14  not met – or even bothered to consult – binding Supreme Court guidance on the subject

15      **3.  FACTA Liability is Unrelated to "Actual Injury."**

16        **a.  Toys Pleads a Non-Existent Liability Standard.**

17      Toys conflates its own view that Plaintiff should prove actual damages with the

18  standard for damages actually set forth under FACTA.  (Def. Opp. at 6-9)  However, a

19  FACTA plaintiff is not compelled to prove harm suffered:

20        Any person who willfully fails to comply with any requirement

21      imposed under this subchapter with respect to any consumer is liable to that

22      consumer in an amount equal to the sum of –

23        (1)(A) any actual damages sustained by the consumer as a result of the

24      failure **or** damages of not less than $100 and not more than $1,000 . . . .

25  15 U.S.C. § 1681n (emphasis added).  The disjunctive clause in section (1)(A)

26  unambiguously presents a FACTA plaintiff with the option of pursuing *either* actual or

27

28  PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 16 -

1   statutory damages.  Indeed, courts in this district have held that there is "no requirement

2   of having to present evidence of actual harm." *Arcilla*, 488 F.Supp.2d at 974.  Rather, it is

3   "reasonable to believe that Congress intended to impose damages even when the plaintiff

4   cannot offer evidence of pecuniary loss, which might often be difficult to obtain." *Id.*

5        Toys hopes to convince this Court that a judgment against it is contingent on

6   Plaintiff's substantiation of actual damages.  (Def. Opp. at 6).  This is a fictitious standard

7   easily disproved by the most cursory reference to both the statute and relevant case law.

8   Nevertheless, Toys presents numerous examples of Plaintiff's purported failure to

9   establish injury.  These include Toys' contentions that (1) Plaintiff "has suffered no

10  identity theft" (*Id.*); (2) Plaintiff "has had no credit card fraud" (*Id.* at 7); and (3) Plaintiff

11  has not demonstrated by a sufficient "mathematical probability" that it will be harmed

12  Toys' FACTA-violative conduct (*Id.* at 8).  As to the last charge, Toys has produced a

13  "privacy expert," Mari J. Frank, to attest that Toys' "printing of the first six digits . . . did

14  not expose customers to <u>any</u> increased risk of credit card or identity fraud." (*Id.* at 8).  In

15  addition, Ms. Frank asserts that Toys did not violate FACTA in printing the last four

16  digits of customers' credit card information, and that Toys "satisfied the intent of

17  FACTA." (*Id.*).[11]  This is immaterial.  FACTA liability is predicated on a defendant's

18  "willful failure to comply," not "substantial compliance." *See* 15 U.S.C. §1681n.

19                    **b. Toys' "Expert" on "Actual Injury" Lacks Credibility.**

20        Ms. Frank is not credible.  An expert witness cannot be an advocate for a party, but

21  should be unbiased.  *See Jiminez v. Sambrano*, Case No. 04-cv-1833 L (PCL), 2009 WL

22  653877, at *1 (S.D.Cal. March 12, 2009).  Ms. Frank is clearly a biased witness, in that

23  she admits she was specifically hired to present a pre-determined result: that no risk of

24  harm results from the FACTA violations at issue.  Deposition of Mari J. Frank, April 13,

25

26  [11] Toys also argues that "[u]nder *Kline*, if Toys caused no harm" it should not be subject to the
    maximum penalty available.  (Def. Opp. at 9).  However, the appropriate "harm" standard here is not

27  *Kline* but FACTA itself.
                                                                                              - 17 -
    PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
28  CERTIFICATION
    Case No. MDL No. CV 08-01980 MMM (FMOx)
    Case No. CV 06-08163 MMM (FMOx)
    Case No. CV08-06645 MMM (FMOx)

2010, p. 211:13-16.  (Exhibit B).  Ms. Frank was untruthful about the Courts to which she

is admitted.  Ms. Frank claims to have attended a "special swearing in," via which she

was admitted to every federal court in the country.  Deposition of Mari J. Frank, Exhibit

B, p. 64:17-20.  Such a claim is preposterous and cannot be true.  Ms. Frank claims to

have provided "testimony" in dozens of FACTA cases.  Declaration of Mari J. Frank

(Doc. 56-3, 1)[12]; Deposition of Mari J. Frank, Exhibit B, p. 222:1-5.  Yet, using Ms.

Frank's definition of testimony, which logically includes deposition testimony and trial

testimony, she had never testified in any FACTA case prior to the instant matter.

Deposition of Mari J. Frank, Exhibit B, p. 220:6-8.

Ms. Frank's testimony here is merely a re-hashing of what she has submitted in

previous declarations, with the exception that she alters her opinion in accord with the

facts presented.  While this in and of itself may not be significant, the fact that Ms. Frank

has falsely altered the alleged testimony of others is exceptional, *id.*, pp. 196:20-197:21,

as is her convenient omission of other materials she has previously and regularly relied

upon, such as a Presidential signing statement which champions FACTA's truncation

requirement as a key tool in combating identity theft. *Id.*, p. 209:1-15. In the end, the sum

of Ms. Frank's opinion is that she disagrees with Congress and the President.  Ms. Frank

opines that "risk of harm" includes identity theft.  *Id.*, p. 230:7-12.  Congress and the

President have unequivocally stated that FACTA's truncation requirement is designed to

prevent identity theft.  *See* George W. Bush, Remarks on Signing the Fair and Accurate

Credit Transactions Act of 2003, December 4, 2003 ("[T]his law will help prevent

identity theft before it occurs, by requiring merchants to delete all but the last five digits

of a credit card number on store receipts.").  Yet, Ms. Frank refuses to acknowledge that

violating FACTA's truncation requirement could in any way increase the risk of identity

---

[12] also attached as Exhibit B to Plaintiff's Exhibit C.

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 18 -

theft, even if 15 of the 16 digits of a credit card were to appear on a receipt.  Deposition of Mari J. Frank, <u>Exhibit B</u>, p. 130:1-4.  This view disregards the plain fact that Congress enacted FACTA because it *did* consider such conduct a threat to consumer privacy.  Ms. Frank's position is also contradicted by evidence suggesting that violations of the truncation requirement present a risk of harm in that they do increase the likelihood of identity theft.

### c.  FACTA Violations Create a Risk of Actual Harm.

Plaintiff's expert witness, Jon D. McDowall, a licensed fraud investigator with 23 years' experience, explains the exact risks presented to consumers by Toys' conduct.  *See* Declaration of Jon D. McDowall.  (<u>Exhibit C</u>).  Mr. McDowall states that it is often difficult or impossible for identity theft victims to determine the source of their problems. *Id.* at ¶ 7.  This undermines Ms. Frank's assertion that "[n]o one who received a credit card receipt from TOYS has come forth as a victim in almost three years." Declaration of Mari J. Frank, ¶ 13. (Doc. 56).   According to research cited by Mr. McDowall, a period of years may elapse before a victim of identity theft discovers that they have been defrauded.  Declaration of Jon D. McDowall, <u>Exhibit C</u>, ¶ 9.  It is probable that victims of fraud facilitated by Toys' FACTA violations do not yet know that they are victims.

Mr. McDowall also notes Ms. Frank's total failure to address the issues of "social engineering" and "pretexting," by which an identity thief manipulates a victim to divulge confidential information.  *Id.*, ¶¶ 11-12.  Ms. Frank dismisses outright the possibility that a FACTA-violative credit card receipt could be used to commit identity fraud. Declaration of Mari J. Frank, ¶ 64 (Doc. 56).  Ms. Frank opines that "[t]here is not enough information to commit fraud" contained within these receipts. *Id.*  Mr. McDowall, however, demonstrates that information gleaned from these receipts can be used to extract further information from victims.  Declaration of Jon D. McDowall, <u>Exhibit C</u>, ¶ 17-20.  Card information fed into online search engines can reveal a wide array of

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 19 -

personal data. *Id.*, ¶ 18.  The newly-obtained data can then enable a thief, for example, to pose as a credit company employee, phone the victim, and manipulate disclosure of additional information.  *Id.*, ¶ 19.  This scenario is particularly troublesome with the class at issue here, where the consumer's name was printed on the receipt, giving the thief a huge head start.  *See* Declaration of Gregory J. Ellis, <u>Exhibit A</u>, ¶ 3.  Ms. Frank wrongly assumes that a credit card receipt operates as a closed universe, and that a thief is restricted to using only the printed digits to decode the full credit card number.  Such an assumption flies in the face of the plain language of FACTA, which anticipates that the violative receipt may be used in conjunction with other identifying information to present a risk of harm in the form of an increased risk of identity theft.  Pub.L. 110-241, §2(a)(1).  The statistics offered by Ms. Frank to prove that receipt-based identity theft is a remote possibility rest on this false premise.  In fact, "social engineering" and "pretexting" present much easier paths to information that an identity thief may use to commit further acts of fraud.

 "The risks created by the printing of non-FACTA compliant data on customer credit/debit card receipts in this matter most certainly do include credit/debit card fraud and identity theft." Declaration of Jon D. McDowall, <u>Exhibit C</u>, ¶ 23.  Ms. Frank's willful myopia regarding the harmful nature of Toys' FACTA violations only serves to further damage her credibility and cast doubt on her testimony.  This Court should not be persuaded by Ms. Frank's misleading conclusions.

### 4.  Class Treatment is Superior to Individual Litigation.

Individual treatment is preferable to class treatment in this case.  Toys considers class actions unnecessary given the availability of a maximum per-plaintiff remedy of $1,000, as well as the possibility of costs and punitive damages for individual litigants. (Def. Opp. at 18).  Courts have already taken account of the manifest impracticability of this proposed solution: "[c]ommon questions would no longer predominate, and an effort

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 20 -

to determine a million consumers' individual losses would make the suit unmanageable." *Murray*, 434 F.3d at 953.  Further:

> [Class actions are] designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate . . . and society may gain from the deterrent effect of financial awards.  The practical alternative to class litigation is punitive damages, not a fusillade of small stakes claims.  [*Id.*]

Apparently, Toys believes that a maximum $1,000 statutory recovery plus additional costs is sufficient to motivate litigants whose privacy rights have been jeopardized, yet offers no evidence to support this theory. (Def. Opp. at 17).  Contrarily, and consistent with *Tchoboian*, "there is no indication that the class members would have a strong interest in individual litigation . . . [c]oncentrating the litigation in this forum will serve the interests of judicial economy." WL 2169883, at *8.  All things considered, Congress' aim of protecting consumers, as well as basic efficiency, would be better served by the certification of the proposed Class.

"[T]he fusillade of small stakes claims" derided by Judge Easterbrook is precisely the outcome desired by Toys.  This court should decline to enforce such a manifestly inadequate solution to a mass violation of federally-protected consumer rights.

## C.    THE NAMED PLAINTIFF HAS ESTABLISHED THAT HE IS AN ADEQUATE CLASS REPRESENTATIVE.

Toys argues that Plaintiff, Ellis, is not an adequate representative under Rule 23(a)(4) because he has a conflict of interest with the class.  Toys improperly represents that there is a "danger" Plaintiff "will put the interests of his attorneys ahead of the potential class members."[13]  (Def. Opp. at 24).  Toys is wrong.  Toys makes this assertion

---

[13] Toys also argues that because Ellis has been a named plaintiff in three other FACTA cases, he has a conflict of interests.  This is wrong.  Previous service as a class action Plaintiff is neither unethical nor

1  while ignoring relevant facts of Plaintiff's deposition testimony and exaggerating certain

2  facts from Plaintiff's deposition testimony.

3          **1.  No Conflict of Interest Exists.**

4        Toys makes much of the fact that Ellis has not submitted a declaration in order to

5  "establish the absence of a conflict of interest." (Def. Opp. at 23).  Ellis did not submit a

6  declaration in support of his motion for class certification because he testified at his

7  deposition that he does not have a conflict of interest with the class.  *See* February 1,

8  2010 Deposition Transcript of Gregory J. Ellis.  (Exhibit D).  Now, out of an abundance

9  of caution, Plaintiff executed a declaration further establishing the he does not have a

10  conflict of interest with the class.  *See* Exhibit A.

11          **a.  Plaintiff Ellis and Attorney Brian Wanca are "Acquaintances"**

12               **That Have Not Worked in the Same Field for 20 Years.**

13        Toys misrepresents to the Court the relationship between Plaintiff Ellis and

14  attorney Brian J. Wanca ("attorney Wanca").[14]  Toys states that Ellis and attorney Wanca

15  had a "personal" and "business" relationship "going back to the early nineties." (Def.

16  Opp. at 24).  This is a false statement that is not supported by testimony.  Ellis testified

17  that he and attorney Wanca were merely "professional acquaintances" because they both

18  represented franchise companies in 1990 or 1991.  Exhibit D at 14:11-17; 44:19-23;

19  54:13-19.  Ellis acknowledged that one-time, 20 years ago, attorney Wanca worked as

20

---

21  illegal.  This issue was taken up by the *Murray* court, which, in response, asked if "someone whose

22  rights have been violated by 50 different persons may sue only a subset of the offenders." 434 F.3d at 954.

23  [14] Toys also makes a false statement that Ellis had previously known "his other counsel as well." (Def. Opp. at 24).  Ellis testified that he may have known one of Bock & Hatch's attorneys "from court," prior

24  to this lawsuit, but that he is unsure.  Exhibit D at 64:10-19.  That is not the type of "relationship" that

25  would indicate a named plaintiff is more interested in the financial benefits of his attorneys than protecting the interests of the class.  Ellis further testified that he knew Tom Macey a "former partner."

26  Exhibit D at 64:10-19.  However, Macey has never been associated with the firm of Bock & Hatch,

27  LLC.  Macey was part of a firm that was dissolved in 2005.  As a result, Macey is not one of Plaintiff's counsel.

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 22 -

28

general counsel for a company named Sparks Tune-up and Ellis was hired to represent Sparks Tune-up.  Exhibit D at 53:13-54:9.  Ellis further testified that he still works as a franchise attorney, but that attorney Wanca does not and has not for 20 years.  Exhibit D at 44:24-45:2.  Ellis further elaborated that he and attorney Wanca are not personal friends, rather they "were acquaintances over time . . . just would see . . . [each other at] the bar association, it's the Northwest Suburban Bar Association, we would be involved in that.  In the early days, he was involved with the franchising."  Exhibit D at 54:13-19.  Importantly, Ellis did not approach attorney Wanca with this potential case because they were "personal friends" for many years, but because Ellis knew that attorney Wanca handled FACTA class action lawsuits.  Exhibit D at 47:4-17.

### b.  Plaintiff Ellis' Testimony Clearly Indicates That His Interests Lie with the Class Members.

The fact that Ellis and attorney Wanca were acquaintances from work they conducted 20 years ago is insufficient to disqualify Ellis, who does not bear a heavy burden in establishing the appropriateness of his representative role.  *See Redmon v. Uncle Julio's of Illinois, Inc.*, 249 F.R.D. 290, 295 (N.D.Ill. 2008) ("The burden of showing sufficient interest is relatively modest.").

Courts will look to determine if the class representative may become more interested in maximizing the return to his counsel than in aggressively presenting the proposed class action.  Courts have disqualified class representatives for being relatives of class counsel, *Susman v. Lincoln American Corp.*, 561 F.2d 86 (7th Cir. 1977), or because the class representative has been class counsel's co-counsel on 42 other cases, *Jaroslawicz v. Safety Kleen Corp.*, 151 F.R.D. 324, 329 (N.D.Ill. 1993).  Ellis is not barred from compensation for his service as class representative.  *See In re Continental Illinois Securities Litigation,* 962 F.2d 566, 572 (7th Cir. 1992) ("Since without a named plaintiff there can be no class action, such compensation as may be necessary to induce

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 23 -

1    him to participate in the suit.").

2        Toys contention that Ellis' interests align more with Plaintiff's counsel than with

3    the class is not supported by the facts or case law interpreting this issue.  It is difficult to

4    envision why Ellis would be more interested in securing a "windfall" for his counsel – an

5    acquaintance – than protecting the class members' interests.  Ellis is not a personal friend

6    of any of his attorneys, he is not a family member to any of his attorneys, and he is not a

7    co-worker to any of his attorneys.  Exhibit D at 53:7-54:22; 64:10-65:10.  Instead, Ellis

8    and Wanca are acquaintances from "the early days, he was involved with the

9    franchising."  Exhibit C at 54:10-19.

10       Moreover, Ellis testified that his interests lie with the enforcement of FACTA and

11   for protection of the absent class members.  Exhibit D at 58:20-59:13.  Moreover, Ellis

12   very clearly is not pursuing this class action for any financial windfall for himself.  Ellis

13   testified that this suit would likely result in "very small money to a plaintiff" and that he

14   was "not looking for lawsuits for [himself], or for [himself] in [his] law practice."

15   Exhibit D at 43:17-19; 43:21-22.  Furthermore, Ellis testified that he is not going to

16   collect attorney's fees.  Exhibit D at 59:14-19.  Additionally, Ellis understands his role in

17   this litigation "is to represent a class of individuals," that he has "no reason to believe that

18   [his] interests in this litigation would conflict with the interests of [the class members],"

19   and that he does not have any "relationship with any of the attorneys representing [him]

20   that would cause [him] to put their economic interests above those of the other Toys R Us

21   customers [he] seeks to represent."  Exhibit A at ¶ 4.  Ellis further testified in his

22   declaration that "My role here is to protect the interests of the class members, not simply

23   to attempt to advance my potential financial interests and/or those of my attorneys."

24   Exhibit A at ¶ 5.

25       As proof of Ellis's dedication to the class, the Court need look no further than

26   Ellis's substantive rejection of a proposed "coupon settlement" in this case.  Declaration

27
28
PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

of Gregory J. Ellis, April 23, 2010, <u>Exhibit A</u>, ¶ 5.  With regard to this settlement, Ellis stated the following:

> I do not believe that offering class members paltry coupons requiring them to spend $20 to $30 dollars of their own money in order to qualify for a much smaller price discount would be fair or acceptable, regardless of whether the approval of such a settlement might result in fees to my counsel or in an enhancement award for myself. [*Id.* at 2].

Given Ellis's demonstrable loyalty to the class and its interests, this Court should disregard Toys' aspersions to the contrary.

## III.   CONCLUSION

The proposed class meets the requirements of Rules 23(a), (b)(3) and (g). Therefore, Plaintiff requests that the Court certify the class, appoint Plaintiff as class representative, and appoint Plaintiff's attorneys as class counsel.

DATED:   APRIL 26, 2010.          Respectfully submitted,


By:   <u>s\James M. Smith</u>
       One of the Attorneys for Plaintiff Ellis

Brian J. Wanca                          Richard J. Doherty
Jonathan E. Irwin                       James M. Smith
**Anderson + Wanca**                    **Bock & Hatch, LLC**
3701 Algonquin Road, Suite 760          134 N. LaSalle Street, Suite 1000
Rolling Meadows, IL  60008              Chicago, IL  60602
Telephone:  847-368-1500                Telephone:  312-368-5500
Fax:  847-368-1501                      Fax:  312-658-5555

PLAINTIFF'S REPLY TO TOYS "R" US' OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
Case No. MDL No. CV 08-01980 MMM (FMOx)
Case No. CV 06-08163 MMM (FMOx)
Case No. CV08-06645 MMM (FMOx)

- 25 -